IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| MARK FREDERICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | 2:07-cv-00602-WHA-TFM |
| | ) | |
| CITY OF MONTGOMERY, MAYOR | ) | |
| BOBBY BRIGHT, DORY BRUNSON, | ) | |
| TIM HEAD, and PHILLIP JOHNSON, | ) | |
| Individually and in official capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I.

### SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing, or pointing out to, the

district court that the non-moving party has failed to present evidence in support of some elements of its case on which it bears the ultimate burden of proof. *See Id.* at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires a non-moving party to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, or admissions on file, designate specific facts showing there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

After the non-moving party has responded to a motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Yannella v. City of Dothan,* 66 F. Supp. 2d 1233 (N.D. Ala. 1999).

Defendants submit that they are entitled to summary judgment as to all claims of Plaintiff in this case.

## II.

## PROCEDURAL BACKGROUND

Plaintiff filed a Complaint in the Montgomery County Circuit Court on May 15, 2007, against the City of Montgomery ("the City"); Mayor Bobby Bright ("Bright"), Dory Brunson ("Brunson"), Tim Head ("Head"), and Philip Johnson ("Johnson") (collectively "Defendants") in their individual and official capacities.

The Defendants removed the case to Federal Court on June 28, 2007. The Complaint alleged claims against Defendants for negligent trespass; conversion, intentional infliction of emotional distress, negligent supervision, conspiracy and

individual and official capacity claims for an equal protection violation against Bright, Johnson, and Head.

On July 13, 2007, Defendants filed an Answer with Affirmative Defenses, Counterclaim, and Motion to Dismiss Defendants, Bright, Brunson, Head, and Johnson in their official capacity with the City of Montgomery.

## III.

## STATEMENT OF FACTS

Mark Frederick ("Frederick") purchased the property formerly known as Jasmine Garden Apartments on or about three years ago. *(Doc. 1, see Complaint of Mark Frederick, p. 2)*. On May 6, 2005, Defendant, Dory Brunson ("Brunson") sent a letter to Frederick addressing a list of code violations and an estimate of the cost for renovation. *(DX 1, Affidavit of Dorian Brunson)*[1]. On May 9, 2005, Brunson sent another letter to Frederick advising him that certain repairs were needed to bring the property into compliance with the International Property Maintenance Code of the City of Montgomery. *(DX 1, Affidavit of Dorian Brunson)*. The letter informed Frederick that the repairs had to be completed within sixty days from the date of the letter. *(DX 1, Affidavit of Dorian Brunson)*. On July 11, 2005, Frederick was notified by mail and placard that the property had been declared unsafe and its use or occupancy had been prohibited by the City of Montgomery. *(DX 1, Affidavit of Dorian Brunson)*. This letter advised Frederick that he had ten days to contact the Housing Codes Department of the City of Montgomery as to his intent to remedy the unsafe condition or action would be taken to demolish the structure. *(DX 1, Affidavit of Dorian Brunson)*. Housing Codes Inspectors re-inspected the property on July 21, 2005, and determined that the property

---

[1] Legal name of Defendant Dory Brunson is Dorian Brunson

had not been brought into compliance nor had any work been conducted nor any permits issued for repairs. *(DX 1, Affidavit of Dorian Brunson).* On August 2, 2005, a letter was sent to Frederick by Defendant Phillip Johnson ("Johnson") stating that the property located at 2930 Althea Street, formerly known as Jasmine Garden Apartments, was not secure, was abandoned, and in a state of disrepair. *(DX 1, Affidavit of Dorian Brunson).* Frederick was notified that this public nuisance had to be abated within (30) days from the date of that letter. *(DX 1, Affidavit of Dorian Brunson).* In addition, Frederick was advised that failure to abate the nuisance would cause the Montgomery City Council at its September 6, 2005, meeting to authorize abatement of the nuisance. *(DX 1, Affidavit of Dorian Brunson).* On August 22, 2005, the Housing Codes Division of the City of Montgomery sent a letter to Frederick stating that a resolution was being submitted to the City Council for the costs of abating the property formerly known as Jasmine Garden Apartments. *(DX 1, Affidavit of Dorian Brunson).* The resolution was submitted to the Montgomery City Council and demolition was ordered September 6, 2005. *(DX 2, Certified Minutes of Montgomery City Council from September 6, 2005).*

Frederick filed an appeal to the Montgomery County Circuit Court on September 16, 2005. After discovery and pleadings, on August 8, 2006, the Parties entered Joint Stipulations and a Consent for Judgment was entered. The case was dismissed from the Montgomery County Circuit Court September 29, 2006, in favor of the Plaintiff, Mark Fredrick, setting aside the City Council's Order of Demolition. (DX 4, Certified copy of Montgomery Circuit Courts record).

During this time, default was made in payment of the property formerly known as Jasmine Garden Apartments. *(DX 3, Affidavit of DeWayne Morris).* This default resulted

in the sale of the property to the highest bidder in front of the Montgomery County Courthouse on June 29, 2006. *(DX 3, Affidavit of DeWayne Morris)*. Eva Bank purchased said property at this sale. *(DX 3, Affidavit of DeWayne Morris)*. Eva Bank became the rightful owner of the property at that time. In September 2006, after the Circuit Court entered its order setting aside the demolition, Eva Bank contracted with the City of Montgomery to demolish the structures located on the property.

## IV.

## ARGUMENT

1.    **PLAINTIFF'S CLAIMS FOR DAMAGES ARISING OUT OF TORTS**

**Torts against a municipality**

Plaintiff contends in his Complaint that the "Defendants" collectively committed the following torts: Negligent Trespass, Negligent Conversion, Negligent Infliction of Emotional Distress, Conversion and Negligent Hiring or Supervision. In each of these four Counts the Plaintiff only refers to "Defendants" without naming specifically which Defendant actually committed the alleged torts. Defendants would aver that all claims for torts committed by Defendant City of Montgomery and all Official Capacity claims are time barred by Alabama State Law which places a six month time limit in which to notify a municipality of an alleged tort. Al. Code 1975 § 11-47-23. Limitation periods for presentation of claims against municipalities. All claims against the municipality (except bonds and interest coupons and claims for damages) shall be presented to the clerk for payment within two years from the accrual of said claim or shall be barred. Claims for damages growing out of torts shall be presented within six months from the accrual thereof or shall be barred. Al. Code 1975 § 11-47-192. Filing of statement as to

manner of injury, damages claimed, etc. No recovery shall be had against any city or town on a claim for personal injury received unless a sworn statement be filed with the clerk by the party injured or his personal representative in case of his death stating substantially the manner in which the injury was received, the day and time and the place where the accident occurred and the damages claimed. No such claim or sworn statement was ever filed by the Plaintiff nor anyone representing him. Therefore, all tort claims against the municipality and the named Defendants acting in their official capacity are due to be dismissed. The Alabama Supreme Court, when dealing with this particular section, has repeatedly held that the statute is one of "nonclaim," which creates a "defense broader in its operation than the statute of limitation, not only barring remedies, but extinguishing debts and liabilities." Morrow v. Town of Littleville, 576 So.2d 210, 215 (Ala.1991) *citing* Fretwell v. McLemore, 52 Ala. 124, 144 (1875). "The six- month limitation period relating to claims against a municipality has been construed to be not merely a statute of limitations but a statute of nonclaim similar to the probate nonclaim statute." Morrow v. Town of Littleville, 576 So.2d at 215; *See also* Taylor v. City of Clanton, 18 So.2d 369 (Ala.1944). Therefore, all tort claims against Defendant City of Montgomery as well as all named Defendants in their official capacity are due to be dismissed.

Individually named Defendants in their 'Official" capacity due to be dismissed due to Municipality also being a named Defendant. It is well established that "suits against an official in his or her official capacity are suits against the entity the individual represents." *Parker v. Williams,* 862 F.2d 1471, 1476 n. 4 (11th Cir.1989); *see also Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 691 n. 55, 98

S.Ct. 2018, 2036 n. 55, 56 L.Ed.2d 611 (1978) (indicating that "official-capacity suits generally represent only another way of pleading action against an entity of which an officer is an agent"); *Welch v. Laney*, 57 F.3d 1004, 1007 (11th Cir.1995); *Farred v. Hicks*, 915 F.2d 1530, 1532 (11th Cir.1990). The Supreme Court of the United States has expressly extended this principle to municipalities and their officers, noting that "there is no longer a need to bring official capacity suits against local government officials [since] local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985).

**Immunity against municipal employees sued individually**

Furthermore, all claims against the Defendants in their individual capacity are also due to be dismissed due to their immunity based upon being employees of the City of Montgomery. The Alabama Supreme Court has addressed this very issue on many occasions and recently in City of Birmingham v. Brown , 969 So.2d 910 (Ala.,2007) the Court again reviewed this issue. In that Case, individual employees were named in a negligence suit dealing with trespass as well as other torts and the Court opined :

> Gilchrist claims immunity by virtue of being an employee of the City. In *Ex parte Cranman*, 792 So.2d 392, 405 (Ala.2000), this Court stated:
>
> "A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
>
> "(1) formulating plans, policies, or designs; or
>
> "(2) exercising his or her judgment in the administration of a department or agency of government.... "....

"(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner...."

792 So.2d at 405. Immunity applies to employees of municipalities in the same manner that immunity applies to employees of the State. See *Ex parte City of Birmingham,* 624 So.2d 1018 (Ala.1993). *Ex parte Cranman,* supra, did nothing to alter this application

In this case, the Plaintiff has named the Mayor of the City, Defendant Bright, the department head of Housing Codes, Dory Brunson, City Councilman, Defendant Timothy Head, and inspector Phil Johnson all in their individual capacities. All causes of action against these individuals occurred during their discharge of their assigned duties imposed upon them by statute (City Ordinance 10-2001) and did so in the manner provided by said ordinance.

In taking the facts in the light most favorable to the non moving party and by using the Complaint filed by the Plaintiff, all of the actions complained of in Counts I, II, III, IV, and VII all occurred within discharge of their assigned duties, the immunity afforded them by State Law is in place. In order for the Plaintiff to pierce this immunity he would have to show :

Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent *shall not* be immune from civil liability in his or her personal capacity: (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for

the purpose of regulating the activities of a governmental agency require otherwise; or (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

From *Ex parte Cranman,* 792 So.2d 392, 405 (Ala.2000). Here, the Plaintiff has not alleged any of the key factors to piercing that immunity, he has only claimed that the parties were "negligent" in several aspects of carrying out that duty (Doc 1, Complaint of Mark Frederick, Counts I, II, III, IV, and VII) and by not pleading any of the elements from the second prong of the test set out in *Ex parte Cranman,* supra, dismissing the individual suits against all defendants is proper.

### Denial of the right to appeal

The Defendants collectively would also argue that any claims for "denying the Plaintiff the right of appeal" and "knowing that the Plaintiff was entitled to an appeal and did not inform the same of that fact" (Doc 1, Complaint of Mark Fredrick, pg 3) would be a false statement on the part of the Plaintiff. Plaintiff was represented at the City Council hearing on the proposed demolition of the property by an attorney, J. Doyle Fuller, the City of Montgomery is under no duty to notify Plaintiff of any appeal; furthermore, Plaintiff obviously knew of his statutory right to appeal (DX 5, 10-2001 City Ordinance) due to his filing of the appeal in Montgomery Circuit Court (DX 4, Certified Copy of Montgomery Circuit Courts record) thereby negating any claim concerning any appeal as alleged within the Plaintiff's Complaint. Plaintiff clearly knew of his right to appeal, took advantage of that right, and subsequently won on appeal having the order of the Montgomery City Council's order of demolition set aside.

**Collateral Estoppel**

Defendants would further argue that both *Collateral Estoppel and Res Judicata* would bar Plaintiff from any recovery in Counts I, II, III , IV, and VII. The previous litigation concerning this matter, <u>Fredrick v. City of Montgomery</u>, CV-05-2408, Montgomery Circuit Court, bars this action on the grounds of R*es Judicata* and/or *Collateral Eestoppel*. Alabama law requires four elements for the application of the doctrine of *Res Judicata*. First, there must be a substantial identity between the parties in the prior and subsequent suits; second, both suits must involve the same cause of action; third, the prior action must have been decided by a court of competent jurisdiction; and fourth, the previous adjudication must have been on the merits of the case. If one of these elements is not present, then the doctrine of *Res Judicata* is not applicable. *Ferguson v. Commercial Bank,* 578 So.2d 1234, 1236 (Ala.1991). Clearly, here in the present case all of the above requirements are met, even looking at the facts in the light most favorable to Plaintiff, based upon the dates furnished by Plaintiff in his Complaint, all of the causes of action in which he had any standing to file suit were dated prior to the Circuit Court entering its Order in September 2006. All dates in Plaintiff's Complaint are from 2005 (Doc#1, Complaint).

The first element of *Res Judicata* is substantial identity of the parties: here, the parties named are exactly the same, Mark Fredrick is the Plaintiff just as he was in the prior suit, the Defendants are the City of Montgomery, just as the first suit. Plaintiff adds additional employees or representatives of the City of Montgomery which were acting in their official capacity during all of the allegations contained in the Complaint. Secondly, "both suits must involve the same cause of action:" again this is the case, the first lawsuit

was an appeal from the Montgomery City Council of a demolition order of the buildings located on the property formerly known as Jasmine Gardens Apartments. In the present case, Plaintiff again contends that his tort claims are based on the demolition of the buildings located on that property. Thirdly, "the prior action must have been decided by a Court of competent jurisdiction:" Defendants assert that Montgomery Circuit Court is in fact a Court of competent jurisdiction of this matter as well as the prior matter as evidenced that this action was removed from that very Court. And, finally, adjudication on the merits, the Montgomery Circuit Court did in fact hold hearings on the merit and did in fact issue an Order based upon certain stipulations by both sides, and a Consent to a Judgment was entered by both parties setting aside the Order of the Montgomery City Council and holding the demolition for naught. Based upon the test given by the Alabama Supreme Court all the elements for *Res Judicata* are met in this case and, therefore, Defendants are due summary judgment on Counts I, II, III ,IV and VII.

Defendants would conversely argue should this Court deem that *Res Judicata* should not apply, the Defendants would then argue that the doctrine of *Collateral Estoppel* applies. The doctrine of *Collateral Estoppel* applies when the subsequent suit between the same parties is not based upon the same cause of action. "Requirements for collateral estoppel to operate are 1) issue identical to the one involved in the previous suit; 2) issue actually litigated in prior action; and 3) resolution of the issue was necessary to the prior judgment. If these elements are present, the prior judgment is conclusive to those issues actually determined in the prior suit." *Adams v. Carpenter,* 566 So.2d 236, 242 (Ala.1990). Defendants would argue that should this Court deem that the doctorine of *Res Judicata* does not apply, then the doctorine of *Collateral Estoppel* would then be

in place. The issues presented here are identical to the issues presented in the prior action (DX 4, Certified copy of Montgomery Circuit Courts record) dealing with the demolition or proposed demolition of the buildings located on this property formerly known as Jasmine Gardens Apartments. Secondly, the issues were litigated, with a Summary Judgment Brief being submitted by Plaintiff and a Consent to a Judgment being entered and, thirdly, there was a resolution of the issue by the Court setting aside the Order of the City Council. Therefore, Summary Judgment on all Tort Counts as well as federal Law claims are due to be dismissed by virtue of *Res Judicata or Collateral Estoppel.*

### Conversion

In Count VII Plaintiff states that "Defendants took the property of the Plaintiff without just compensation" (Doc#1, Complaint of Plaintiff). No taking could have occurred by any of the named Defendants, the only taking from the Plaintiff was the foreclosure of the property by the Mortgagee *(DX3, Affidavit of DeWayne Morris).* Therefore Plaintiff cannot show any claim for a "Taking" by Defendants when there is a properly recorded deed showing a foreclosure of this property by the Mortgagee. Furthermore a municipality may not be held liable for the intentional tort of conversion, unless the Plaintiff shows that the act is, in some way, due to the "neglect, carelessness, or unskillfulness" of its agents. *Ala. Code* § 11-47-190 (1975, as amended*).* There is no direct right of action against a municipality for an intentional tort.

2.    STANDING

DEFENDANTS' ARGUMENT AGAINST PLAINTIFF HAVING STANDING TO BRING THIS SUIT

Defendants would further argue that the Plaintiff lacks the standing to bring this

action. Plaintiff lost all ownership of the property (except right of Redemption) when the property was sold at auction on the Courthouse steps due to foreclosure. *(DX3, Affidavit of DeWayne Morris)*. All actions that the Plaintiff asserts are focused upon the demolition of the buildings located upon that property. At the time of foreclosure none of the damages that Plaintiff complains of could have occurred (As a side note, if the Plaintiff does claim that the actions did in fact occur prior to the time of the foreclosure then the one or the other of the above doctrines of *Res Judicata and Collateral Estoppel* must apply). Once the Mortgagee foreclosed on the property and subsequently purchased said property at auction, Plaintiff lost all rights of actions to that property with the exception of the "Right of Redemption" which was never exercised. The property was sold on July 26, 2006, on the Montgomery County Courthouse steps.. The City of Montgomery entered into an agreement with the Mortgagee to demolish the buildings located on the above-described property. The Mortgagee was the true in fact owner of the property *(DX3, Affidavit of DeWayne Morris)*. The demolition that occurred on this property occurred in September 2006. Therefore, any tort or alleged rights violation would be held by Mortgagee. Further, should there be any dispute of the rights afforded to Plaintiff by his Right of Redemption, any action for such would be against Mortgagee, not City of Montgomery or other named Defendants.

Although the City Council, through the Housing Codes Division did in fact order the building demolished, that Order was set aside by the Honorable Charles Price in September 2006 (DX 2, Certified copy of Montgomery Circuit Courts record). Therefore, none of the actions that Plaintiff asserts that the individual Defendants did could have caused the demolition of the buildings. None of the inspections conducted by Defendant

Johnson, the vote of Defendant Head, or the Order by Defendants Bright and Brunson contributed to the demolition of the property. Only through the privity of the contract between Mortgagee and City of Montgomery did the demolition of these buildings occur at the request of the owner.

3.    1983 AND 1985

### WHY ALL THE FEDERAL CIVIL RIGHTS CLAIMS MUST FAIL AND BE DISMISSED

*42 U.S.C. § 1985(3)* provides a cause of action where two or more persons conspire "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws...." 42 U.S.C. § 1985(3). The 11th Circuit Court has identified four elements required to state a cognizable § 1985(3) conspiracy claim: " (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Trawinski v. United Techs.*, 313 F.3d 1295, 1299 (11th Cir.2002). Additionally, to state a § 1985(3) claim, the Plaintiff must allege "invidious discriminatory intent" on the part of the defendants. *Id.* "[C]onclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint." *Kearson v. S. Bell Tel. & Tel. Co.,* 763 F.3d 405, 407 (11th Cir.1985).

Plaintiff's Complaint fails on its face to meet the requirements set forth by the Traywick Court; first, in the Complaint Plaintiff only says there was a conspiracy to deprive which is conclusory, vague, and a general allegation. In reading the entire text of

14

the Complaint there is not a substantiated claim of any conspiracy to deprive this individual of his rights in the buildings that he owned. Plaintiff adds the word "Conspires" and "Conspiracy" to his § 1983 Count to making a new Count. At no time does Plaintiff allege how these Defendants conspired, or how any conspiracy came to be. During the time of ownership by the Plaintiff he was afforded every opportunity given unto him by Ordinance 10-2001 of the City of Montgomery, the same timelines and dates were set forth for Plaintiff as are set for any similarly situated owner. Plaintiff further alleges that Defendants deprived him of his right to appeal and, again, Defendants argue that his claim is frivolous due to Plaintiff filing a timely appeal to the Montgomery Circuit Court (DX 4, Certified copy of Montgomery Circuit Courts record). The second prong fails due to Plaintiff being given all the time afforded by Ordinance 10-2001 just as all other similarly situated owners are afforded when applying the regulations. His property was inspected to the same standard as all other similarly situated buildings and at no time was he treated any differently than any other property owner. Furthermore, Plaintiff was not the record owner during the time the buildings on the property were demolished. The third and forth prongs were never represented in the Complaint; therefore, Plaintiff's claim for relief under 42 U.S.C. § 1985(3) is fatally flawed and due to be dismissed.

*42 U.S.C. § 1983* provides every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

action at law, suit in equity, or other proper proceeding for redress, except that in any

action brought against a judicial officer for an act or omission taken in such officer's

judicial capacity, injunctive relief shall not be granted unless a declaratory decree was

violated or declaratory relief was unavailable.

To state a claim for relief under Section § 1983, litigants have the burden of

alleging two elements with some factual detail: "(1) that they suffered a deprivation of

'rights, privileges or immunities secured by the Constitution and laws' of the United

States," and (2) that a person "acting under color of law" *caused* the deprivation, either

by an act or omission. *Wideman v. Shallowford Community Hosp., Inc.*, 826 F.2d 1030,

1032 (11th Cir .1987) (emphasis added). Plaintiff's claim under *42 U.S.C. § 1983* fails

under both prongs of the above the above test: The first deprivation of any rights

complained of in the Complaint is that the buildings were demolished depriving Plaintiff

of the value of that property or the rights in that property; but at the time of demolition,

Plaintiff had no ownership of that property, he only had a right of redemption, which

gave him the ability to redeem the property for his own use should he choose to. Even by

demolishing the property the Plaintiff was still divested of that right at that time and up

until the time when the Right of Redemption expired. Secondly, no one acting under

color of state law demolished this property as alleged in the Complaint. The demolition

of the property was done on a contract basis between the owner of the property and the

City of Montgomery. The City of Montgomery and all of its agents became contractors at

this time and in the best interest of the Citizenry of the City of Montgomery deemed that

it was proper to abate the nuisance on the property. Plaintiff further claims that

Defendants Bright, Head, Johnson, and Brunson treated Plaintiff differently but offers

16

nothing in his Complaint to show this is anything more than mere speculation or a conclusory allegation. *(DX 1, Affidavit of Dorian Brunson)* Plaintiff was afforded more than adequate due process, he attended and was represented at City Council as well as filed a timely appeal, in which he prevailed and the original Order of the City Council was overturned. Any rights that Plaintiff had prior to the foreclosure could not have been violated due to there being no action on the part of any of the Defendants that was actually taken. Any damages that occurred to Plaintiff occurred after the foreclosure when the Mortgagee and The City Contracted for the abatement of the nuisance. Thereby any claim for relief under *42 U.S.C. § 1983* is fatally flawed,

To the extent that Plaintiff has named the Defendants Bright, Johnson, and Head as Defendants because of the action of the City Council or other City personnel, Plaintiff seems to wish to invoke the doctrine of *Respondeat Superior*, which is inapplicable in this case. The doctrine of *Respondeat Superior* is unavailable as a basis for liability in actions brought under 42 U.S.C. § 1983. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Based upon the foregoing reasons Defendants' collective Motion for Summary Judgment is due to be granted.

Submitted this the 15th day of May, 2008.

/s/ Michael D. Boyle
MICHAEL D. BOYLE(BOY032)
Attorney for Defendants

City of Montgomery
Legal Division
P. O. Box 1111
Montgomery, AL 36101-1111
Phone: (334) 241-2050
FAX: (334) 241-2310

## CERTIFICATE OF SERVICE

I hereby certify that foregoing *Memorandum of Law in Support of Defendants' Motion for Summary Judgment* has been served upon the following by electronic filing/notification of the United States District Court Middle District of Alabama on the 15th day of May, 2008, properly addressed to all as follows:

Norman Hurst

/s/ Michael D. Boyle
Of Counsel

### IN THE DISTRICT COURT OF THE UNITED STATES
### FOR THE MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| **MARK FREDERICK,** | ) | |
| | ) | **2:07-cv-00602-WHA-TFM** |
| **PLAINTIFF,** | ) | |
| | ) | |
| **VS.** | ) | |
| | ) | **AFFIDAVIT OF** |
| **CITY OF MONTGOMERY, MAYOR** | ) | **DORIAN BRUNSON** |
| **BOBBY BRIGHT, DORY BRUNSON,** | ) | |
| **TIM HEAD, and PHILLIP JOHNSON,** | ) | |
| **Individually and in official capacity,** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |
| | ) | |

**STATE OF ALABAMA**

**COUNTY OF MONTGOMERY**

In person appeared before the undersigned officer, duly authorized to administer oaths, Dorian Brunson, who, after being duly sworn, states under oath as follows:

1.  I am the Director of Inspections Department with the City of Montgomery, Alabama, and I have personal knowledge of the facts set forth in this affidavit. I am an adult resident citizen of the State of Alabama and am competent to testify to the matters set forth herein.

2.  On May 6, 2005, I sent a letter to Mark Frederick addressing a list of code violations and an estimate of the cost for renovation of the property described as follows:

> Lot A, according to the Map of Ann Gardens Plat No. 1, being a Replat of Lots 1 through 24, Block "C", McQueens Plat, as recorded in the Office of the Judge of Probate of Montgomery County, Alabama, in Plat Book 35, at Page 32.

3.  On May 9, 2005, I sent another letter to Mark Frederick advising him that certain repairs were needed to bring the property into compliance with the International Property

1



DEFENDANT'S
EXHIBIT

*tabbies*

Maintenance Code of the City of Montgomery, and I informed Mark Frederick that the repairs had to be completed within sixty days from the date of the letter.

4.    On July 11, 2005, Mark Frederick was notified by mail and placard that the property had been declared unsafe and its use or occupancy had been prohibited by the City of Montgomery. This letter advised Mark Frederick that he had ten days to contact the Housing Codes Department of the City of Montgomery as to his intent to remedy the unsafe condition or action would be taken to demolish the structure.

5.    Housing Codes Inspectors re-inspected the property on July 21, 2005, and determined that the property had not been brought into compliance nor had any work been conducted nor any permits issued for repairs.

6.    On August 2, 2005, a letter was sent to Mark Frederick by Phillip Johnson, a Housing Code Inspector with the City of Montgomery, stating that the property located at 2930 Althea Street, Montgomery, Alabama, was not secure, was abandoned, and in a state of disrepair. The letter notified Mark Frederick that this public nuisance had to be abated within (30) days from the date of that letter, and advised Mark Frederick that failure to abate the nuisance would cause the Montgomery City Council at its September 6, 2005, meeting to authorize abatement of the nuisance.

7.    On August 22, 2005, the Housing Codes Division of the City of Montgomery sent a letter to Mark Frederick stating that a resolution was being submitted to the City Council for the costs of abating the property formerly known as Jasmine Garden Apartments.

8.    Mark Frederick was afforded the time period in accordance with Ordinance 10-2001 to comply with the regulations, as are all similarly situated property owners, and Mark

2

Frederick's property was inspected to the same standard as all other similarly situated buildings and at no time was he treated any differently than any other property owner.

     9.    While performing my duties as Director of Inspections Department with the City of Montgomery, Alabama, I did not treat Mark Frederick differently than I would treat any other property owner while dealing with a public nuisance and abatement thereof.

     10.    Further, the affiant saith not.

DORY BRUNSON

STATE OF ALABAMA

COUNTY OF MONTGOMERY

I, the undersigned notary public in and for said county in said state, hereby certify that DORY BRUNSON, whose name is signed to the foregoing affidavit, and who is known to me, after being fully informed of the contents of the instrument, signed and executed the same voluntarily after first being duly sworn by me on the date set forth below.

GIVEN under my hand and official seal, this __15th__ day of __May__, 2008.

NOTARY PUBLIC

My Commission Expires: _____

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Mar 28, 2011
BONDED THRU NOTARY PUBLIC UNDERWRITERS



# City of Montgomery, Alabama

*Montgomery City Council Members*

Bobby N. Bright
Mayor

Charles W. Jinright—President      Willie Cook
James A. Nuckles—Pro Tem          Tim Head
Cornelius "C.C." Calhoun          Janet Thomas May

Glen O. Pruitt, Jr.
Martha Roby
Jim Spear

STATE OF ALABAMA              )
COUNTY OF MONTGOMERY          )
CITY OF MONTGOMERY            )

I, Brenda Gale Blalock, City Clerk of the City of Montgomery, Alabama, DO HEREBY
CERTIFY that the attached is a true and correct copy of excerpts of the Minutes of the Regular
Meeting of the Council of the City of Montgomery on September 6, 2005.

GIVEN under my hand and the official SEAL of the City of Montgomery, Alabama, this
the 12th day of October, 2005.

SEAL

*Brenda Gale Blalock*

BRENDA GALE BLALOCK, CITY CLERK

*City Clerk*
*Brenda Gale Blalock*



DEFENDANT'S EXHIBIT 2

P. O. Box 1111 ♦ Montgomery, Alabama 36101-1111 ♦ Phone (334) 241-2096 ♦ Fax (334) 241-2056

REGULAR MEETING
COUNCIL OF THE CITY OF MONTGOMERY
SEPTEMBER 6, 2005 – 10:00 A.M.

The Council met in regular session on Tuesday, September 6, 2005, at 10:00 a.m., in the Council Chamber, City Hall, with the following members present:

PRESENT:     SPEAR, HEAD, MAY, NUCKLES, CALHOUN
                      COOK, ROBY, PRUITT, JINRIGHT          –9

ABSENT :     NONE                                                            –0

The President of the Council, Charles Jinright, presided as Chairman of the meeting, and Brenda Gale Blalock, City Clerk, served as the Clerk of the meeting. The meeting was opened with prayer by Councillor Jim Spear and the Pledge of Allegiance.

Councillor Nuckles made a motion to adopt the minutes of the August 16, 2005, Council meeting, which motion carried with the following vote:

AYES:             SPEAR, HEAD, MAY, NUCKLES, CALHOUN
                      COOK, ROBY, PRUITT, JINRIGHT          –9
NAYS:             NONE                                                    –0
ABSTAINED:    NONE                                                    –0
ABSENT:          NONE                                                    –0

* * * * * *

Councillor Head introduced the proposed demolition of the Jasmine Garden Apartments on Althea Street. Mr. Robert Black, Attorney, Mr. Gary Stevens, Attorney, and Mr. Mark Fredrick were present representing Jasmine Garden Apartments. Mr. Dory Brunson, Chief Building Official, was present representing the Housing Codes Division.

Councillor Head made a motion to uphold the recommendation of the Housing Codes Division and authorize the demolition of the Jasmine Garden Apartments on Althea Street, which motion carried with the following vote:

AYES:             UNANIMOUS                                        –9
NAYS:             NONE                                                    –0
ABSTAINED:    NONE                                                    –0
ABSENT:          NONE                                                    –0

* * * * * *

There being no further business to come before the Council, the meeting, upon motion, duly adjourned at 11:50 a.m.

/s/   Brenda Gale Blalock
BRENDA GALE BLALOCK, CITY CLERK

/s/   Charles Jinright
CHARLES JINRIGHT, PRESIDENT
COUNCIL OF THE CITY OF MONTGOMERY

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| **MARK FREDERICK,** | ) | **2:07-cv-00602-WHA-TFM** |
| | ) | |
| **PLAINTIFF** | ) | |
| | ) | |
| **VS.** | ) | |
| | ) | **AFFIDAVIT OF** |
| **CITY OF MONTGOMERY, MAYOR** | ) | **DEWAYNE MORRIS** |
| **BOBBY BRIGHT, DORY BRUNSON,** | ) | |
| **TIM HEAD, and PHILLIP JOHNSON,** | ) | |
| **Individually and in official capacity** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

STATE OF ALABAMA

COUNTY OF MONTGOMERY

In person appeared before the undersigned officer, duly authorized to administer oaths, DeWayne Morris, who, after being duly sworn, states under oath as follows:

1.     I am the Chief Executive Officer and majority share holder for Eva Bank, and I have personal knowledge of the facts set forth in this affidavit. I am an adult resident citizen of the State of Alabama and am competent to testify to the matters set forth herein.

2.     Default was made in payment of a portion of the property formerly known as Jasmine Garden Apartments. The description for this property is as follows:

> Lot A, according to the Map of Ann Gardens Plat No. 1, being a Replat of Lots 1 through 24, Block "C", McQueens Plat, as recorded in the Office of the Judge of Probate of Montgomery County, Alabama, in Plat Book 35, at Page 32.

3.     This property was offered for sale to the highest bidder in front of the Montgomery County Courthouse on June 29, 2006. Eva Bank purchased said property at this sale.



1

4.      All right, title, interest and claim of Mark Frederick in said property were transferred to Eva Bank on the sale date of June 29, 2006.

5.      Attached hereto is a copy of the Mortgage Foreclosure Deed filed with the Montgomery County Judge of Probate on June 29, 2006. This document was either made by me or under my supervision at or near the time of the events set out therein and in the ordinary course of business, or received by my office in the ordinary course of business. This document has been kept in the ordinary course of business.

6.      Further, Eva Bank by and through me as its Chief Executive Officer and majority shareholder hired the City of Montgomery for the demolition of said property. Attached hereto are a copy of the aforementioned agreement and a copy of the check that was presented to the City of Montgomery upon completion of the demolition of this property. These documents were either made by me or under my supervision at or near the time of the events set out therein and in the ordinary course of business, or received by my office in the ordinary course of business. These documents have been kept in the ordinary course of business.

7.      Further, the affiant saith not.

DeWayne Morris, CEO and Majority
Shareholder for Eva Bank

STATE OF ALABAMA

COUNTY OF MONTGOMERY

I, the undersigned notary public in and for said county in said state, hereby certify that DeWayne Morris, whose name is signed to the foregoing affidavit, and who is known to me, after being fully informed of the contents of the instrument, signed and executed the same voluntarily after first being duly sworn by me on the date set forth below.

GIVEN under my hand and official seal, this 5th day of MAY,
2008.

NOTARY PUBLIC
My Commission Expires: 7/28/2010

2

RLPY 03347 PAGE 0638

| | |
|---|---|
| THIS INSTRUMENT PREPARED BY:<br>Dewayne N. Morris, Attorney at Law<br>2131 Third Avenue North<br>Birmingham, AL 35203 | SEND TAX NOTICE TO:<br>EvaBank<br>1710 Cherokee Ave.,S.W.<br>Cullman, AL 35055 |

STATE OF ALABAMA    )
                   )    <u>MORTGAGE FORECLOSURE DEED</u>
MONTGOMERY COUNTY  )

    KNOW ALL MEN BY THESE PRESENTS that on December 5, 2003, Mark Frederick, an unmarried man, executed a mortgage to EvaBank, an Alabama bank, which mortgage is recorded in Book 2790, Page 727, in the Probate Office of Montgomery County, Alabama.

    Default was made in payment of a portion of the indebtedness secured by and described in the mortgage, and the holder and owner of the mortgage did declare the entire sum secured thereby to be due and payable, as provided by the terms of the mortgage, and the mortgage being and continuing in default and subject to foreclosure to and including .

    Under the power contained in the mortgage, the property described therein was advertised for sale by publication once a week for three consecutive weeks in **The Montgomery Independent**, a newspaper published in Montgomery County, Alabama, the notices appearing in the issues of the paper published on June 8, 15, 22, 2006.

    In strict compliance with the power of sale contained in said mortgage, the property therein described was offered for sale to the highest bidder for cash in front of the County Courthouse, Montgomery County, Montgomery, Alabama, on June 29, 2006, during the legal hours of sale and the same was purchased by EvaBank, an Alabama bank who was duly authorized to do so under the terms of the mortgage, at and for the sum of $300,000.00.

    In consideration of the premises and of the payment to EvaBank the sum of $300,000.00, which sum was offered to be credited on the indebtedness secured by the mortgage, receipt whereof is hereby acknowledged, I, Dewayne N. Morris, as auctioneer, agent and attorney for mortgagee, by virtue of the power contained in the mortgage and the law in such cases made and provided, do hereby grant, bargain, sell and convey unto EvaBank all of the right, title, interest, and claim of Mark Frederick, an unmarried man, and of all persons and firms claiming under him, in and to the following real estate located in Montgomery County, Alabama:

    Lot A, according to the Map of Ann Gardens Plat No. 1, being a Replat of Lots 1 through 24, Block "C", McQueens Plat, as recorded in the Office of the Judge of Probate of Montgomery County, Alabama, in Plat Book 35, at Page 32.

    To have and to hold, unto EvaBank, an Alabama bank, its successors and assigns forever.

    IN WITNESS WHEREOF, I, Dewayne N. Morris, as auctioneer, agent and attorney for mortgagee have hereunto set my hand and seal this 29th day of June, 2006.

                               _____
                               Dewayne N. Morris, as Auctioneer, Agent and Attorney in
                               Fact Conducting said Sale __

| | |
|---|---|
| STATE OF ALABAMA       )<br>                         )<br>COUNTY OF Montgomery  )<br>INDEX        $5.00<br>REC FEE    $2.50<br>CERT       $1.00<br>CASH TOTAL  $8.50<br>25847      Clerk: RITA 03:54PM | |

    I, the undersigned, a Notary Public in and for said County and State, hereby certify that Dewayne N. Morris, whose name is signed to the foregoing Foreclosure Deed, and who is known to me, acknowledged before me that, being informed of the contents of the conveyance, he, in his capacity recited in said deed, and with full authority, executed the same voluntarily on the day the same bears date.

    Given under my hand and seal this 29th day of June, 2006.

STATE OF ALA.MONTGOMERY CO.
I CERTIFY THIS INSTRUMENT WAS FILED ON
RLPY 03347 PG 0638 2006 Jun 29 03:53PM
REESE MCKINNEY JR.
JUDGE OF PROBATE

                               _____(SEAL)
                               Notary Public
                               My Commission Expires May 4, 2009.

STATE OF ALABAMA          )
                                    )

COUNTY OF MONTGOMERY    )

## AGREEMENT

THIS **AGREEMENT** is made and entered into this _26th_ day of _July_, 2006, by **EVABANK by and through its CEO and majority share holder, DEWAYNE N. MORRIS** and the **CITY OF MONTGOMERY**, a Municipal corporation.

1.      EvaBank by and through its CEO and majority share holder, Dewayne N. Morris, hereby agrees to allow the City of Montgomery to tear down, and demolish, the property located at Lot A, according to the Map of Ann Gardens Plat No. 1, being a Replat of Lots 1 through 24, Block "C", McQueens Plat, as recorded in the Office of the Judge of Probate of Montgomery County, Alabama, in Plat Book 35, at Page 32. (This property is also referred to as Jasmine Garden Apartments). ("Property")

2.      EvaBank has agreed to pay the sum of (**$35,000.00**) in a certified check made payable to the City of Montgomery for the demolition of said property. This amount shall be paid in full within (30) days upon demolition of property.

3.      This Agreement constitutes the entire and complete agreement between the parties hereto and supersedes any prior oral or written agreements between the parties with respect to the Property. It is expressly agreed that there are no verbal understandings or agreements which in any way change the terms, covenants and conditions herein set forth, and that no modification of this Agreement and no waiver of any of its terms and conditions shall be effective unless made in writing and duly executed by the parties hereto.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by its officers thereunto duly authorized as of this _26th_ day of _July_, 2006.

DEWAYNE N. MORRIS
(CEO AND MAJORITY SHAREHOLDER FOR EVABANK)

BOBBY N. BRIGHT, MAYOR
CITY OF MONTGOMERY, ALABAMA

025163

REMITTER: EVA BANK

**EVA Bank**
1710 Cherokee Ave., S.W.
Cullman, AL 35055

EXPENSE CHECK

ACCOUNT NUMBER    4820

Thirty five thousand dollars

DATE    9/29/06

AMOUNT    ***35,000.00

⑈025163⑈ ⑆062203714⑆ :000 4,2640⑈

PAY
TO
THE
ORDER OF:

CITY OF MONTGOMERY LEGAL OFFICE
MICHAEL D BOYLE
103 NORTH PERRY STREET
MONTGOMERY AL  36104

AUTHORIZED SIGNATURE

| CITY OF MONTGOMERY LEGAL OFFICE | | |
| INVOICE NO | DATE | AMOUNT PAID |
| SEP 2006 | 9/29/06 | 35,000.00 |
| CHECK AMOUNT - | | 35,000.00 |

| Vendor Number | 4820 |
| GL ACCOUNT | DESCRIPTION |
| 7000079320 | ORE DEMOLITION 80184837/M |

Mark Fredrick property

From: Demopolis House

Given to Engineering Department

AVSOG50

ALABAMA JUDICIAL DATA CENTER
MONTGOMERY        COUNTY

SUMMONS

CV 2005 00240S

IN THE CIRCUIT  COURT OF MONTGOMERY    COUNTY

MARK FREDERICK VS CITY OF MONTGOMERY

SERVE ON: (D001)

SSN: 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                    PLAINTIFF'S ATTORNEY

MGM CITY OF                         FULLER J DOYLE
103 N PERRY STREET      D1          2851 ZELDA ROAD

MONTGOMERY    ,AL  36104-0000       MONTGOMERY    ,AL  36106-0000

TO THE ABOVE NAMED DEFENDANT:

 THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST
TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS, YOU OR YOUR ATTORNEY ARE
REQUIRED TO MAIL OR HAND DELIVER A COPY OF A WRITTEN ANSWER, EITHER
ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT TO THE PLAINTIFFS
ATTORNEY(S) SHOWN ABOVE OR ATTACHED:

 THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS
AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGEMENT BY DEFAULT MAY BE
ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAIN
YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COUR

 (✓)  TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY EITHER RULES 4.1(B)(2) OR
      4.2(B)(2) OR 4.4(B)(2) OF THE ALABAMA RULES OF CIVIL PROCEDURE:
      YOU ARE HEREBY COMMANDED TO SERVE THIS SUMMONS AND A COPY OF THE
      COMPLAINT IN THIS ACTION UPON DEFENDANT.

 ( )  THIS SERVICE BY CERTIFIED MAIL OF THIS SUMMONS IS INITIATED UPON THE
      WRITTEN REQUEST OF _____ PURSUANT TO RULE 4.1(C)
      OF THE ALABAMA RULES OF CIVIL PROCEDURE.

DATE: 09/22/2005

                              CLERK:MELISSA RITTENOUR
                                    P O BOX 1667
                                    MONTGOMERY  AL  36102-1667
                                    (334)832-1266

RETURN ON SERVICE:

(  )CERTIFIED MAIL RETURN RECEIPT IN THIS OFFICE ON (DATE) _____
    (RETURN RECEIPT HERETO ATTACHED)

( )  I CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE SUMMONS AND
     COMPLAINT TO _____

_____ IN _____ COUNTY, ALABAMA ON (DATE) _____

_____              _____
DATE                                  SERVER SIG

_____              _____
SERVER ADDRESS                        TYPE OF PR

**DEFENDANT'S EXHIBIT 4**

OPERATOR: KAR
PREPARED: 09/22/2005

STATE OF ALABAMA
MONTGOMERY COUNTY

I, as Circuit Clerk, Montgomery County
Circuit Court, do hereby certify that the within
is a complete, true and correct copy of the
_____ Summons _____
on file in said office.

Witness my hand and the seal of said Court
is hereto affixed, this the _____ 13
day of _____ May _____ 2008

_____
CIRCUIT CLERK

# IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

| | |
|---|---|
| **MARK FREDERICK** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) CASE NO: CV-2005-_2408_ |
| **CITY OF MONTGOMERY** | ) |
| | ) |
| Defendant. | ) |
| | ) |

## NOTICE OF APPEAL

Comes now MARK FREDERICK as the owner of property known as Jasmine Garden Apartments located at the corner of Ann Street and Althea Street, in the City of Montgomery, Alabama, and hereby gives notice of appeal of the decision of the City Council of the City of Montgomery dated September 6, 2005, which purports to order the condemnation and demolition of the Plaintiffs property as above described.

Simultaneously herewith, Mark Frederick has posted the sum of $1,000.00 cash as security for costs in these proceedings.

_____
**J. DOYLE FULLER** (FUL005)
Attorney for Plaintiff
2851 Zelda Road
Montgomery, Alabama 36106

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Notice of Appeal was served upon the following by United States Mail, postage prepaid, on this the 16th day of September, 2005.

**BRENDA GALE BLALOCK**
**CITY CLERK**
P.O. Box 1111
Montgomery, Alabama 36101-1111

_____
**Counsel**

... OF ALABAMA
ONTGOMERY COUNTY

    as Circuit Clerk, Montgomery County Circuit Court, do hereby certify that the within is a complete, true and correct copy of the Notice of Appeal on file in said office.

  Witness my hand and the seal of said Court is hereto affixed, this the ___13___ day of ___May___ ___, 200X___

_____
CIRCUIT CLERK

# IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

**MARK FREDERICK**      )
                        )
Plaintiff,              )
                        )
vs.                     )
                        )  CASE NO:  CV-2005-____*2408*____
**CITY OF MONTGOMERY**  )
                        )
Defendant.              )
                        )

## SECURITY FOR COSTS

Comes now MARK FREDERICK and in conjunction with the Notice of

Appeal heretofore filed in this matter post herewith the sum of $1,000.00 cash

as security for costs in this matter.

This 16th day of September, 2005.

_____
**J. DOYLE FULLER** (FUL005)
Attorney for Plaintiff
2851 Zelda Road
Montgomery, Alabama 36106

APPROVED AS TO FORM AND AMOUNT:

CIRCUIT CLERK  9-16-05

STATE OF ALABAMA
MONTGOMERY COUNTY
I, as Circuit Clerk, Montgomery County
Circuit Court, do hereby certify that the within
is a complete, true and correct copy of the
_Security for costs_
on file in said office.
  Witness my hand and the seal of said Court
is hereto affixed, this the ___13___
day of _May_, _2008_
    _Melissa Billingea_
        CIRCUIT CLERK

# IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

**MARK FREDERICK**    )
    )
Plaintiff,    )
    )
vs.    )
    )  CASE NO: CV-2005-__2408__
**CITY OF MONTGOMERY**    )
    )
Defendant.    )
    )

2005 SEP 16 PM 2: 15

FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY

## STIPULATION WITH REGARD TO SECURITY FOR COSTS

1.    On or about September 6, 2005, the City Council of the City of

Montgomery directed that the buildings owned by Mark Frederick

known as Jasmine Garden Apartments and located at the corner of

Ann Street and Althea Street in the City of Montgomery be

demolished. On this date, and contemporaneously herewith, Mark

Frederick has filed an appeal to that decision to Circuit Court,

Montgomery County, Alabama, as provided by law.

2.    Under the provisions of the law and in conjunction with the filing of

this Notice of Appeal, Mark Frederick as an agrieved person and the

owner of the property, must also post a bond for security for costs in

the form and amount to be set by the Circuit Clerk. A question has

arisen as to what the appropriate amount of this bond should be and in

consultations between counsel for Mark Frederick and counsel for the

City of Montgomery, it has been agreed and stipulated that an

appropriate amount of the bond for security costs should be

$1,000.00.

3.    It is also agreed that Mark Frederick will post that bond in the form of

a cash payment to the Circuit Clerk.

So stipulated, this 16th day of September, 2005.

J. DOYLE FULLER (FUL005)
Attorney for Plaintiff
2851 Zelda Road
Montgomery, Alabama 36106

CITY ATTORNEY
CITY OF MONTGOMERY

STATE OF ALABAMA
MONTGOMERY COUNTY

I, as Circuit Clerk, Montgomery County
Circuit Court, do hereby certify that the within
is a complete, true and correct copy of the
Stipu w/ Regard to Security for
on file in said office.                            Costs.

Witness my hand and the seal of said Court
is hereto affixed, this the _____
day of _____

CIRCUIT CLERK

2

CNY

AVS0350                    ALABAMA JUDICIAL DATA CENTER
                           MONTGOMERY        COUNTY
                                SUMMONS
                                                        CV 2005 00240

                    IN THE CIRCUIT  COURT OF MONTGOMERY      COUNTY

MARK FREDERICK VS CITY OF MONTGOMERY

    SSN: 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                        PLAINTIFF'S ATTORNEY

                                            FULLER J DOYLE
                                            2851 ZELDA ROAD

                                            MONTGOMERY      ,AL  36106-000

TO THE ABOVE NAMED DEFENDANT:
    THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUS
TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE
REQUIRED TO MAIL OR HAND DELIVER A COPY OF A WRITTEN ANSWER, EITHER
ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT TO THE PLAINTIFFS
(ATTORNEYS) SHOWN ABOVE OR ATTACHED:
    THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMON
AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGEMENT BY DEFAULT MAY BE
ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAI
YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COU

    ( ✓ )  TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY EITHER RULES 4.1(B)(2) O
           4.2(B)(2) OR 4.4(B)(2) OF THE ALABAMA RULES OF CIVIL PROCEDURE:
           YOU ARE HEREBY COMMANDED TO SERVE THIS SUMMONS AND A COPY OF THE
           COMPLAINT IN THIS ACTION UPON DEFENDANT.

    ( )    THIS SERVICE BY CERTIFIED MAIL OF THIS SUMMONS IS INITIATED UPON TH
           WRITTEN REQUEST OF _____ PURSUANT TO RULE 4.1(C)
           OF THE ALABAMA RULES OF CIVIL PROCEDURE.

    DATE: 09/22/2005                    CLERK:MELISSA RITTENOUR
                                        P O BOX 1667
                                        MONTGOMERY  AL  36102-1667
                                        (334)832-1266

    RETURN ON SERVICE:
    ( )    CERTIFIED MAIL RETURN RECEIPT IN THIS OFFICE ON (DATE) _____
           (RETURN RECEIPT HERETO ATTACHED)

    (✓)    I CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE SUMMONS AND
           COMPLAINT TO _Walter Byars  legal dept_
           IN _Montgomery_ COUNTY, ALABAMA ON (DATE) _9-27-05_
    _9-27-05_                              _____
    DATE                                   SERVER SIGNATURE
                                                              630
    _____                      _____
    SERVER ADDRESS                         TYPE OF PROCESS SERVER

OPERATOR: KAR                                    FUL004
PREPARED: 09/22/2005

STATE OF ALABAMA
MONTGOMERY COUNTY

I, as Circuit Clerk, Montgomery County
Circuit Court, do hereby certify that the within
is a complete, true and correct copy of the
*Return of Service - Summons*
on file in said office.

Witness my hand and the seal of said Court
is hereto affixed, this the ____ 13
day of ____ May ____ 2008

____ Melissa Rittenour

CIRCUIT CLERK

# IN THE CIRCUIT COURT FOR
## MONTGOMERY COUNTY, ALABAMA

THE CITY OF MONTGOMERY,　　　　　)　Case No.: CV-2005-2408

　　　　　Appellant,　　　　　　　　　)　**RESPONSE TO NOTICE OF APPEAL**

　　vs.　　　　　　　　　　　　　　　)

CITY OF MONTGOMERY, CORPORAL　)

KOENER, et. al.,　　　　　　　　　　)

　　　　　Appellee　　　　　　　　　)

　　　　COMES NOW, Brenda Gale Blalock, City Clerk for the City of Montgomery, by and

through undersigned counsel, and files the attached excerpt from the minutes of the regular

meeting of the Montgomery City Council on September 6, 2002 containing those findings and

determinations of that legislative body which exist of record, in accordance with §11-40-32(b)

Ala. Code (1975).

　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　Wallace D. Mills (MIL 090),
　　　　　　　　　　　　　　　　　　　　　　　　Assistant City Attorney

OF COUNSEL:
City of Montgomery Attorney's Office
103 North Perry Street
Montgomery, AL 36104
(334) 241-2050

STATE OF ALABAMA
MONTGOMERY COUNTY

I, as Circuit Clerk, Montgomery County
Circuit Court, do hereby certify that the within
is a complete, true and correct copy of the
_Response to Notice of Appeal_
on file in said office.

Witness my hand and the seal of said Court
is hereto affixed, this the _____ 13
day of ___May_____, 2008

_____
CIRCUIT CLERK

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by causing it to be placed in the U.S. Mail, postage prepaid and properly addressed on this _12_ day of October, 2005, to the following:

J. Doyle Fuller, Esq.
2851 Zelda Rd.
Montgomery, AL 36106

Wallace D. Mills



# City of Montgomery, Alabama

*Montgomery City Council Members*

*City Clerk*
*Brenda Gale Blalock*

*Bobby N. Bright*
*Mayor*

Charles W. Jinright—President
James A. Nuckles—Pro Tem
Cornelius "C.C." Calhoun

Willie Cook
Tim Head
Janet Thomas May

Glen O. Pruitt, Jr.
Martha Roby
Jim Spear

STATE OF ALABAMA          )
COUNTY OF MONTGOMERY      )
CITY OF MONTGOMERY        )

    I, Brenda Gale Blalock, City Clerk of the City of Montgomery, Alabama, DO HEREBY CERTIFY that the attached is a true and correct copy of excerpts of the Minutes of the Regular Meeting of the Council of the City of Montgomery on September 6, 2005.

    GIVEN under my hand and the official SEAL of the City of Montgomery, Alabama, this the 12th day of October, 2005.

BRENDA GALE BLALOCK, CITY CLERK

SEAL

REGULAR MEETING
COUNCIL OF THE CITY OF MONTGOMERY
SPTEMBER 6, 2005 – 10:00 A.M.

The Council met in regular session on Tuesday, September 6, 2005, at 10:00 a.m., in the Council Chamber, City Hall, with the following members present:

PRESENT:     SPEAR, HEAD, MAY, NUCKLES, CALHOUN
             COOK, ROBY, PRUITT, JINRIGHT                                  –9

ABSENT :     NONE                                                          –0

The President of the Council, Charles Jinright, presided as Chairman of the meeting, and Brenda Gale Blalock, City Clerk, served as the Clerk of the meeting. The meeting was opened with prayer by Councillor Jim Spear and the Pledge of Allegiance.

Councillor Nuckles made a motion to adopt the minutes of the August 16, 2005, Council meeting, which motion carried with the following vote:

AYES:        SPEAR, HEAD, MAY, NUCKLES, CALHOUN
             COOK, ROBY, PRUITT, JINRIGHT                                  –9
NAYS:        NONE                                                          –0
ABSTAINED:   NONE                                                          –0
ABSENT:      NONE                                                          –0

\* \* \* \* \* \*

Councillor Head introduced the proposed demolition of the Jasmine Garden Apartments on Althea Street. Mr. Robert Black, Attorney, Mr. Gary Stevens, Attorney, and Mr. Mark Fredrick were present representing Jasmine Garden Apartments. Mr. Dory Brunson, Chief Building Official, was present representing the Housing Codes Division.

Councillor Head made a motion to uphold the recommendation of the Housing Codes Division and authorize the demolition of the Jasmine Garden Apartments on Althea Street, which motion carried with the following vote:

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY,
ALABAMA

MARK FREDERICK                    )
                                  )
Plaintiff,                        )
                                  )
Vs.                               )
                                  )          CASE NO.:CV-2005-2408
CITY OF MONTGOMERY                )
                                  )
Defendant.                        )

## AMENDED RESPONSE TO NOTICE OF APPEAL

COMES NOW, Brenda Gale Blalock, City Clerk for the City of Montgomery, by and through undersigned counsel, and files this Amended Response to Notice of Appeal for the purpose of correcting the style of the case set out above.

The said City Clerk hereby submits the attached excerpt from the minutes of the regular meeting of the Montgomery City Council on September 6, 2005 containing those findings and determinations of that legislative body which exist of record, in accordance with §11-40-32(b) Ala. Code (1975).

Respectfully submitted,

Wallace D. Mills (MIL 090),
Assistant City Attorney

OF COUNSEL:
City of Montgomery Attorney's Office
103 North Perry Street
Montgomery, AL 36104
(334) 241-2050

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by causing it to be placed in the U.S. Mail, postage prepaid and properly addressed on this _17_ day of October, 2005, to the following:

J. Doyle Fuller, Esq.
2851 Zelda Rd.
Montgomery, AL 36106

Wallace D. Mills

STATE OF ALABAMA
MONTGOMERY COUNTY

I, as Circuit Clerk, Montgomery County Circuit Court, do hereby certify that the within is a complete, true and correct copy of the _Amended Response to Notice of Appeal_ on file in said office.

Witness my hand and the seal of said Court is hereto affixed, this the _13_ day of _May_ _2008_



# City of Montgomery, Alabama

*City Clerk*
**Brenda Gale Blalock**

*Bobby N. Bright*
*Mayor*

*Montgomery City Council Members*
Charles W. Jinright—President    Willie Cook    Glen O. Pruitt, Jr.
James A. Nuckles—Pro Tem    Tim Head    Martha Roby
Cornelius "C.C." Calhoun    Janet Thomas May    Jim Spear

STATE OF ALABAMA       )
COUNTY OF MONTGOMERY   )
CITY OF MONTGOMERY    )

I, Brenda Gale Blalock, City Clerk of the City of Montgomery, Alabama, DO HEREBY CERTIFY that the attached is a true and correct copy of excerpts of the Minutes of the Regular Meeting of the Council of the City of Montgomery on September 6, 2005.

GIVEN under my hand and the official SEAL of the City of Montgomery, Alabama, this the 12th day of October, 2005.

BRENDA GALE BLALOCK, CITY CLERK

SEAL

REGULAR MEETING
COUNCIL OF THE CITY OF MONTGOMERY
SPTEMBER 6, 2005 – 10:00 A.M.

The Council met in regular session on Tuesday, September 6, 2005, at 10:00 a.m., in the Council Chamber, City Hall, with the following members present:

| | | |
|---|---|---|
| PRESENT: | SPEAR, HEAD, MAY, NUCKLES, CALHOUN | |
| | COOK, ROBY, PRUITT, JINRIGHT | –9 |
| ABSENT : | NONE | –0 |

The President of the Council, Charles Jinright, presided as Chairman of the meeting, and Brenda Gale Blalock, City Clerk, served as the Clerk of the meeting. The meeting was opened with prayer by Councillor Jim Spear and the Pledge of Allegiance.

Councillor Nuckles made a motion to adopt the minutes of the August 16, 2005, Council meeting, which motion carried with the following vote:

| | | |
|---|---|---|
| AYES: | SPEAR, HEAD, MAY, NUCKLES, CALHOUN | |
| | COOK, ROBY, PRUITT, JINRIGHT | –9 |
| NAYS: | NONE | –0 |
| ABSTAINED: | NONE | –0 |
| ABSENT: | NONE | –0 |

* * * * * *

Councillor Head introduced the proposed demolition of the Jasmine Garden Apartments on Althea Street. Mr. Robert Black, Attorney, Mr. Gary Stevens, Attorney, and Mr. Mark Fredrick were present representing Jasmine Garden Apartments. Mr. Dory Brunson, Chief Building Official, was present representing the Housing Codes Division.

Councillor Head made a motion to uphold the recommendation of the Housing Codes Division and authorize the demolition of the Jasmine Garden Apartments on Althea Street, which motion carried with the following vote:

| | | |
|---|---|---|
| AYES: | UNANIMOUS | –9 |
| NAYS: | NONE | –0 |
| ABSTAINED: | NONE | –0 |
| ABSENT: | NONE | –0 |

* * * * * *

There being no further business to come before the Council, the meeting, upon motion, duly adjourned at 11:50 a.m.

/s/ Brenda Gale Blalock



## IN THE CIRCUIT COURT FOR
## MONTGOMERY COUNTY, ALABAMA

MARK FREDERICK

      Plaintiff,

    vs.

CITY OF MONTGOMERY

      Defendant.

) Case No.: CV-2005-2408
)
) **MOTION TO EXPEDITE HEARING OR**
) **ORDER**
)
)
)
)
)
)
)

COMES NOW the City of Montgomery, by and through undersigned counsel, and moves this Honorable Court to expedite the hearing or final order in this case and as grounds therefore shows as follows:

1. That the City Council of the City of Montgomery, a duly elected legislative body with all of the rights and duties afforded them by Act 618 of the Alabama Legislature along with the other applicable laws of the State of Alabama, did vote, after notice and a hearing wherein the Appellant and his attorney were heard, to declare the subject properties, Jasmine Garden Apartments, a public nuisance and to abate the said nuisance through demolition of the structures;

2. That the said properties are a blight on the city and community, have been declared unsafe by the chief building official for the City of Montgomery, and are a haven for crime and drug activity;

3. That each day that these structures are allowed to stand poses an additional substantial risk of harm to the public;

4. That §11-40-32(b) of the Alabama Code states that "[a]ny trials shall be held without jury upon the determination that the governing body that the building or structure is unsafe to the extent that it is a public nuisance."

WHEREFORE, the above premises considered, the City of Montgomery moves this Honorable Court to issue an order determining that the structures are unsafe to the extent that they are unsafe in accordance with §11-40-32(b) of the Alabama Code at its earliest convenience, or, in the alternative, to hold a hearing on the issue at the Court's earliest opportunity.

Respectfully submitted,

Wallace D. Mills (MIL 090)
Assistant City Attorney

OF COUNSEL:
City of Montgomery Attorney's Office
103 North Perry Street
Montgomery, AL 36104
(334) 241-2050

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by causing it to be placed in the U.S. Mail, postage prepaid and properly addressed on this _17_ day of November, 2005, to the following:

J. Doyle Fuller, Esq.
2851 Zelda Rd.
Montgomery, AL 36106

Wallace D. Mills

STATE OF ALABAMA
MONTGOMERY COUNTY
I, as Circuit Clerk, Montgomery County
Circuit Court, do hereby certify that the within
is a complete, true and correct copy of the
Motion to Expedite Hearing or
on file in said office.                                 Order
Witness my hand and the seal of said Court
is hereto affixed, this the _____13_____
day of ___May_____ ____, 2008
_____
CIRCUIT CLERK

IN THE CIRCUIT COURT
MONTGOMERY COUNTY, ALABAMA

Mark Fredrick,
     Plaintiff,

vs.                                  CASE NO. CV-2005-2408-PR

City of Montgomery,
     Defendant.

ORDER

The above-styled matter is hereby SET for HEARING on Defendant's, City of

Montgomery, MOTION TO EXPEDIATE HEARING OR ORDER on December 15,

2005 at 8:30 a.m. in Courtroom 4C.

DONE this 21 NOV 2005.

_____
CHARLES PRICE, Circuit Judge

cc:    J. Doyle Fuller
       Walter Byars
       Wallace D. Mills

FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY
2005 NOV 22  PM 3:28

STATE OF ALABAMA
MONTGOMERY COUNTY

I, as Circuit Clerk, Montgomery County
Circuit Court, do hereby certify that the within
is a complete, true and correct copy of the
_order_
on file in said office.

Witness my hand and the seal of said Court
is hereto affixed, this the ___13___
day of ___May___ , ___2008___

_Selissa Villeneur_
CIRCUIT CLERK



# IN THE CIRCUIT COURT FOR
## MONTGOMERY COUNTY, ALABAMA

MARK FREDERICK )  Case No.: CV-2005-2408
)
Plaintiff, )  **MOTION TO RECONSIDER PROPOSED**
)  **ORDER AND RESCHEUDLE HEARING**
)
vs. )
)
CITY OF MONTGOMERY )
)
Defendant. )
)
)

**COMES NOW** the City of Montgomery, by and through the undersigned attorney, and moves this Honorable Court to reconsider Plaintiff's proposed order and to reset the hearing in this case, and as grounds therefore, states as follows: that Defendant had no knowledge of the hearing scheduled for December 15, 2005; that because of recent changes in personnel at the undersigned's office, the City's box in the Clerk's office went un-checked for an extended period of time and the undersigned failed to get the notice of the hearing held on December 15, 2005.

Submitted this the _16_ day of December, 2005.

Wallace D. Mills (MIL 090)
Assistant City Attorney

OF COUNSEL:
City of Montgomery Attorney's Office
103 North Perry Street
Montgomery, AL 36104
(334) 241-2050

2005 DEC 16 PM 3: 23
FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by causing it to be placed in the U.S. Mail, postage prepaid and properly addressed on this _16_ day of December, 2005, to the following:

J. Doyle Fuller, Esq.
2851 Zelda Rd.
Montgomery, AL 36106

Wallace D. Mills

STATE OF ALABAMA
MONTGOMERY COUNTY
I, as Circuit Clerk, Montgomery County Circuit Court, do hereby certify that the within is a complete, true and correct copy of the _Motion to Reconsider Proposed Order_ on file in said office. _and Reschedule Hearing_
Witness my hand and the seal of said Court is hereto affixed, this the _13_ day of _May_, _2008_
_Melissa Williams_
CIRCUIT CLERK

# IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

**MARK FREDERICK**              )
                               )
Plaintiff,                      )
                               )
vs.                             )
                               )   CASE NO:  CV-2005-2408-PR
**CITY OF MONTGOMERY**          )
                               )
Defendant.                      )
                               )

## ORDER

By prior Order, dated November 21, 2005, this Court set the Defendant, City of Montgomery's (the City) "Motion to Expedite Hearing on Order," for argument at 8:30 a.m., December 15, 2005.

At the appointed time, counsel for the Plaintiff appeared, but when the matter was called by the Court, no one appeared on behalf of the City.

Accordingly, the City's "Motion to Expedite Hearing on Order" is hereby denied.

DONE this the _16_ day of December, 2005.

_____
Charles Price, Circuit Judge

cc: J. Doyle Fuller
    Walter Byars
    Wallace D. Mills

2005 DEC 16  AM 10: 45

STATE OF ALABAMA
MONTGOMERY COUNTY

I, as Circuit Clerk, Montgomery County
Circuit Court, do hereby certify that the within
is a complete, true and correct copy of the
_Order_
on file in said office.

Witness my hand and the seal of said Court
is hereto affixed, this the _____ 13
day of _May_ . _2008_

_Jeliana Pittenger_
CIRCUIT CLERK



# IN THE CIRCUIT COURT OF
## MONTGOMERY COUNTY, ALABAMA

Mark Fredrick,
     Plaintiff (s),

vs.

CASE NO.CV-2005-2408-PR

City of Montgomery,
     Defendant (s).

## <u>ORDER</u>

The above-styled matter comes before the Court on Defendant's, City of

Montgomery, MOTION TO RECONSIDER PROPOSED ORDER AND

RESCHEDULE HEARING.  Upon consideration of the same, the Court finds that the

MOTION is due to be and is hereby DENIED.

Done this the 4 JAN 2006.

_____
CHARLES PRICE, Circuit Judge

cc:     J. Doyle Fuller
        Walter Byars
        Wallace D. Mills

FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY
2006 JAN -4 PM 3: 08

STATE OF ALABAMA
MONTGOMERY COUNTY

I, as Circuit Clerk, Montgomery County
Circuit Court, do hereby certify that the within
is a complete, true and correct copy of the
_Order_

on file in said office.

Witness my hand and the seal of said Court
is hereto affixed, this the _13_
day of _May_, _2008_

CIRCUIT CLERK

CNP

**IN THE CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA**

Mark Fredrick,
    Plaintiff (s),

vs.

CASE NO.CV-2005-2408-PR

City of Montgomery,
    Defendant (s).

**ORDER**

The above-styled matter is hereby RESET for a STATUS CONFERENCE on

April 25, 2006 at 1:30 p.m. in Courtroom 4C.

Done this the 5 APR 2006.

_____
CHARLES PRICE, Circuit Judge

cc:    J. Doyle Fuller
       Walter Byars
       Wallace D. Mills

2006 APR 13 PM 2:33
FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY

STATE OF ALABAMA
MONTGOMERY COUNTY

I, as Circuit Clerk, Montgomery County
Circuit Court, do hereby certify that the within
is a complete, true and correct copy of the

_____ *Order* _____

on file in said office.

Witness my hand and the seal of said Court
is hereto affixed, this the _____ 13
day of ___ May _____ 2008

___ Melissa Rittenour ___

CIRCUIT CLERK



# IN THE CIRCUIT COURT OF
## MONTGOMERY COUNTY, ALABAMA

MARK FREDERICK )  Case No.: CV-2005-2408
   Plaintiff, )
vs. )  **NOTICE OF APPEARANCE**
CITY OF MONTGOMERY )
   Defendant. )
             )
             )
             )
             )
             )
             )
             )

   COMES NOW Walter R. Byars, City Attorney for the City of Montgomery, and gives

notice to this Honorable Court that he is filing his appearance on behalf of the City of

Montgomery in the above-styled action and respectfully requests that copies of all pleadings and

communications be forwarded to him.

   Respectfully submitted this the _37_ day of April, 2006.

              Walter R. Byars (BYA002)
              City Attorney

CITY OF MONTGOMERY
Legal Department
Post Office Box 1111
Montgomery, AL 36101-1111
Telephone: (334) 241-2050
Facsimile: (334) 241-2310

FILED
CECIL CIRCUIT COURT OF
MONTGOMERY COUNTY
2006 APR 27 PM 3: 14



## IN THE CIRCUIT COURT OF
## MONTGOMERY COUNTY, ALABAMA

|  |  |  |
|---|---|---|
| MARK FREDERICK | ) | Case No.: CV-2005-2408 |
| Plaintiff, | ) ) ) | **OBJECTION TO JURY TRIAL** |
| vs. | ) ) | |
| CITY OF MONTGOMERY | ) ) | |
| Defendant. | ) ) ) | |

FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY
2006 APR 27 PM 3:14

COMES NOW the City of Montgomery, by and through undersigned counsel, and objects to the setting of this cause for a jury trial and in support thereof, says as follows:

1. That this Court set a jury trial in this case for September 12, 2006 at 9:00 a.m.;

2. That the case comes to this Court as a statutory appeal from the declaration of demolition by the Montgomery City Council;

3. That the standard of review of a legislative act is whether or not the legislative act in question is "clearly arbitrary, capricious and unreasonable, and having no substantial relation to public health, safety or welfare." Homewood Citizens' Association v. City of Homewood, 548 So.2d 142 (Ala.1989). If the Court finds that there is a "rational and justifiable basis" for the action, the action should be left alone. Id.

4. That whether or not the actions of the city council were arbitrary or capricious is a question of law to be determined by the judge and not a question of fact to be determined by a jury.

CNP

# IN THE CIRCUIT COURT OF
## MONTGOMERY COUNTY, ALABAMA

Mark Fredrick,
    Plaintiff (s),

vs.

CASE NO.CV-2005-2408-PR

City of Montgomery,
    Defendant (s).

## ORDER

This cause having come before the Court for scheduling, the same having been considered, it is hereby **ORDERED, ADJUDGED, and DECREED** that this action is SET for **Jury Trial** on 9/12/2006 at 9:00 a.m. in Courtroom 4C.

**IT IS FURTHER ORDERED** that the following cut-offs dates are hereby established:

    **Expert Witnesses** are to be exchanged four (4) weeks prior to trial date.
    **Discovery** is to be completed four (4) weeks prior to trial date.
    **Motions, Objections to Exhibits** are to be filed two (2) weeks prior to trial date.
    **Witness Lists** must be exchanged four (4) weeks prior to trial date.
    **Exhibits** must be exchanged five (5) weeks prior to trial date.

    **A Pre-Trial Hearing** is SET for 8/18/2006 at 8:30 a.m.

Counsel for each party shall jointly prepare a pretrial order in substantial compliance with the matters set out in Rule 16 ARCP, and submit it to the Court on the date herein above set for the pretrial conference.

Done this the 25 APR 2006.

CHARLES PRICE, Circuit Judge

FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY
2006 APR 26 AM 8:59

cc:    J. Doyle Fuller
       Walter Byars
       Wallace D. Mills

STATE OF ALABAMA
MONTGOMERY COUNTY

I, as Circuit Clerk, Montgomery County
Circuit Court, do hereby certify that the within
is a complete, true and correct copy of the

_Order_

on file in said office.

  Witness my hand and the seal of said Court
is hereto affixed, this the ___13___
day of ___May___ , ___2008___

_Melissa Rittenour_

CIRCUIT CLERK

# IN THE CIRCUIT COURT OF
## MONTGOMERY COUNTY, ALABAMA

MARK FREDERICK
      Plaintiff,
  vs.
CITY OF MONTGOMERY
      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: CV-2005-2408

**NOTICE OF APPEARANCE**

    COMES NOW Michael D. Boyle, City Attorney for the City of Montgomery, and gives notice to this Honorable Court that he is filing his appearance on behalf of the City of Montgomery in the above-styled action and respectfully requests that copies of all pleadings and communications be forwarded to him.

    Respectfully submitted this the ____9____ day of May, 2006.

Michael D. Boyle (Boy032)
Staff Attorney

CITY OF MONTGOMERY
Legal Department
Post Office Box 1111
Montgomery, AL 36101-1111
Telephone: (334) 241-2050
Facsimile:  (334) 241-2310

2006 MAY -9  PM 3: 27
FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY

STATE OF ALABAMA
MONTGOMERY COUNTY

I, as Circuit Clerk, Montgomery County
Circuit Court, do hereby certify that the within
is a complete, true and correct copy of the

_Order_

on file in said office.

Witness my hand and the seal of said Court
is hereto affixed, this the _13_
day of _May_ , _2008_

_Melissa Williams_

CIRCUIT CLERK

# IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

FILED
CIRCUIT COURT OF
MONTGOMERY County
2006 JUN 22  PM 12: 43

| | |
|---|---|
| **MARK FREDERICK** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) CASE NO:  CV-2005-2408-PR |
| **CITY OF MONTGOMERY** | ) |
| | ) |
| Defendant. | ) |
| | ) |

## JOINT STIPULATION OF CERTAIN FACTS

Come now the parties to this asue and stipulate that the following are true

facts, and that the facts so stipulated may be treated as established facts in this

case and used therein for any purpose without the necessity of further proof:

1.    That on October 21, 2005, the City of Montgomery sent notice to

MARK FREDERICK of its intention to demolish the structures which

are the subject of this litigation.

2.    That the provisions of §11-40-30 Code of Ala. 1975, which controls

these proceedings requires that:

Whenever the appropriate muncipal official of the municipality finds
that any building, structure, part of building or structure, party wall, or
foundation situated in the municipality is unsafe to the extent that it is
a public nuisance, the offical shall give the person or persons, firm,
association or corporation last assessing the property for state taxes
and all mortgagees of record, by certified or registered mail to the
address on file in the tax collector's or revenue commissioner's office,
notice to remedy the unsafe or dangerous condition of the building or

1

structure, or to demolish the same, with a reasonable time set out in the notice, which time shall not be less than 30 days or suffer the building or structure to be demolished by the municipality and the cost thereof assessed against the property. The mailing of the certified or registered mail notice, properly addressed and postage prepaid, shall constitute notice as required herein.

3.    That Eva Bank is the mortgagee, holding a mortgage on the subject

property as evidenced by Exhibit "A" attached hereto.

4.    That the Office of the Revenue Commissioner of Montgomery

County, Alabama, does not maintain a record of the address of any

mortgagees of property in this county.

5.    That the City of Montgomery sent the required notice to the Owner

only, and did not send any notice under § 11-40-31 to the mortgagee

in this case because no mortgagee was listed on the tax collection's or

revenue commissioner's office records.

So stipulated, this 21st day of June, 2006.

J. DOYLE FULLER (FUL005)
Attorney for Plaintiff
2851 Zelda Road
Montgomery, Alabama 36106

STATE OF ALABAMA
MONTGOMERY COUNTY
I, as Circuit Clerk, Montgomery County
Circuit Court, do hereby certify that the within
is a complete, true and correct copy of the
Joint Stipu of Certain Facts
on file in said office.   Exhibits attached
  Witness my hand and the seal of said Court
is hereto affixed, this the ____13____
day of ___May___  ___P___, __2008__
          _____
          CIRCUIT CLERK

MICHAEL D. BOYLE (BOY032)
CITY OF MONTGOMERY
P.O. Box 1111
Montgomery, Alabama 36101-1111

2

RLPY 2790  PAGE  0727

STATE OF ALABAMA )
:
COUNTY OF MONTGOMERY )

## MORTGAGE AND SECURITY AGREEMENT

THIS MORTGAGE AND SECURITY AGREEMENT (hereinafter referred to as this "Mortgage") made as of the 5th day of December, 2003 by MARK FREDERICK, an unmarried man, whose principal address is 1417 Second Street #H307, Coronado, California 92118 (hereinafter referred to as "Mortgagor"), to EVA BANK, an Alabama corporation, with an address of 1710 Cherokee Avenue, SW, Cullman, Alabama 35055 (hereinafter referred to as "Mortgagee");

### WITNESSETH:

That for good and valuable consideration, and to secure the payment of the aggregate sum of money named in the promissory note of even date herewith, hereinafter mentioned, together with interest thereon, and all renewals or extensions thereof and all other sums of money secured hereby as hereinafter provided, the Mortgagor has bargained and sold to Mortgagee, its successors and assigns, and hereby does grant, bargain, sell, convey and assign unto the Mortgagee, its successors and assigns, that certain real property located in Montgomery County, Alabama which is more particularly described in Exhibit "A" attached hereto and hereby made a part hereof (such real property hereinafter referred to as the "Land"),

TOGETHER with all buildings, structures and other improvements now or hereafter attached to or located on the Land, or any part or parcel thereof, and

TOGETHER with all and singular the tenements, hereditaments, easements and appurtenances thereunto or unto any part thereof now or hereafter belonging or in any wise appertaining, and all streets, strips and gores of land, alleys, passages, ways, water courses, and all leasehold estates, rights-of-way, easements and covenants now existing or hereafter created for the benefit of Mortgagor or any subsequent owner or tenant of the Land, and all rights to enforce the maintenance thereof, and all other rights, privileges and liberties of whatsoever kind or character, and the reversions and remainders thereof, and all estate, right, title, interest, property, possession, claim and demand whatsoever, at law or in equity, of Mortgagor in and to the Land or any part thereof, and

TOGETHER with all building materials, fixtures, building machinery and building equipment delivered on site to the Land during the course of or in connection with the construction, reconstruction or remodeling of any of the aforesaid buildings, structures, or other improvements, and

TOGETHER with all personal property of every kind and description, and all apparatus, chattels, and fixtures now or hereafter erected or placed in or upon the Land or any improvement thereon or now or hereafter attached to or used in connection with the Land or any improvement thereon, and all additions thereto and all replacements thereof, whether or not the same have or

**EXHIBIT**

**A**

RLPY 2790 PAGE 0728

would become part of the Land by attachment thereto, including without limiting the generality of the foregoing, all signs, furnaces, heaters, gas and electric light fixtures, refrigerating, ventilating, incinerating, garbage disposal and air conditioning apparatus and equipment, all elevators, screens, doors, awnings, blinds, drapes, carpets, floor coverings, furnishings, appliances, coolers, freezers, refrigerators, stoves, storm windows, fire extinguishers, vehicles, inventory, supplies, and also all shrubbery or plants now or hereafter located on the Land or improvements, all of which shall to the extent permitted by law be considered as annexed to or forming a part of the Land (all of which is hereinafter referred to as the "Equipment"), and

TOGETHER with all monies and proceeds (hereinafter referred to collectively as the "Proceeds") derived by Mortgagor from the Land, Equipment, or said apparatus, chattels, fixtures, buildings, structures, improvements, leases, tenant contracts, occupancy agreements, rental agreements, contracts, licenses, permits, rents, issues or profits, including but not limited to all revenue, receipts, rents, refunds, rebates, tenant reimbursements, condemnation awards and proceeds of the sale of, insurance on or other borrowings secured in whole or in part by any of the Land, Equipment, or said apparatus, chattels, fixtures, buildings, structures, improvements, leases, tenant contracts, rental agreements, contracts, licenses, permits, rents, issues and profits; reserving only the right to Mortgagor to collect the Proceeds (except as otherwise provided herein) so long as no Event of Default, as hereinafter defined, shall have occurred, and

TOGETHER with all books and records, the benefit of any deposits or payments now or hereafter made by Mortgagor or on behalf of Mortgagor, all franchise agreements, license agreements, tradenames, trademarks, service marks, logos and goodwill related thereto which in any way now or hereafter belong, relate or appertain to the Land, Equipment or Proceeds or any part thereof or are now or hereafter acquired by Mortgagor; all security deposits, and other deposits, and all other general intangibles and personal property of every kind and nature whatsoever now or hereafter owned by Mortgagor and located in, on or about, or used or intended to be used with or in connection with the use, operation or enjoyment of the Land, Equipment or Proceeds (all of which is hereinafter referred to as the "Intangibles");

TO HAVE AND TO HOLD the said bargained property (all of which is collectively referred to herein as the "Premises") unto Mortgagee, its successors and assigns, forever.

1.      Indebtedness Secured.  This Mortgage secures the following (hereinafter referred to collectively as the "Indebtedness"):

(i)      the payment of an indebtedness in the maximum principal amount of NINE HUNDRED SEVENTY-SIX THOUSAND NO/100 DOLLARS ($976,000.00), with interest thereon, as evidenced by that certain promissory note of even date herewith, executed and delivered by Mortgagor to Mortgagee (said promissory note, as same may be amended, modified, extended or renewed from time to time, being hereinafter referred to as the "Note") and all renewals, modifications, consolidations or extensions thereof;

(ii)      the payment of all interest, default interest, late chares and other sums now or hereafter payable under this Mortgage, under the Note, or under any other instrument now or

2

hereafter evidencing or securing the indebtedness evidenced by the Note, together with all renewals, extensions, consolidations or modifications of any thereof;

        (iii)    the payment of all other monies agreed or provided to be paid by Mortgagor in the Note, this Mortgage, or under any other instrument now or hereafter evidencing or securing the indebtedness evidenced by the Note, together with all renewals, extensions, consolidations or modifications of any thereof;

        (iv)    the payment of any and all other indebtedness now owing or which may hereafter be owing by Mortgagor to Mortgagee, now existing or hereafter coming into existence, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, consolidations or extension thereof;

        (v)    the payment of any and all additional advances made and expenses incurred by Mortgagee to protect or preserve the Premises or the lien hereof on the Premises, or for taxes, assessments or insurance premiums as hereinafter provided;

        (vi)    the performance of all other obligations of Mortgagor contained herein;

        (vii)    the performance of each obligation of Mortgagor contained in the Note in addition to the payment of the indebtedness evidenced thereby  and of Mortgagor contained herein, or in any other instrument now or hereafter evidencing or securing the indebtedness evidenced by the Note; and

        (viii)    the payment and performance of each debt and obligation of Mortgagor contained in any renewal, extension, modification, consolidation, change, substitution, replacement for, restatement or increase of all or any part of the Note, this Mortgage, or any other Loan Document (as hereinafter defined).

        MORTGAGOR FURTHER COVENANTS AND AGREES WITH MORTGAGEE AS FOLLOWS:

        2.     <u>Title of Mortgagor</u>.  Mortgagor is well and lawfully seized and possessed of the Premises with a good and indefeasible title in fee simple; Mortgagor will warrant and defend the Premises against all claims and demands whatsoever.

        3.     <u>Payment of Indebtedness</u>.  Mortgagor will pay when due the Indebtedness and all other sums secured hereby.

        4.     <u>Maintenance</u>.  Mortgagor shall keep the Premises protected and in good order, repair and condition at all times, reasonable wear and tear excepted, promptly replacing, restoring or rebuilding to its original condition any part thereof which may become lost, destroyed or unsuitable

RLPY 2790 PAGE 0730

for use for any reason, including fire, storm, or other casualty. Mortgagor will immediately notify Mortgagee if any part of the Premises is damaged by fire or other casualty.

     5.    <u>Insurance</u>. Mortgagor shall keep the Premises and the interests and liabilities incident to the ownership, possession and operation thereof insured in manner and form, with companies, and for sums and periods satisfactory to Mortgagee and in connection therewith, shall procure for, deliver to and maintain for the benefit of Mortgagee during the term of this Mortgage, original paid-up insurance policies containing standard non-contributory mortgage clauses satisfactory to Mortgagee, insuring against loss from casualty, flood, rent loss, business income, liability and such other risks as Mortgagee may require; provided however, Mortgagee makes no representations that such insurance will be sufficient to cover any loss. All insurance policies are to be held by and, to the extent of its interests, are to be for the benefit of and first payable in case of loss to Mortgagee, and Mortgagor shall deliver to Mortgagee a new policy as replacement for any expiring policy at least thirty (30) days before the date of such expiration. All amounts recoverable under any such policy are hereby assigned to Mortgagee and in the event of a loss the amount collected may, at the option of Mortgagee, after deducting therefrom Mortgagee's reasonable attorney's fees and other expenses incurred in the collection and administration thereof, be used in such one or more of the following ways and in such order as Mortgagee in its discretion shall determine: (i) applied upon the Indebtedness, whether the Indebtedness or any part thereof then be matured or unmatured, (ii) used to fulfill any of Mortgagor's covenants and agreements contained herein as Mortgagee may determine, (iii) used to replace or restore the Premises or any part thereof to a condition satisfactory to Mortgagee, or (iv) released to Mortgagor. Mortgagee is hereby irrevocably appointed by Mortgagor as attorney-in-fact of Mortgagor, at Mortgagee's option, to adjust or compromise any loss under any insurance policies maintained pursuant to this paragraph, to collect and receive the proceeds from any such policy or policies, and to assign any policy without accounting for any unearned premium thereon in the event of the foreclosure of this Mortgage or a conveyance by Mortgagor in lieu of any such foreclosure.

     6.    <u>Compliance with Laws</u>. Mortgagor will promptly comply with all present and future laws, ordinances, rules and regulations of any governmental authority affecting the Premises or any part thereof.

     7.    <u>Taxes and Assessments</u>. Mortgagor will pay, before the same become delinquent, all taxes, assessments, water, sewer and other rents, charges, excises, levies, license fees, permit fees and all other charges (in each case, whether general or special, ordinary or extraordinary, or foreseen or unforeseen) of every character (including all penalties and interest thereon) now or hereafter levied, assessed, confirmed or imposed on, or in respect of, or which may be a lien upon the Premises or any part thereof, or any estate, right or interest therein, or upon the rents, issues, income or profits thereof, and will submit to Mortgagee such evidence of the due and punctual payment of all such taxes, assessments, and charges as Mortgagee may require. Mortgagor will pay all taxes, assessments and charges which may be levied on the Note or the ownership thereof or the interest thereon, or on this Mortgage or the ownership thereof (including without limitation, any intangibles, mortgage or documentary tax levied by the State of Alabama), excepting the Federal Income Tax imposed under the laws of the United States of America and any Income Tax imposed under the laws of any State. Provided further however, if for any reason payment by Mortgagor of any such taxes,

4

RLPY 2790 PAGE 0731

assessments and charges should be unlawful or if the payment thereof would constitute usury or render the Indebtedness wholly or partially usurious under any of the terms or provisions of the Note, or this Mortgage, or otherwise, Mortgagee may, at its option, declare the entire amount secured by this Mortgage, with interest thereon, to be due and payable six (6) months after notice is given to Mortgagor of the exercise of such option, or Mortgagee may, at its option, pay that amount or portion of such taxes, assessments and charges as render the Indebtedness unlawful and usurious, in which event Mortgagor shall concurrently therewith pay the remaining lawful and nonusurious portion or balance of said taxes, assessments and charges.    Provided, however, Mortgagor shall not be in breach of its covenants under this paragraph with respect to any tax, assessment or charge while it is in good faith contesting the same and provided any liens are released (by payment, bonding or otherwise) within the earlier of 30 days after the date of filing thereof and 15 days after Mortgagor received actual notice thereof.

8.    <u>Performance by Mortgagee</u>.  If Mortgagor fails to observe or perform any of Mortgagor's covenants set forth in this Mortgage, then Mortgagee, at its option, may perform and observe the same, and all reasonable payments made and costs incurred by Mortgagee in connection therewith, and reasonable attorney's fees, shall be secured hereby, and, upon demand, shall be repaid by Mortgagor, with interest thereon at the interest rate then provided in the Note, calculated from the date any such payment is made.  Mortgagee is hereby empowered to enter and to authorize others to enter upon the Premises or any part thereof for the purpose of performing or observing any such defaulted covenant, without thereby becoming liable to Mortgagor or any person in possession holding under Mortgagor, subject to rights of tenants in possession.

9.    <u>Waste or Alteration</u>.   Mortgagor (i) will not commit waste or permit impairment or deterioration of the Premises; (ii) shall not abandon the Premises; (iii) shall keep the Premises, including improvements, fixtures, equipment, machinery and appliances that may be now or hereafter located thereon in good repair and shall replace fixtures, equipment, machinery and appliances on the Premises when necessary to keep such items in good repair; (iv) shall generally operate and maintain the Premises in a manner to ensure maximum revenue; and (v) shall give notice in writing to Mortgagee of and, unless otherwise directed in writing by Mortgagee, appear in and defend any action or proceeding purporting to affect the Premises, the security of this Mortgage or the rights or powers of Mortgagee hereunder.  Neither Mortgagor nor any tenant, occupant or other person shall remove, demolish or alter any improvements hereafter erected on the Premises or any fixture, equipment, machinery or appliance in or on the Premises except when incident to the replacement of fixtures, equipment, machinery and appliances with items of like kind.

10.    <u>Condemnation</u>.  Mortgagor hereby assigns to Mortgagee all awards hereafter made by virtue of any exercise of the right of condemnation or eminent domain by any authority, including any award for damages to or taking of title to the Premises or any part thereof, or the possession thereof, or any right of easement affecting the Premises or appurtenant thereto (including any award for any change of grade of streets), and the proceeds of all sales in lieu of condemnation. Mortgagor, immediately upon obtaining knowledge of the institution, or the proposed, contemplated or threatened institution, of any action or proceeding for the taking through condemnation of the Premises or any part thereof will notify Mortgagee, and Mortgagee is hereby authorized, at its option, to commence, appear in and prosecute, through counsel selected by Mortgagee, in its own name or in

5

RLPY 2790 PAGE 0732

Mortgagor's name, any action or proceeding relating to any condemnation, and to settle or compromise any claim in connection therewith, and the reasonable expenses thereof shall be secured hereby, and, upon demand, shall be repaid by Mortgagor. Mortgagee, at its option, is hereby authorized to collect and receive all such awards and the proceeds of all such sales and to give proper receipts and acquittances therefor and Mortgagee, at its election, may use such awards and proceeds in any one or more of the following ways and in such order as Mortgagee in its discretion shall determine: (i) apply the same or any part thereof upon the Indebtedness whether then matured or unmatured, (ii) use the same or any part thereof to fulfill any of the covenants and agreements of Mortgagor hereunder as Mortgagee may determine, (iii) pay the same or any part thereof to Mortgagor for the purpose of replacing, restoring or altering the Premises to a condition satisfactory to Mortgagee, or (iv) release the same to Mortgagor. Mortgagor agrees to execute and deliver such other instruments as Mortgagee may require evidencing the assignment of all such awards and proceeds to Mortgagee. Any excess of such award after Mortgagee applies the same as aforesaid shall be refunded by Mortgagee to Mortgagor.

11. <u>Mortgagee's Expenses</u>. If Mortgagee is made a party to or appears as a party plaintiff or defendant in any suit, action, dispute, or proceeding affecting the Premises, the Note, any amount secured hereby, or the validity or priority of this Mortgage, then Mortgagor shall, upon demand, reimburse Mortgagee for all reasonable expenses incurred by Mortgagee by reason of any such suit, action, dispute or proceeding, including reasonable attorney's fees, and the same shall be secured hereby.

12. <u>Subrogation of Mortgagee</u>. Mortgagee shall be subrogated to any encumbrance, lien, claim or demand (including all the rights therein and security for the payment thereof) paid or discharged with the proceeds of the Indebtedness, or by Mortgagee under the provisions hereof, and each of them is hereby preserved and shall pass to and be held by Mortgagee as further security for the Indebtedness.

13. <u>Use of the Premises</u>. During the existence of this Mortgage, Mortgagor will at all times use and operate each Premises as an apartment complex and for purposes incidental thereto or use otherwise approved by Mortgagee, and will not abandon the Premises without the prior written consent of Mortgagee.

14. <u>Prior Liens/Development Fees/Additional Indebtedness</u>.

(a)    Mortgagor will not permit any part of the Premises to become subject to any security interest, conditional sale contract, title retention arrangement or other charge or lien taking precedence over the lien and interest hereof.

(b)    Mortgagor will not pay or incur any development fees or incentive fees without the prior written consent of Mortgagee.

(c)    Mortgagor shall not incur any additional indebtedness or sell, transfer, assign, lease (except as consented to by Mortgagee in writing), pledge or otherwise convey any of its rights, title and interest in and to the Premises without the prior written consent of Mortgagee.

6

RLPY 2790  PAGE  0733

15.  Escrow of Taxes and Insurance.  Mortgagor will pay to Mortgagee, to the extent requested by Mortgagee, on the dates upon which interest under the Note is payable, such amounts as Mortgagee from time to time estimates as necessary to create and maintain a reserve fund from which to pay, before the same become due, all taxes, assessments, liens or charges on or against the Premises, and premiums for insurance required hereunder to be paid by Mortgagor.  Such reserve funds shall be held by Mortgagee, free of interest, and free of any liens or claims on the part of creditors of Mortgagor and as part of the security of Mortgagee.  Such funds shall not be, nor be deemed to be, trust funds but may be commingled with the general funds of Mortgagee. Payments from said reserve fund for said purposes may be made by Mortgagee at its discretion even though subsequent owners of the Premises may benefit thereby.  Upon the occurrence of an Event of Default hereunder, any part or all of said reserve fund may in Mortgagee's discretion be applied to any part of the Indebtedness, and in refunding any part of said reserve fund, Mortgagee may deal with whomever is represented to be the owner of the Premises at that time.

16.  Interest Rate Upon Default; Attorney Fees.  Subsequent to the occurrence of an Event of Default and the acceleration of the Indebtedness evidenced by the Note, the principal of the Note then outstanding shall bear interest at four (4%) percent per annum in excess of the interest rate provided in the Note in the absence of such Event of Default.  In the event the Note or any amount secured hereby is collected by suit or through an attorney, Mortgagor agrees to pay all costs of collection, including, but not limited to, reasonable attorney's fees actually incurred in connection with the protection or realization of collateral or in connection with any of Mortgagee's collection efforts, whether or not suit on the Note or any foreclosure proceeding hereunder is filed, and all such costs and expenses shall be due and payable on demand and shall be a part of the Indebtedness and secured hereby.

17.  Conveyance of Premises.

(a)  Mortgagor hereby acknowledges to Mortgagee that (i) the identity and expertise of Mortgagor was and continue to be material circumstances upon which Mortgagee has relied in connection with, and which constitute valuable consideration to Mortgagee for, extending to Mortgagor the indebtedness evidenced by the Note, and (ii) any change in such identity or expertise could materially impair or jeopardize the security for the payment of the Note granted to Mortgagee by this Mortgage.  Mortgagor therefore covenants and agrees with Mortgagee, as part of the consideration for extending to Mortgagor the indebtedness evidenced by the Note, that Mortgagor shall not encumber, pledge, lease, convey, transfer or assign any or all of its interest in the Premises, without the prior written consent of Mortgagee, which shall be in Mortgagee's sole and absolute discretion, and may be arbitrarily withheld.  Mortgagor shall reimburse Mortgagee for all reasonable costs actually incurred by Mortgagee in giving its consent under this paragraph.

(b)  Mortgagor shall furnish Mortgagee with executed copies of all leases, occupancy agreements or the like for all or any portion of the Premises (the "Leases").  In addition, all Leases shall provide for market rental rates and terms and shall be arms-length transactions.  All Leases shall provide that they are subordinate to this Mortgage and that the lessee agrees to attorn to Mortgagee.  Each lessee or occupant, if requested by Mortgagee, shall execute a tenant estoppel and

RLPY 2790 PAGE 0734

subordination agreement in a form and with content acceptable to Mortgagee in Mortgagee's sole reasonable discretion.

(c)    Mortgagor (i) shall observe and perform all the obligations imposed upon the lessor under the Leases and shall not do or permit to be done anything to impair the value of the Leases as security for the Indebtedness; (ii) shall enforce all of the material terms, covenants and conditions contained in the Leases upon the part of the lessee thereunder to be observed or performed, short of termination thereof; (iii) shall not collect any of the Rents more than five (5) days in advance; (iv) shall not execute any other assignment of the lessor's interest in the Leases or the Rents; and (v) shall not consent to any assignment of or subletting under the Leases not in accordance with their terms, without the prior written consent of Mortgagee.

18.    <u>Books, Records, Accounts and Annual Reports</u>.  Mortgagor will keep and maintain or will cause to be kept and maintained, at Mortgagor's cost and expense, proper and accurate books, records and accounts reflecting all items of income and expense in connection with the operation of the Premises and in connection with any services, equipment or furnishings provided in connection with the operation of the Premises.  Mortgagee, by Mortgagee's agents, accountants and attorneys, shall have the right from time to time to examine such books, records and accounts at the office of Mortgagor or such other person or entity maintaining such books, records and accounts and to make copies or extracts thereof as Mortgagee shall desire and to discuss Mortgagor's affairs, financings and accounts with Mortgagor at such reasonable times as may be requested by Mortgagee.

19.    <u>Inspection of Premises</u>.  Mortgagee and any person authorized by Mortgagee shall have the right at any time and from time to time to enter upon and inspect the Premises, including all books and records with respect thereto, and Mortgagor shall make the same available for such purpose.  Mortgagor shall be available, at such reasonable times as may be requested by Mortgagee, to meet with Mortgagee and its agents, accountants and attorney's to discuss Mortgagor's affairs, finances and accounts.

20.    <u>Replacement of Note</u>.  Upon receipt of evidence reasonably satisfactory to Mortgagor of the loss, theft, destruction or mutilation of the Note, and in the case of any such loss, theft or destruction, upon delivery of an indemnity agreement reasonably satisfactory to Mortgagor, in the case of any such mutilation, upon surrender and cancellation of the Note, Mortgagor will execute and deliver, in lieu thereof, a replacement Note, identical in form and substance to the Note and dated as of the date of the Note and upon such execution and delivery all references in this Mortgage to the Note shall be deemed to refer to such replacement Note.

21.    <u>Suits to Protect Premises</u>.  Mortgagee shall have the power to institute and maintain such suits and proceedings as it may deem expedient (i) to prevent any impairment of the Premises by any acts which may be unlawful or constitute an Event of Default under this Mortgage, (ii) to preserve or protect its interest in the Premises and in the incomes, rents, issues, profits and revenues arising therefrom and (iii) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order would impair the security hereunder or be prejudicial to the interest of Mortgagee.

8

RLPY 2790  PAGE  0735

22.    Zoning Change.  Mortgagor shall not initiate, join in, or consent to any change in any private restrictive covenant, zoning ordinance, or other public or private restrictions limiting or defining the uses which may be made of the Premises or any part thereof without the express written consent of Mortgagee.

23.    Further Assurances.  Mortgagor shall execute and deliver (and pay the costs of preparation and recording thereof) to Mortgagee and any subsequent holder from time to time, upon demand, any further instrument or instruments, including, but not limited to, mortgages, financing statements, assignments and renewal and substitution Notes, so as to reaffirm, to correct, and to perfect the evidence of the obligations hereby secured and the legal security title and lien of Mortgagee to all or any part of the Premises intended to be hereby conveyed and granted, whether now conveyed, later substituted for, or acquired subsequent to the date of this Mortgage, and extensions or modifications thereof.

24.    Events of Default.  The occurrence of any one or more of the following events shall constitute an Event of Default hereunder:

(i)    Default in Payment.  Any portion of the Indebtedness is not paid prior to the tenth (10th) day after same is due; or

(ii)    Default Under Loan Documents.  Any default or Event of Default shall occur under any of the other documents evidencing, securing or otherwise relating to the Indebtedness, including, without limitation, the Assignment of Leases and Rents (collectively, the "Loan Documents"); or

(iii)    Breach of Covenant.  Mortgagor shall breach or fail to perform, observe or meet any covenant or condition in this Mortgage, or any of the other Loan Documents; or

(iv)    Filing of Liens Against the Premises.  Any lien for labor, materials or taxes (except for ad valorem taxes not yet due and payable) or otherwise shall be filed against the Premises and not be released (by payment, bonding or otherwise) within the earlier of thirty (30) days after the date of filing thereof or fifteen (15) days after Mortgagor receives actual notice thereof; or

(v)    Litigation Against Mortgagor.  Any suit shall be filed against Mortgagor which if adversely determined, could reasonably be expected substantially to impair the ability of Mortgagor to perform each and every one of his obligations under and by virtue of the Loan Documents; or

(vi)    Levy Upon the Premises.  A levy shall be made under any process on, or a receiver be appointed for the Premises or any part thereof or any other property of Mortgagor; or

(vii)    Bankruptcy of Mortgagor. (i) Mortgagor shall (A) apply for or consent to the appointment of a receiver, trustee or liquidator of any of his property or assets, (B) admit in

9

RLPY 2790  PAGE  0736

writing his inability to pay his respective debts as they mature, (C) make a general assignment for the benefit of creditors, (D) be adjudicated a bankrupt or insolvent, (E) file a voluntary petition in bankruptcy, or a petition or an answer seeking reorganization or an arrangement with creditors or to take advantage of any bankruptcy, reorganization, insolvency, readjustment of debt, dissolution or liquidation law or statute, or an answer admitting the material allegations of a petition filed against him in any proceeding under any such law, or (F) take action for the purpose of effecting any of the foregoing; or (ii) an order, judgment or decree shall be entered without the application, approval or consent of Mortgagor by any court of competent jurisdiction, approving a petition seeking reorganization of Mortgagor or of all or a substantial part of his properties or assets, or appoint a receiver, trustee or liquidator of him and such order, judgment or decree shall continue unstayed and in effect for any period of sixty (60) days; or

(viii)   Abandonment.  The Premises shall be abandoned; or

(ix)   Denial of Inspection.  Mortgagee or its representative shall not be permitted, at all reasonable times, to enter upon the Premises, to inspect the Improvements; or

(x)   Materials Not Free and Clear.  Mortgagor shall execute (other than to Mortgagee) any conditional bill of sale, chattel mortgage or other security instrument covering any materials, fixtures, machinery, equipment, articles, and/or personal property intended to be incorporated in the Improvements or the appurtenances thereto, or placed in the Improvements, or if a financing statement publishing notice of such security instrument shall be filed, or if any of such materials, fixtures, machinery, equipment, articles, and/or personal property shall not be purchased so that the ownership thereof will vest unconditionally in Mortgagor, free from encumbrances other than to Mortgagee, on delivery at the Premises, or if Mortgagor shall not produce to Mortgagee upon demand the contracts, bills of sale, statements, receipted vouchers or agreements, or any of them, under which Mortgagor claims title to any thereof; or

(xi)   False Representation or Warranty.  At any time any representation, warranty or statement made by Mortgagor in any Loan Document shall be incorrect or misleading in any material respect; or

(xii)   Failure to Disprove Default.  Mortgagee shall reasonably suspect the occurrence of any default or Event of Default and Mortgagor, upon the request of Mortgagee, shall fail to provide evidence reasonably satisfactory to Mortgagee that such default or Event of Default has not in fact occurred; or

(xiii)   Waste.  The Premises are subjected to actual or threatened waste of a material nature, or any material part of the completed improvements thereof is removed, demolished or altered without the prior written consent of Mortgagee; or

(xiv)   Judgment.  Any final judgment or order for the payment of money in excess of $50,000 shall be rendered against Mortgagor, and either (i) enforcement proceedings shall have been commenced by any creditor upon such judgment or order, or (ii) there shall be any period

10

RLPY 2790 PAGE 0737

of ten (10) consecutive days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect; or

     (xv)   Transfer. The Premises or any portion of the Premises or any interest in the Premises is transferred, sold, leased, conveyed, assigned or further encumbered without the prior written consent of Mortgagee, which consent may be withheld in the sole and absolute discretion and determination of Mortgagee (without limitation, for purposes hereof, the sale or change of a beneficial interest in Mortgagor shall be considered a sale or transfer of Mortgagor's interest in the Premises); or

Any notice, cure or grace periods contained herein shall run concurrently and not consecutively with any notice, cure or grace periods contained in any other of the Loan Documents.

     25.   Acceleration of Maturity. If an Event of Default shall have occurred (such uncured Event of Default being referred to as a "Default"), and such Event of Default is not cured within the applicable cure period, then the entire Indebtedness shall, at the option of Mortgagee, immediately become due and payable without notice or demand, time being of the essence of this Mortgage; and no omission on the part of Mortgagee to exercise such option when entitled to do so shall be construed as a wavier of such right.

     26.   Right to Enter and Take Possession.

     (a)   If a Default shall have occurred, Mortgagor, upon demand of Mortgagee, shall forthwith surrender to Mortgagee the actual possession of the Premises and to the extent permitted by law, Mortgagee, in person or by agent or by court-appointed receiver, may enter and take possession of all of the Premises, and may exclude Mortgagor and its agents and employees wholly therefrom, and may have joint access with Mortgagor to the books, papers and accounts of Mortgagor, and may take any and all steps which may be desirable in the Mortgagee's judgment to manage and operate the Premises, and Mortgagee may apply any rents, royalties, income or profits collected against the Indebtedness secured by this Mortgage without in any way curing or waiving any Default to the Mortgagor;

     (b)   If Mortgagor shall for any reason fail to surrender or deliver the Premises or any part thereof after such demand by Mortgagee, Mortgagee may obtain a judgment or decree conferring upon Mortgagee the right to immediate possession or requiring Mortgagor to deliver immediate possession of the Premises to Mortgagee, and Mortgagor hereby specifically covenants and agrees that Mortgagor will not oppose, contest or otherwise hinder or delay Mortgagee in any action or proceeding by Mortgagee to obtain such judgment or decree. Mortgagor will pay to Mortgagee, upon demand, all expenses of obtaining such judgment or decree, including reasonable compensation to Mortgagee, its attorneys' and agents, and all such expenses and compensation shall, until paid, become part of the Indebtedness and shall be secured by this Mortgage. In the event that all such interest, deposits and principal installments and other sums due under any of the terms, covenants, conditions and agreements of this Mortgage shall be paid and all Events of Default shall be cured, and as a result thereof Mortgagee surrenders possession of the Premises to Mortgagor, the same right of taking possession shall continue to exist if any subsequent Event of Default shall occur.

11

RLPY 2790 PAGE 0738

27.    Performance by Mortgagee.  If Mortgagor shall default in the payment, performance or observance of any term, covenant or condition or this Mortgage, Mortgagee may, at its option, pay, perform or observe the same, and all payments made or costs or expenses incurred by Mortgagee in connection therewith shall be secured hereby and shall be, without demand, immediately repaid by Mortgagor to Mortgagee with interest thereon at the Default Rate provided in the Note.  Mortgagee shall be the sole judge of the necessity for any such actions and of the amounts to be paid.  Mortgagee is hereby empowered to enter and to authorize others to enter upon the Premises or any part thereof for the purpose of performing or observing any such defaulted term, covenant or condition without thereby becoming liable to Mortgagor or any person in possession holding under Mortgagor.

28.    Receiver.  If a Default shall have occurred, Mortgagee, upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right, without notice and without regard to the adequacy or value of any security for the Indebtedness or the solvency of any party bound for its payment, to the appointment of a receiver to take possession of and to operate the Premises and to collect and apply the incomes, rents, issues, profits and revenues thereof.  The receiver shall have all of the rights and powers permitted under the laws of the State of Alabama. Mortgagor will pay to Mortgagee upon demand all expenses, including receiver's fees, attorney's fees, costs and agent's compensation, incurred pursuant to the provisions of this Paragraph 28, and any such amounts paid by Mortgagee shall be added to the Indebtedness and shall be secured by this Mortgage.

**MORTGAGOR HEREBY SPECIFICALLY WAIVES THE RIGHT TO OBJECT TO THE APPOINTMENT OF A RECEIVER AS AFORESAID AND HEREBY EXPRESSLY CONSENTS THAT SUCH APPOINTMENT SHALL BE MADE AS AN ADMITTED EQUITY AND AS A MATTER OF ABSOLUTE RIGHT OF MORTGAGEE.**

29.    Foreclosure, Sale and Further Remedies.

(a)    If, after applicable notice and grace, if any, the Mortgagor remains in default, then Mortgagee may, at its continuing option, and without further notice to or demand upon Mortgagor, take any of the following actions:

(i)    Bring a court action at law or in equity (1) to foreclose this Mortgage or (2) to enforce its provisions or any of the indebtedness or obligations secured by this Mortgage, either or both, concurrently or otherwise, and one action or suit shall not abate or be a bar to or waiver of Mortgagee's right to institute or maintain the other, provided that Mortgagee shall have only one payment and satisfaction of the Indebtedness;

(ii)    Cause any or all of the Premises to be sold under the power of sale granted by this Mortgage in any manner permitted by applicable law;

(iii)    Exercise any other right or remedy available under law or in equity;

12

RLPY 2790 PAGE 0739

(iv)    Sell the Premises at public outcry to the highest bidder for cash between the legal hours for sale in front of the courthouse door in the county where said Premises is located, either in person or by auctioneer, after having first given notice of the time, place and terms of sale by publication once a week for three (3) successive weeks prior to said sale in some newspaper published in said county, and, upon payment of the purchase money, Mortgagee or any person conducting the sale for Mortgagee is authorized to execute to the purchaser at said sale a deed to the property so purchased. Mortgagee may bid at said sale and purchase said Premises, or any part thereof, if the highest bidder therefor. At the foreclosure sale the Premises may be offered for sale and sold as a whole without first offering it in any other manner or may be offered for sale and sold in any other manner Mortgagee may elect in its sole discretion.

(b)    Mortgagor waives all rights to direct the order or manner in which any of the Premises will be sold in the event of any sale under this Mortgage, and also any right to have any of the Premises marshalled upon any sale. Mortgagee may in its discretion sell all the personal and real property together or in parts, in one or more sales, and in any sequence Mortgagee selects.

(c)    All remedies contained in this Mortgage are cumulative, and the Mortgagee also has all other remedies provided by law or in any other agreement between the Mortgagor and the Mortgagee. No delay or failure by the Mortgagee to exercise any right or remedy under this Mortgage will be construed to be a waiver of that right or remedy or of any default by the Mortgagor. The Mortgagee may exercise any one or more of its rights and remedies at its option without regard to the adequacy of its security.

(d)    Mortgagor will pay all of the Mortgagee's expenses incurred in any efforts to enforce any terms of this Mortgage, whether or not any lawsuit is filed, including but not limited to reasonable legal fees and disbursements, foreclosure costs and title charges.

30.    Purchase by Mortgagee. Upon any foreclosure sale or upon a sale or sales of all or any portion of the Premises under the power herein granted, Mortgagee may bid for and purchase the Premises and shall be entitled to apply all or any part of the Indebtedness as a credit to the purchase price.

31.    Application of Proceeds of Sale. In the event of any foreclosure sale or in the event of a sale or sales of all or any portion of the Premises under the power herein granted, the proceeds of any such sale shall be applied as follows:

(i)    First, to payment of the costs and expenses of the sale, including but not limited to Mortgagee's fees, reasonable legal fees and disbursements, title charges and transfer taxes and payment of all expenses, liabilities and advances of the Mortgagee, together with interest at the rate provided under the Note on all advances made by the Mortgagee.

(ii)    Second, to payment of all sums expended by the Mortgagee under the terms of this Mortgage and not yet repaid, together with interest on such sums at the rate provided under the Note.

13

RLPY 2790 PAGE 0740

(iii)   Third, to payment of the Indebtedness and obligations of the Mortgagor secured by this Mortgage in any order that the Mortgagee chooses.

(iv)   Fourth, the remainder, if any, to the person or persons appearing of record to be the owner of the Premises.

32.   <u>Mortgagor as Tenant Holding Over</u>. In the event of any foreclosure sale, or in the event of a sale or sales of all or any portion of the Premises under the power herein granted, Mortgagor shall be deemed a tenant holding over and shall forthwith deliver possession to the purchaser or purchasers at such sale or be summarily dispossessed according to provisions of law applicable to tenants holding over.

33.   <u>Discontinuance of Proceedings</u>. In case the Mortgagee shall have proceeded to enforce any right, power or remedy under this Mortgage by foreclosure, entry or otherwise, and such proceedings shall have been discontinued or abandoned for any reason, or shall have been determined adversely to the Mortgagee, then and in every such case the Mortgagor and Mortgagee shall be restored to their former positions and rights hereunder, and all rights, powers and remedies of the Mortgagee shall continue as if no such proceeding had been taken.

34.   <u>Remedies Cumulative; Waiver</u>.

(a)   Each of the rights of Mortgagee under this Mortgage and the Note and each and every other document or instrument now or hereafter evidencing or securing the Indebtedness, is separate and distinct from and cumulative to all other rights herein and therein granted, and no such right shall be in exclusion of any other.

(b)   No delay or omission by Mortgagee or by any holder of the Note to exercise any right, power or remedy accruing upon any breach or Default shall exhaust or impair any such right, power or remedy or shall be construed to be a waiver of any such breach or Event of Default, or acquiescence therein, and every right, power and remedy given by this Mortgage to Mortgagee may be exercised from time to time and as often as may be deemed expedient by Mortgagee. No consent or waiver, expressed or implied, by Mortgagee to, or of, any breach or Event of Default by Mortgagor in the performance of the obligations of Mortgagor hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or Default in the performance of the same or any other obligations of Mortgagor hereunder. Failure on the part of Mortgagee to complain of any act or failure to act or to declare an Event of Default, irrespective of how long such failure continues, shall not constitute a waiver by Mortgagee of its rights hereunder or impair any rights, powers or remedies of Mortgagee hereunder.

(c)   No act or omission by Mortgagee shall release, discharge, modify, change or otherwise affect the original liability under the Note, this Mortgage or any other obligation of Mortgagor or any subsequent purchaser of the Premises or any part thereof, or any guarantor, or preclude Mortgagee from exercising any right, power or privilege herein granted or intended to be granted in the event of any Default then made or of any subsequent Event of Default, or alter the

14

RLPY 2790 PAGE 0741

security title, security interest or lien of this Mortgage except as expressly provided in an instrument or instruments executed by Mortgagee. Without limiting the generality of the foregoing, Mortgagee may: (i) grant forbearance or an extension of time for the payment of all or any portion of the Indebtedness; (ii) take other or additional security for the payment of the Indebtedness, (iii) waive or fail to exercise any right granted hereunder or in the Note; (iv) release any part of the Premises from the security interest or lien of this Mortgage or otherwise change any of the terms, covenants, conditions or agreements of the Note or this Mortgage; (v) consent to the filing of any map, plat or replat affecting the Premises; (vi) consent to the granting of any easement or other right affecting the Premises; (vii) make or consent to any agreement subordinating the security title, security interest or lien hereof; or (viii) take or omit to take any action whatsoever with respect to the Note, this Mortgage, the Premises or any document or instrument evidencing, securing or in any way relating to the Indebtedness; all without releasing, discharging, modifying, changing or affecting any such liability or precluding Mortgagee from exercising any such right, power or privilege affecting the security title, security interest or lien of this Mortgage. In the event of the sale or transfer by operation of law or otherwise of all or any part of the Premises, Mortgagee, without notice, is hereby authorized and empowered to deal with any such vendee or transferee with reference to the Premises or the Indebtedness, or with reference to any of the terms, covenants, conditions or agreements hereof as fully and to the same extent as it might deal with the original parties hereto and without in any way releasing and/or discharging any liabilities, obligations or undertakings.

35.    Assignment by Mortgagee. This Mortgage is assignable by Mortgagee, and any assignment of the same by Mortgagee shall operate to vest in such assignee the legal title to the Premises and all rights and powers herein conferred.

36.    Construction. Time is of the essence with respect to each and every covenant, agreement and obligation of Mortgagor under this Mortgage, the Note and any and all other instruments now or hereafter evidencing or securing the Indebtedness. The pronouns used herein shall include the masculine, feminine and neuter genders and the singular and plural forms where the context so requires. As used herein the terms "Mortgagor" and "Mortgagee" shall include the named Mortgagor and the named Mortgagee and their respective legal representatives, heirs, successors-in-title and permitted assigns.

37.    Defeasance. If (i) Mortgagor shall pay in full and discharge all the Indebtedness; and (ii) the Mortgagor shall then have kept and performed each and every obligation, covenant, duty, condition and agreement herein, or any other Loan Document imposed on or agreed to by Mortgagor, then this Mortgage and the grants and conveyances contained herein shall become null and void, and the Premises shall revert to the Mortgagor, and the entire estate, right, title and interest of the Mortgagee shall thereupon cease; and the Mortgagee shall, upon the request of the Mortgagor and at Mortgagor's cost and expense, deliver to the Mortgagor proper instruments acknowledging satisfaction of this instrument and terminating all financing statements filed in connection herewith; otherwise, this Mortgage shall remain in full force and effect. Notwithstanding anything to the contrary contained in this Section 37 or elsewhere in this Mortgage, it is expressly understood and agreed that, although there may be from time to time occasions when no Indebtedness shall be outstanding, this Mortgage and the lien thereof and security interests created thereby shall nevertheless remain in full force and effect, and none of the estate, right, title and

15

RLPY 2790 PAGE 0742

interest of the Mortgagee passing by this Mortgage shall divest nor shall the Premises revert to the Mortgagor, so long as the Mortgagee has any obligation to advance funds under the Note, or any of the Loan Documents, or any Indebtedness are outstanding.

38.     Waiver of Appraisement, Valuation, Etc. Mortgagor agrees, to the full extent permitted by law, that in the case of an Event of Default hereunder, neither Mortgagor nor any one claiming through or under Mortgagor will set up, claim or seek to take advantage of any moratorium, reinstatement, forbearance, appraisement, valuation, stay, extension, exemption or redemption laws now or hereafter enforced, in order to prevent or hinder the enforcement or foreclosure of this Mortgage, of the absolute sale of the Premises, or the delivery of possession thereof immediately after such sale to the purchaser at such sale, and Mortgagor, for itself and all who may at any time claim through or under it, hereby assigns to Mortgagee and waives (to the full extent that it may lawfully do so) the benefit of all such laws, and any and all right to have the assets subject to the security interest of this Mortgage marshalled upon any foreclosure or sale under the power herein granted.

39.     Waiver of Homestead. Mortgagor hereby waives and renounces all homestead and exemption rights provided for by the Constitution and laws of the United States and of any state, in the Premises against the collection of the Indebtedness, or any part thereof.

40.     Invalid Provisions. If any provision of this Mortgage or any paragraph, sentence, clause, phrase or word, or the application thereof in any circumstance, is held invalid or unenforceable, the validity and enforceability of the remainder of this Mortgage, and of the application of any such provision, paragraph, sentence, clause, phrase or word in other circumstances, shall not be affected thereby, it being intended that all rights, powers and privileges of Mortgagee hereunder shall be enforceable to the fullest extent permitted by law.

41.     Notice. Any and all notices, elections or demands permitted or required to be made under this Mortgage or the Note shall be in writing, signed by the party giving such notice, election or demand and shall be delivered personally, or sent by registered or certified mail, to the other party at the address set forth below, or at such other address as may be supplied in writing. The date of personal delivery or the date of mailing, as the case may be, shall be the date of giving of such notice, election or demand. For the purpose of this Mortgage and the Note.

The address of Mortgagor is:              Mark Frederick
                                          1417 Second Street #H307
                                          San Diego, California 92118


The address of Mortgagee is:              Eva Bank
                                          Attention: Mr. Mike Duke
                                          1710 Cherokee Avenue, SW
                                          Cullman, Alabama 35055

or such other address as any party hereto may give the other pursuant to the provisions hereof.

16

RLPY 2790 PAGE 0743

42.    Limit of Validity.  If from any circumstance whatever fulfillment of any provision of this Mortgage or the Note, at the time performance of such provision shall be due, shall involve transcending the limit of validity then prescribed by any applicable usury statute or any other law, with regard to obligations of like character and amount, then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Mortgage or under the Note that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity and, in the event of such reduction, the unpaid balance of the principal sum of the Indebtedness, together with all accrued interest thereon, and any other sums advanced hereunder or under the Note by the Mortgagee, shall, at the option of the Mortgagee, notice of exercise of said option being hereby waived, forthwith become due and payable, without any notice or demand whatsoever.  In no event shall Mortgagor, or its assigns, legal representatives, or successors, be bound to pay for the use, forbearance or detention of the money loaned and secured hereby, interest of more than the legal limit, the right to demand any such excess being expressly waived by Mortgagee.  The provisions of this paragraph shall control every other provision of this Mortgage and the Note.

43.    Headings.  The headings of the paragraphs of this Mortgage are for the convenience of reference only, are not to be considered as part hereof and shall not limit or otherwise affect any of the terms hereof.

44.    No Oral Change.  This Mortgage may not be changed or terminated orally, but only by an agreement in writing signed by the party against whom enforcement of the change or termination is sought.

45.    Hazardous Substances.  Mortgagor (a) has no actual knowledge (i) of the permanent placement, burial or disposal of any Hazardous Substances (as hereinafter defined) on the Premises; (ii) of any spills, releases, discharges, leaks or disposal of Hazardous Substances that have occurred or are presently occurring on, under, or onto the Premises; or (iii) of any spills, releases, discharges, leaks or disposal of Hazardous Substances that have occurred or are occurring off of the Premises as a result of Mortgagor's improvement, operation or use of the Premises which would result in noncompliance with any of the Environmental Laws (as hereinafter defined); (b) to the best of Mortgagor's knowledge, is and has been in compliance with all applicable Environmental Laws; (c) knows of no pending or threatened environmental civil, criminal or administrative proceedings against Mortgagor relating to Hazardous Substances; (d) to the best of Mortgagor's knowledge, knows of no facts or circumstances that would give rise to any future civil, criminal or administrative proceeding against Mortgagor relating to Hazardous Substances; and (e) will not permit any of its employees, agents, contractors, subcontractors, or any other person occupying or present on the Premises to generate, manufacture, store, dispose or release on, about or under the Premises any Hazardous Substances which would result in noncompliance with the Environmental Laws.  As used herein, "Hazardous Substances" shall mean and include all hazardous and toxic substances, wastes, materials, compounds, pollutants and contaminants (including, without limitation, asbestos, polychlorinated biphenyls, and petroleum products) which are included under or regulated by the Comprehensive Environmental Response, Compensation and Liability Act, as amended, 42 U.S.C. Sec. 9601, et seq., the Toxic Substances Control Act, 15 U.S.C. Sec. 2601, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Sec. 6901, et seq. and the Clean Air Act, 42 U.S.C. Sec.

17

RLPY 2790 PAGE 0744

7401, *et seq.* and any other federal, state or local statute ordinance, law, code, rule, regulation or order regulating or imposing liability or standards of conduct regarding Hazardous Substances (the "Environmental Laws"), but does not include such substances as are permanently incorporated into a structure or any part thereof in such a way as to preclude their subsequent release into the environment, or the permanent or temporary storage or disposal of household hazardous substances, which are thereby exempt from or do not give rise to any violation of the aforementioned Environmental Laws.

46. Security Agreement Under UCC. This Mortgage shall also constitute a "security agreement" as that term is defined in the Uniform Commercial Code as enacted in the State of Alabama (sometimes hereinafter referred to as the "U.C.C.") with respect to the Equipment and Contracts, and/or any part thereof, and creates a security interest in Mortgagee in the Equipment and Contracts. Upon request by Mortgagee, at any time and from time to time, a financing statement or statements shall be executed by Mortgagee and Mortgagor and filed in the manner required to perfect said security interests under the U.C.C. Compliance with U.C.C. requirements relating to personal property shall not be construed as altering in any way the rights of Mortgagee as determined by this instrument under any other statutes or laws of the State of Alabama, but is declared to be solely for the protection of Mortgagee in the event that such compliance is at any time held to be necessary to preserve the priority of Mortgagee's security interests in the Equipment and Contracts against any other claims.

47. Applicable Law and Jurisdiction. This Mortgage shall be interpreted, construed and enforced according to the laws of the State of Alabama. Mortgagor agrees that, at the option of Mortgagee, the United States District Court for the district in which the Land is located or any court of competent jurisdiction of the state in which the Land is located shall have jurisdiction in any action, suit or other proceeding arising out of or relating to any act taken or omitted hereunder or the enforcement of the Note and this Mortgage and Mortgagor shall not assert in any such action, suit or other proceeding that it is not personally subject to the jurisdiction of the courts described above, that the action, suit or other proceeding is brought in an inconvenient forum or that the venue of the action, suit or proceeding is improper. In addition to and without limiting the generality of the foregoing, Mortgagor irrevocably and unconditionally submits to the non-exclusive jurisdiction of any court of competent jurisdiction of the state in which the Land is located and any United States District Court for the district in which the Land is located, and Mortgagor irrevocably and unconditionally agrees that any process or notice of motion or other application to any of said courts may be served upon Mortgagor in the manner prescribed in this Mortgage for the giving of notices or by personal notice or other service as allowed by law. Mortgagor further agrees to comply with all requirements necessary to give such courts in personam jurisdiction.

48. Mortgagee's Liability. No action shall be commenced by Mortgagor for any claim against Mortgagee under the terms of this Mortgage or the Note unless notice thereof, specifically setting forth the claim of Mortgagor, shall have been given to Mortgagee within sixty (60) days after Mortgagor shall have first become aware of the act, omission or event which allegedly gave rise to such claim, and failure to give such notice shall constitute a waiver of any such claim.

RLPY 2790 PAGE 0745

49.    Property Tax Reporting. Upon request by Mortgagee, Mortgagor will furnish to Mortgagee a copy of the paid property tax receipts on the Land.

50.    Purchases Money Mortgage. The proceeds of the Indebtedness have been applied to the purchase price of the above-described property; therefore, this is a purchase money mortgage.

51.    Acknowledgment by Mortgagor. MORTGAGOR HEREBY DECLARES THAT MORTGAGOR HAS READ THIS MORTGAGE, HAS RECEIVED A TRUE, CORRECT AND COMPLETE COPY OF THIS MORTGAGE AND HAS EXECUTED AND DELIVERED THIS MORTGAGE AS OF THE DATE AT THE TOP OF THE FIRST PAGE HEREOF.

IN WITNESS WHEREOF, the undersigned have executed and delivered this Mortgage, as of the day and year first above written.

WITNESS:

_____     _____ (L.S.)

MARK FREDERICK

STATE OF CALIFORNIA    )

COUNTY OF San Diego    )

I, the undersigned, a Notary Public in and for said State at Large, hereby certify that Mark Frederick, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he executed the same voluntarily for on the day the same bears date.

Given under my hand and official seal this 4th day of December, 2003.



ERIKA CHAVEZ
COMM. # 1286616
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Comm. Exp. Dec. 2, 2004

(SEAL)

Notary Public
My commission expires: 12/2/04

This instrument was prepared by:
James R. Dickens, Jr., Esq.
Rushton, Stakely, Johnston & Garrett, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
RSJG File No. 7328-1



19

# ORIGINAL

## IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

| | | |
|---|---|---|
| **MARK FREDERICK** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | CASE NO:  CV-2005-2408-PR |
| **CITY OF MONTGOMERY** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY
2006 JUL 11  AM 10: 02

## MOTION FOR SUMMARY JUDGMENT

Comes now MARK FREDERICK and moves this Court for Summary

Judgment in this matter.  As grounds for this motion, your movant states that

there is no genuine issue of material fact in dispute in this matter and that he is

entitled to a judgment as a matter of law declaring that the Order of the City

Council of the City of Montgomery proporting to Order the demolition of the

subject property is void and of no effect.

This motion is based on the joint stipulation of fact heretofore filed with the

Court and the following narrative summary of undisputed facts.

## NARRATIVE SUMMARY OF UNDISPUTED FACTS:

The movant, Mark Frederick is the owner of record of property located at

Ann Street and Althea Street, and commonly known as Jasmine Gardens

Apartments.

1

At a regularly scheduled metting of the City Council of the City of Montgomery held on September 6, 2005, the said City Council purported to Order the demolition of Jasmine Gardens Apartments (See Ex. 1, excerpt from Minutes of City Council). As is apparent from the face of the Minutes the necessary findings that the buildings are so unsafe as to amount to a public nuisance is not made.

While Mark Frederick is the Owner of Jasmine Gardens Apartments, Eva Bank holds a mortgage thereon. (See Ex. 2, copy of Eva Bank mortgage). As disclosed by the Joint Stipulation (a copy is attached for the Court's convenience) no notice of the intention of the City to demolish the buildings was ever sent to Eva Bank.

## ARGUMENT

Under the provisions of §11-40-30, et seq., Ala. Code 1975, there is created a procedure by which cities may demolish buildings which have become so unsafe as to amount to a public nuisance. That statutory procedure requires that the "appropriate municipal official" give notice of the alleged unsafe condition and of the impending intention of the City to demolish the buildings if the unsafe condition is not timely remedied. § 11-40-31. That notice, by statute must be sent by certified or registered mail to the owner and any mortgagee at "the address on file in the tax assessor's or revenue

2

commissioner's office." The City failed to send notice to Evan Bank, because it did not find Eva Bank's name or address in the records of the Revenue Commission of Montgomery County. (See Joint Stipulation). This happened because the Revenue Commission does not maintain records of the identity of mortgagees.

However, Ordinance # 10-2001 of the City of Montgomery, places the further requirement upon City officials in such proceedings to examine not only the Revenue Commissioner's records, but also the records of the Montgomery County Probate Judge's Office." (See Ex. 3, Ordinance #10-2001, paragraph B(2)). Attached to the Joint Stipulation as Ex. A is a copy of the Eva Bank mortgage on the subject property. As the Court can readily see, in the very first paragraph of said mortgage appears not only the name of Eva Bank, but its address as well. The name and address of Eva Bank appears again at page 16 of the mortgage.

In the statutory proceeding for demolition of property, Cities are required to strictly abide by the notice requirements of the law. Failure to do so renders any Order of demolition void. Thomas v. Freeman Wrecking Co., 388 So.2d 968 (Ala.1980). In Thomas, the Court observed:

> The City is authorized to move or demolish buildings after notice as provided in the Act, without giving notice strictly as presecribed by the Act the City could not acquire jurisdiction to empower it to do that which

it would otherwise be authorized to do under the Act, and its proceeding in this case were void. (cite omitted).

388 So.2d at 971.

**While it may be that §11-40-31 requires the City Officials to send notice only to addresses as appear on the records of the Revenue Commissioner's Office, the City may of course impose more stringent requirements by its own ordinances. It did so here and must comply with its own ordinance.

Given tha thte City failed to comply with its duty with regard to notice, it never acquired jurisdiction to act.

Any action taken by a Court or other tribunal, which is done with jurisdiction renders its action void. They are a complete nullity as if it never happened. Void acts neither create nor destroy rights. They are meaningless. Tucker Motor Co., Inc. v. Davenport, 396 So.2d 101 (Ala.Civ.App.1980). A void judgment, or other Order, may be attacked at any time and in any place, even by collateral attack. Denton v. Edmiston, 475 So.2d 877 (Ala.Civ.App. 1985). In speaking of void judgments, the Supreme Court of this State has held that such judgments may be attacked by, even by a stranger, if that part can show that his legal or equitable rights will be injuriously affected thereby. Yerger v. Cox, 198 So.2d 282, 285-286 (Ala.1967).

4

In this case the Order of the City Council is clearly void for lack of jurisdiction. Mr. Frederick's rights will clearly be adversely affected by enforcement of it; his buildings and a substantial investment, will be destroyed.

Furthermore, the statute, §11-40-22, Ala.Code 1975, requires that the City Council, itself, makes a finding that the building is so unsafe that it is a public nuisance, before it can order demolition. As the Court can see from the Minutes of the City Council proceedings, it made no findings at all, it merely "upheld" the recommendation of the "Housing Code Division."

When a statute imposes a finding of fact as a condition precedent to act by a City Council, any action taken without that necessary finding is ineffective. For instance in Jones v. Dothan, 375 Co.2d 462 (Ala.1979), the Court held that an alleged agreement by the City Council of Dothan to sell a piece of property was unenforceable because there had been no finding by the Council tht the property was no longer needed for public or municipal purposes, as required by §11-47-20. See also, Vestavia Hills Brd of Edu. v. Vtoz, 530 So.2d 1378 (Ala.1988).

Furthermore, Ordinance # 10-2001 para. c(1) also imposes the duty, or conditional precedent, upon the City Council, not the building official, to determine whether the building is unsafe to the extent that it is a public nuisance before it may Order the building demolished. The ordinance only

allows the building to be demolished "In the event that it is determined by the City Council" to be unsafe to the extent it is a public nuisance.  While it may be true that the City Building Official alleged the building to be a public nuisance, without a specific finding to that effect by the City Council, any demolition Order fails to meet the requirements of the law and is invalid.

Thus, the Order of the City Council in this cas is due to be set aside and helf for naught.

**J. DOYLE FULLER** (FUL005)

Of Counsel:
J. Doyle Fuller, PC
2851 Zelda Road
Montgomery, Alabama 36106

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon the following by United States Mail, postage prepaid, on this the 10th day of July, 2006.

**MICHAEL D. BOYLE**
CITY OF MONTGOMERY
P.O. Box 1111
Montgomery, Alabama 36101-1111

Counsel

STATE OF ALABAMA
MONTGOMERY COUNTY
I, as Circuit Clerk, Montgomery County
Circuit Court, do hereby certify that the within
is a complete, true and correct copy of the
Motion for Summary
on file in said office. Exhibits Judgment
attached
Witness my hand and the seal of said Court
is hereto affixed, this the    13
day of    May    2008
Melissa Rittenour
CIRCUIT CLERK

6

I, as Clerk of Circuit Court of Montgomery Circuit Court, do hereby certify that the above is a complete, true and correct copy of the

on file in said office.

Whereas my hand and the seal of said Court is hereto affixed, this the

day of

Official Clerk

REGULAR MEETING
COUNCIL OF THE CITY OF MONTGOMERY
SPTEMBER 6, 2005 – 10:00 A.M.

The Council met in regular session on Tuesday, September 6, 2005, at 10:00 a.m., in the Council Chamber, City Hall, with the following members present:

PRESENT:     SPEAR, HEAD, MAY, NUCKLES, CALHOUN
             COOK, ROBY, PRUITT, JINRIGHT                                    –9

ABSENT :     NONE                                                            –0

The President of the Council, Charles Jinright, presided as Chairman of the meeting, and Brenda Gale Blalock, City Clerk, served as the Clerk of the meeting. The meeting was opened with prayer by Councillor Jim Spear and the Pledge of Allegiance.

Councillor Nuckles made a motion to adopt the minutes of the August 16, 2005, Council meeting, which motion carried with the following vote:

AYES:        SPEAR, HEAD, MAY,  NUCKLES, CALHOUN
             COOK, ROBY, PRUITT, JINRIGHT                                    –9
NAYS:        NONE                                                            –0
ABSTAINED:   NONE                                                            –0
ABSENT:      NONE                                                            –0

* * * * * *

Councillor Head introduced the proposed demolition of the Jasmine Garden Apartments on Althea Street. Mr. Robert Black, Attorney, Mr. Gary Stevens, Attorney, and Mr. Mark Fredrick were present representing Jasmine Garden Apartments. Mr. Dory Brunson, Chief Building Official, was present representing the Housing Codes Division.

Councillor Head made a motion to uphold the recommendation of the Housing Codes Division and authorize the demolition of the Jasmine Garden Apartments on Althea Street, which motion carried with the following vote:

AYES:        UNANIMOUS                                                       –9
NAYS:        NONE                                                            –0
ABSTAINED:   NONE                                                            –0
ABSENT:      NONE                                                            –0

* * * * * *

There being no further business to come before the Council, the meeting, upon motion, duly adjourned at 11:50 a.m.

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

FILED
CIRCUIT COURT
MONTGOMERY COUNTY
2006 JUN 22  PM 12: 43

| | |
|---|---|
| MARK FREDERICK | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )     CASE NO:  CV-2005-2408-PR |
| | ) |
| CITY OF MONTGOMERY | ) |
| | ) |
| Defendant. | ) |
| | ) |

## JOINT STIPULATION OF CERTAIN FACTS

Come now the parties to this asue and stipulate that the following are true

facts, and that the facts so stipulated may be treated as established facts in this

case and used therein for any purpose without the necessity of further proof:

1.  That on October 21, 2005, the City of Montgomery sent notice to

MARK FREDERICK of its intention to demolish the structures which

are the subject of this litigation.

2.  That the provisions of §11-40-30 Code of Ala. 1975, which controls

these proceedings requires that:

Whenever the appropriate muncipal official of the municipality finds
that any building, structure, part of building or structure, party wall, or
foundation situated in the municipality is unsafe to the extent that it is
a public nuisance, the offical shall give the person or persons, firm,
association or corporation last assessing the property for state taxes
and all mortgagees of record, by certified or registered mail to the
address on file in the tax collector's or revenue commissioner's office,
notice to remedy the unsafe or dangerous condition of the building or

1

EXHIBIT
2

structure, or to demolish the same, with a reasonable time set out in the notice, which time shall not be less than 30 days or suffer the building or structure to be demolished by the municipality and the cost thereof assessed against the property. The mailing of the certified or registered mail notice, properly addressed and postage prepaid, shall constitute notice as required herein.

3. That Eva Bank is the mortgagee, holding a mortgage on the subject property as evidenced by Exhibit "A" attached hereto.

4. That the Office of the Revenue Commissioner of Montgomery County, Alabama, does not maintain a record of the address of any mortgagees of property in this county.

5. That the City of Montgomery sent the required notice to the Owner only, and did not send any notice under § 11-40-31 to the mortgagee in this case because no mortgagee was listed on the tax collection's or revenue commissioner's office records.

So stipulated, this 21st day of June, 2006.

J. DOYLE FULLER (FUL005)
Attorney for Plaintiff
2851 Zelda Road
Montgomery, Alabama 36106

MICHAEL D. BOYLE (BOY032)
CITY OF MONTGOMERY
P.O. Box 1111
Montgomery, Alabama 36101-1111

2

STATE OF ALABAMA )
                                 :

COUNTY OF MONTGOMERY )

## <u>MORTGAGE AND SECURITY AGREEMENT</u>

      THIS MORTGAGE AND SECURITY AGREEMENT (hereinafter referred to as this "Mortgage") made as of the 5th day of December, 2003 by MARK FREDERICK, an unmarried man, whose principal address is 1417 Second Street #H307, Coronado, California 92118 (hereinafter referred to as "Mortgagor"), to EVA BANK, an Alabama corporation, with an address of 1710 Cherokee Avenue, SW, Cullman, Alabama 35055 (hereinafter referred to as "Mortgagee");

W I T N E S S E T H :

      That for good and valuable consideration, and to secure the payment of the aggregate sum of money named in the promissory note of even date herewith, hereinafter mentioned, together with interest thereon, and all renewals or extensions thereof and all other sums of money secured hereby as hereinafter provided, the Mortgagor has bargained and sold to Mortgagee, its successors and assigns, and hereby does grant, bargain, sell, convey and assign unto the Mortgagee, its successors and assigns, that certain real property located in Montgomery County, Alabama which is more particularly described in Exhibit "A" attached hereto and hereby made a part hereof (such real property hereinafter referred to as the "Land"),

      TOGETHER with all buildings, structures and other improvements now or hereafter attached to or located on the Land, or any part or parcel thereof, and

      TOGETHER with all and singular the tenements, hereditaments, easements and appurtenances thereunto or unto any part thereof now or hereafter belonging or in any wise appertaining, and all streets, strips and gores of land, alleys, passages, ways, water courses, and all leasehold estates, rights-of-way, easements and covenants now existing or hereafter created for the benefit of Mortgagor or any subsequent owner or tenant of the Land, and all rights to enforce the maintenance thereof, and all other rights, privileges and liberties of whatsoever kind or character, and the reversions and remainders thereof, and all estate, right, title, interest, property, possession, claim and demand whatsoever, at law or in equity, of Mortgagor in and to the Land or any part thereof, and

      TOGETHER with all building materials, fixtures, building machinery and building equipment delivered on site to the Land during the course of or in connection with the construction, reconstruction or remodeling of any of the aforesaid buildings, structures, or other improvements, and

      TOGETHER with all personal property of every kind and description, and all apparatus, chattels, and fixtures now or hereafter erected or placed in or upon the Land or any improvement thereon or now or hereafter attached to or used in connection with the Land or any improvement thereon, and all additions thereto and all replacements thereof, whether or not the same have or



EXHIBIT

*A*

RLPY 2790  PAGE  0728

would become part of the Land by attachment thereto, including without limiting the generality of the foregoing, all signs, furnaces, heaters, gas and electric light fixtures, refrigerating, ventilating, incinerating, garbage disposal and air conditioning apparatus and equipment, all elevators, screens, doors, awnings, blinds, drapes, carpets, floor coverings, furnishings, appliances, coolers, freezers, refrigerators, stoves, storm windows, fire extinguishers, vehicles, inventory, supplies, and also all shrubbery or plants now or hereafter located on the Land or improvements, all of which shall to the extent permitted by law be considered as annexed to or forming a part of the Land (all of which is hereinafter referred to as the "Equipment"), and

TOGETHER with all monies and proceeds (hereinafter referred to collectively as the "Proceeds") derived by Mortgagor from the Land, Equipment, or said apparatus, chattels, fixtures, buildings, structures, improvements, leases, tenant contracts, occupancy agreements, rental agreements, contracts, licenses, permits, rents, issues or profits, including but not limited to all revenue, receipts, rents, refunds, rebates, tenant reimbursements, condemnation awards and proceeds of the sale of, insurance on or other borrowings secured in whole or in part by any of the Land, Equipment, or said apparatus, chattels, fixtures, buildings, structures, improvements, leases, tenant contracts, rental agreements, contracts, licenses, permits, rents, issues and profits; reserving only the right to Mortgagor to collect the Proceeds (except as otherwise provided herein) so long as no Event of Default, as hereinafter defined, shall have occurred, and

TOGETHER with all books and records, the benefit of any deposits or payments now or hereafter made by Mortgagor or on behalf of Mortgagor, all franchise agreements, license agreements, tradenames, trademarks, service marks, logos and goodwill related thereto which in any way now or hereafter belong, relate or appertain to the Land, Equipment or Proceeds or any part thereof or are now or hereafter acquired by Mortgagor; all security deposits, and other deposits, and all other general intangibles and personal property of every kind and nature whatsoever now or hereafter owned by Mortgagor and located in, on or about, or used or intended to be used with or in connection with the use, operation or enjoyment of the Land, Equipment or Proceeds (all of which is hereinafter referred to as the "Intangibles");

TO HAVE AND TO HOLD the said bargained property (all of which is collectively referred to herein as the "Premises") unto Mortgagee, its successors and assigns, forever.

     1.    Indebtedness Secured.  This Mortgage secures the following (hereinafter referred to collectively as the "Indebtedness"):

      (i)    the payment of an indebtedness in the maximum principal amount of NINE HUNDRED SEVENTY-SIX THOUSAND NO/100 DOLLARS ($976,000.00), with interest thereon, as evidenced by that certain promissory note of even date herewith, executed and delivered by Mortgagor to Mortgagee (said promissory note, as same may be amended, modified, extended or renewed from time to time, being hereinafter referred to as the "Note") and all renewals, modifications, consolidations or extensions thereof;

      (ii)    the payment of all interest, default interest, late chares and other sums now or hereafter payable under this Mortgage, under the Note, or under any other instrument now or

hereafter evidencing or securing the indebtedness evidenced by the Note, together with all renewals, extensions, consolidations or modifications of any thereof;

(iii)    the payment of all other monies agreed or provided to be paid by Mortgagor in the Note, this Mortgage, or under any other instrument now or hereafter evidencing or securing the indebtedness evidenced by the Note, together with all renewals, extensions, consolidations or modifications of any thereof;

(iv)    the payment of any and all other indebtedness now owing or which may hereafter be owing by Mortgagor to Mortgagee, now existing or hereafter coming into existence, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, consolidations or extension thereof;

(v)    the payment of any and all additional advances made and expenses incurred by Mortgagee to protect or preserve the Premises or the lien hereof on the Premises, or for taxes, assessments or insurance premiums as hereinafter provided;

(vi)    the performance of all other obligations of Mortgagor contained herein;

(vii)    the performance of each obligation of Mortgagor contained in the Note in addition to the payment of the indebtedness evidenced thereby and of Mortgagor contained herein, or in any other instrument now or hereafter evidencing or securing the indebtedness evidenced by the Note; and

(viii)    the payment and performance of each debt and obligation of Mortgagor contained in any renewal, extension, modification, consolidation, change, substitution, replacement for, restatement or increase of all or any part of the Note, this Mortgage, or any other Loan Document (as hereinafter defined).

MORTGAGOR FURTHER COVENANTS AND AGREES WITH MORTGAGEE AS FOLLOWS:

2.    <u>Title of Mortgagor</u>.  Mortgagor is well and lawfully seized and possessed of the Premises with a good and indefeasible title in fee simple; Mortgagor will warrant and defend the Premises against all claims and demands whatsoever.

3.    <u>Payment of Indebtedness</u>.  Mortgagor will pay when due the Indebtedness and all other sums secured hereby.

4.    <u>Maintenance</u>.  Mortgagor shall keep the Premises protected and in good order, repair and condition at all times, reasonable wear and tear excepted, promptly replacing, restoring or rebuilding to its original condition any part thereof which may become lost, destroyed or unsuitable

3

for use for any reason, including fire, storm, or other casualty. Mortgagor will immediately notify Mortgagee if any part of the Premises is damaged by fire or other casualty.

5.    Insurance. Mortgagor shall keep the Premises and the interests and liabilities incident to the ownership, possession and operation thereof insured in manner and form, with companies, and for sums and periods satisfactory to Mortgagee and in connection therewith, shall procure for, deliver to and maintain for the benefit of Mortgagee during the term of this Mortgage, original paid-up insurance policies containing standard non-contributory mortgage clauses satisfactory to Mortgagee, insuring against loss from casualty, flood, rent loss, business income, liability and such other risks as Mortgagee may require; provided however, Mortgagee makes no representations that such insurance will be sufficient to cover any loss. All insurance policies are to be held by and, to the extent of its interests, are to be for the benefit of and first payable in case of loss to Mortgagee, and Mortgagor shall deliver to Mortgagee a new policy as replacement for any expiring policy at least thirty (30) days before the date of such expiration. All amounts recoverable under any such policy are hereby assigned to Mortgagee and in the event of a loss the amount collected may, at the option of Mortgagee, after deducting therefrom Mortgagee's reasonable attorney's fees and other expenses incurred in the collection and administration thereof, be used in such one or more of the following ways and in such order as Mortgagee in its discretion shall determine: (i) applied upon the Indebtedness, whether the Indebtedness or any part thereof then be matured or unmatured, (ii) used to fulfill any of Mortgagor's covenants and agreements contained herein as Mortgagee may determine, (iii) used to replace or restore the Premises or any part thereof to a condition satisfactory to Mortgagee, or (iv) released to Mortgagor. Mortgagee is hereby irrevocably appointed by Mortgagor as attorney-in-fact of Mortgagor, at Mortgagee's option, to adjust or compromise any loss under any insurance policies maintained pursuant to this paragraph, to collect and receive the proceeds from any such policy or policies, and to assign any policy without accounting for any unearned premium thereon in the event of the foreclosure of this Mortgage or a conveyance by Mortgagor in lieu of any such foreclosure.

6.    Compliance with Laws. Mortgagor will promptly comply with all present and future laws, ordinances, rules and regulations of any governmental authority affecting the Premises or any part thereof.

7.    Taxes and Assessments. Mortgagor will pay, before the same become delinquent, all taxes, assessments, water, sewer and other rents, charges, excises, levies, license fees, permit fees and all other charges (in each case, whether general or special, ordinary or extraordinary, or foreseen or unforeseen) of every character (including all penalties and interest thereon) now or hereafter levied, assessed, confirmed or imposed on, or in respect of, or which may be a lien upon the Premises or any part thereof, or any estate, right or interest therein, or upon the rents, issues, income or profits thereof, and will submit to Mortgagee such evidence of the due and punctual payment of all such taxes, assessments, and charges as Mortgagee may require. Mortgagor will pay all taxes, assessments and charges which may be levied on the Note or the ownership thereof or the interest thereon, or on this Mortgage or the ownership thereof (including without limitation, any intangibles, mortgage or documentary tax levied by the State of Alabama), excepting the Federal Income Tax imposed under the laws of the United States of America and any Income Tax imposed under the laws of any State. Provided further however, if for any reason payment by Mortgagor of any such taxes,

4

assessments and charges should be unlawful or if the payment thereof would constitute usury or render the Indebtedness wholly or partially usurious under any of the terms or provisions of the Note, or this Mortgage, or otherwise, Mortgagee may, at its option, declare the entire amount secured by this Mortgage, with interest thereon, to be due and payable six (6) months after notice is given to Mortgagor of the exercise of such option, or Mortgagee may, at its option, pay that amount or portion of such taxes, assessments and charges as render the Indebtedness unlawful and usurious, in which event Mortgagor shall concurrently therewith pay the remaining lawful and nonusurious portion or balance of said taxes, assessments and charges. Provided, however, Mortgagor shall not be in breach of its covenants under this paragraph with respect to any tax, assessment or charge while it is in good faith contesting the same and provided any liens are released (by payment, bonding or otherwise) within the earlier of 30 days after the date of filing thereof and 15 days after Mortgagor received actual notice thereof.

8.     Performance by Mortgagee.  If Mortgagor fails to observe or perform any of Mortgagor's covenants set forth in this Mortgage, then Mortgagee, at its option, may perform and observe the same, and all reasonable payments made and costs incurred by Mortgagee in connection therewith, and reasonable attorney's fees, shall be secured hereby, and, upon demand, shall be repaid by Mortgagor, with interest thereon at the interest rate then provided in the Note, calculated from the date any such payment is made. Mortgagee is hereby empowered to enter and to authorize others to enter upon the Premises or any part thereof for the purpose of performing or observing any such defaulted covenant, without thereby becoming liable to Mortgagor or any person in possession holding under Mortgagor, subject to rights of tenants in possession.

9.     Waste or Alteration.  Mortgagor (i) will not commit waste or permit impairment or deterioration of the Premises; (ii) shall not abandon the Premises; (iii) shall keep the Premises, including improvements, fixtures, equipment, machinery and appliances that may be now or hereafter located thereon in good repair and shall replace fixtures, equipment, machinery and appliances on the Premises when necessary to keep such items in good repair; (iv) shall generally operate and maintain the Premises in a manner to ensure maximum revenue; and (v) shall give notice in writing to Mortgagee of and, unless otherwise directed in writing by Mortgagee, appear in and defend any action or proceeding purporting to affect the Premises, the security of this Mortgage or the rights or powers of Mortgagee hereunder. Neither Mortgagor nor any tenant, occupant or other person shall remove, demolish or alter any improvements hereafter erected on the Premises or any fixture, equipment, machinery or appliance in or on the Premises except when incident to the replacement of fixtures, equipment, machinery and appliances with items of like kind.

10.     Condemnation. Mortgagor hereby assigns to Mortgagee all awards hereafter made by virtue of any exercise of the right of condemnation or eminent domain by any authority, including any award for damages to or taking of title to the Premises or any part thereof, or the possession thereof, or any right of easement affecting the Premises or appurtenant thereto (including any award for any change of grade of streets), and the proceeds of all sales in lieu of condemnation. Mortgagor, immediately upon obtaining knowledge of the institution, or the proposed, contemplated or threatened institution, of any action or proceeding for the taking through condemnation of the Premises or any part thereof will notify Mortgagee, and Mortgagee is hereby authorized, at its option, to commence, appear in and prosecute, through counsel selected by Mortgagee, in its own name or in

5

Mortgagor's name, any action or proceeding relating to any condemnation, and to settle or compromise any claim in connection therewith, and the reasonable expenses thereof shall be secured hereby, and, upon demand, shall be repaid by Mortgagor. Mortgagee, at its option, is hereby authorized to collect and receive all such awards and the proceeds of all such sales and to give proper receipts and acquittances therefor and Mortgagee, at its election, may use such awards and proceeds in any one or more of the following ways and in such order as Mortgagee in its discretion shall determine: (i) apply the same or any part thereof upon the Indebtedness whether then matured or unmatured, (ii) use the same or any part thereof to fulfill any of the covenants and agreements of Mortgagor hereunder as Mortgagee may determine, (iii) pay the same or any part thereof to Mortgagor for the purpose of replacing, restoring or altering the Premises to a condition satisfactory to Mortgagee, or (iv) release the same to Mortgagor. Mortgagor agrees to execute and deliver such other instruments as Mortgagee may require evidencing the assignment of all such awards and proceeds to Mortgagee. Any excess of such award after Mortgagee applies the same as aforesaid shall be refunded by Mortgagee to Mortgagor.

11. <u>Mortgagee's Expenses</u>. If Mortgagee is made a party to or appears as a party plaintiff or defendant in any suit, action, dispute, or proceeding affecting the Premises, the Note, any amount secured hereby, or the validity or priority of this Mortgage, then Mortgagor shall, upon demand, reimburse Mortgagee for all reasonable expenses incurred by Mortgagee by reason of any such suit, action, dispute or proceeding, including reasonable attorney's fees, and the same shall be secured hereby.

12. <u>Subrogation of Mortgagee</u>. Mortgagee shall be subrogated to any encumbrance, lien, claim or demand (including all the rights therein and security for the payment thereof) paid or discharged with the proceeds of the Indebtedness, or by Mortgagee under the provisions hereof, and each of them is hereby preserved and shall pass to and be held by Mortgagee as further security for the Indebtedness.

13. <u>Use of the Premises</u>. During the existence of this Mortgage, Mortgagor will at all times use and operate each Premises as an apartment complex and for purposes incidental thereto or use otherwise approved by Mortgagee, and will not abandon the Premises without the prior written consent of Mortgagee.

14. <u>Prior Liens/Development Fees/Additional Indebtedness</u>.

(a) Mortgagor will not permit any part of the Premises to become subject to any security interest, conditional sale contract, title retention arrangement or other charge or lien taking precedence over the lien and interest hereof.

(b) Mortgagor will not pay or incur any development fees or incentive fees without the prior written consent of Mortgagee.

(c) Mortgagor shall not incur any additional indebtedness or sell, transfer, assign, lease (except as consented to by Mortgagee in writing), pledge or otherwise convey any of its rights, title and interest in and to the Premises without the prior written consent of Mortgagee.

6

15.    Escrow of Taxes and Insurance.  Mortgagor will pay to Mortgagee, to the extent requested by Mortgagee, on the dates upon which interest under the Note is payable, such amounts as Mortgagee from time to time estimates as necessary to create and maintain a reserve fund from which to pay, before the same become due, all taxes, assessments, liens or charges on or against the Premises, and premiums for insurance required hereunder to be paid by Mortgagor. Such reserve funds shall be held by Mortgagee, free of interest, and free of any liens or claims on the part of creditors of Mortgagor and as part of the security of Mortgagee. Such funds shall not be, nor be deemed to be, trust funds but may be commingled with the general funds of Mortgagee. Payments from said reserve fund for said purposes may be made by Mortgagee at its discretion even though subsequent owners of the Premises may benefit thereby. Upon the occurrence of an Event of Default hereunder, any part or all of said reserve fund may in Mortgagee's discretion be applied to any part of the Indebtedness, and in refunding any part of said reserve fund, Mortgagee may deal with whomever is represented to be the owner of the Premises at that time.

16.    Interest Rate Upon Default; Attorney Fees.  Subsequent to the occurrence of an Event of Default and the acceleration of the Indebtedness evidenced by the Note, the principal of the Note then outstanding shall bear interest at four (4%) percent per annum in excess of the interest rate provided in the Note in the absence of such Event of Default.  In the event the Note or any amount secured hereby is collected by suit or through an attorney, Mortgagor agrees to pay all costs of collection, including, but not limited to, reasonable attorney's fees actually incurred in connection with the protection or realization of collateral or in connection with any of Mortgagee's collection efforts, whether or not suit on the Note or any foreclosure proceeding hereunder is filed, and all such costs and expenses shall be due and payable on demand and shall be a part of the Indebtedness and secured hereby.

17.    Conveyance of Premises.

(a)    Mortgagor hereby acknowledges to Mortgagee that (i) the identity and expertise of Mortgagor was and continue to be material circumstances upon which Mortgagee has relied in connection with, and which constitute valuable consideration to Mortgagee for, extending to Mortgagor the indebtedness evidenced by the Note, and (ii) any change in such identity or expertise could materially impair or jeopardize the security for the payment of the Note granted to Mortgagee by this Mortgage.  Mortgagor therefore covenants and agrees with Mortgagee, as part of the consideration for extending to Mortgagor the indebtedness evidenced by the Note, that Mortgagor shall not encumber, pledge, lease, convey, transfer or assign any or all of its interest in the Premises, without the prior written consent of Mortgagee, which shall be in Mortgagee's sole and absolute discretion, and may be arbitrarily withheld. Mortgagor shall reimburse Mortgagee for all reasonable costs actually incurred by Mortgagee in giving its consent under this paragraph.

(b)    Mortgagor shall furnish Mortgagee with executed copies of all leases, occupancy agreements or the like for all or any portion of the Premises (the "Leases"). In addition, all Leases shall provide for market rental rates and terms and shall be arms-length transactions.  All Leases shall provide that they are subordinate to this Mortgage and that the lessee agrees to attorn to Mortgagee. Each lessee or occupant, if requested by Mortgagee, shall execute a tenant estoppel and

7

subordination agreement in a form and with content acceptable to Mortgagee in Mortgagee's sole reasonable discretion.

(c)    Mortgagor (i) shall observe and perform all the obligations imposed upon the lessor under the Leases and shall not do or permit to be done anything to impair the value of the Leases as security for the Indebtedness; (ii) shall enforce all of the material terms, covenants and conditions contained in the Leases upon the part of the lessee thereunder to be observed or performed, short of termination thereof; (iii) shall not collect any of the Rents more than five (5) days in advance; (iv) shall not execute any other assignment of the lessor's interest in the Leases or the Rents; and (v) shall not consent to any assignment of or subletting under the Leases not in accordance with their terms, without the prior written consent of Mortgagee.

18.    <u>Books, Records, Accounts and Annual Reports</u>. Mortgagor will keep and maintain or will cause to be kept and maintained, at Mortgagor's cost and expense, proper and accurate books, records and accounts reflecting all items of income and expense in connection with the operation of the Premises and in connection with any services, equipment or furnishings provided in connection with the operation of the Premises. Mortgagee, by Mortgagee's agents, accountants and attorneys, shall have the right from time to time to examine such books, records and accounts at the office of Mortgagor or such other person or entity maintaining such books, records and accounts and to make copies or extracts thereof as Mortgagee shall desire and to discuss Mortgagor's affairs, financings and accounts with Mortgagor at such reasonable times as may be requested by Mortgagee.

19.    <u>Inspection of Premises</u>. Mortgagee and any person authorized by Mortgagee shall have the right at any time and from time to time to enter upon and inspect the Premises, including all books and records with respect thereto, and Mortgagor shall make the same available for such purpose. Mortgagor shall be available, at such reasonable times as may be requested by Mortgagee, to meet with Mortgagee and its agents, accountants and attorney's to discuss Mortgagor's affairs, finances and accounts.

20.    <u>Replacement of Note</u>. Upon receipt of evidence reasonably satisfactory to Mortgagor of the loss, theft, destruction or mutilation of the Note, and in the case of any such loss, theft or destruction, upon delivery of an indemnity agreement reasonably satisfactory to Mortgagor, in the case of any such mutilation, upon surrender and cancellation of the Note, Mortgagor will execute and deliver, in lieu thereof, a replacement Note, identical in form and substance to the Note and dated as of the date of the Note and upon such execution and delivery all references in this Mortgage to the Note shall be deemed to refer to such replacement Note.

21.    <u>Suits to Protect Premises</u>. Mortgagee shall have the power to institute and maintain such suits and proceedings as it may deem expedient (i) to prevent any impairment of the Premises by any acts which may be unlawful or constitute an Event of Default under this Mortgage, (ii) to preserve or protect its interest in the Premises and in the incomes, rents, issues, profits and revenues arising therefrom and (iii) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order would impair the security hereunder or be prejudicial to the interest of Mortgagee.

8

22.   <u>Zoning Change</u>.  Mortgagor shall not initiate, join in, or consent to any change in any private restrictive covenant, zoning ordinance, or other public or private restrictions limiting or defining the uses which may be made of the Premises or any part thereof without the express written consent of Mortgagee.

23.   <u>Further Assurances</u>.  Mortgagor shall execute and deliver (and pay the costs of preparation and recording thereof) to Mortgagee and any subsequent holder from time to time, upon demand, any further instrument or instruments, including, but not limited to, mortgages, financing statements, assignments and renewal and substitution Notes, so as to reaffirm, to correct, and to perfect the evidence of the obligations hereby secured and the legal security title and lien of Mortgagee to all or any part of the Premises intended to be hereby conveyed and granted, whether now conveyed, later substituted for, or acquired subsequent to the date of this Mortgage, and extensions or modifications thereof.

24.   <u>Events of Default</u>.  The occurrence of any one or more of the following events shall constitute an Event of Default hereunder:

(i)    <u>Default in Payment</u>.  Any portion of the Indebtedness is not paid prior to the tenth (10th) day after same is due; or

(ii)   <u>Default Under Loan Documents</u>.  Any default or Event of Default shall occur under any of the other documents evidencing, securing or otherwise relating to the Indebtedness, including, without limitation, the Assignment of Leases and Rents (collectively, the "Loan Documents"); or

(iii)  <u>Breach of Covenant</u>.  Mortgagor shall breach or fail to perform, observe or meet any covenant or condition in this Mortgage, or any of the other Loan Documents; or

(iv)   <u>Filing of Liens Against the Premises</u>.  Any lien for labor, materials or taxes (except for ad valorem taxes not yet due and payable) or otherwise shall be filed against the Premises and not be released (by payment, bonding or otherwise) within the earlier of thirty (30) days after the date of filing thereof or fifteen (15) days after Mortgagor receives actual notice thereof; or

(v)    <u>Litigation Against Mortgagor</u>.  Any suit shall be filed against Mortgagor which if adversely determined, could reasonably be expected substantially to impair the ability of Mortgagor to perform each and every one of his obligations under and by virtue of the Loan Documents; or

(vi)   <u>Levy Upon the Premises</u>.  A levy shall be made under any process on, or a receiver be appointed for the Premises or any part thereof or any other property of Mortgagor; or

(vii)  <u>Bankruptcy of Mortgagor</u>.  (i) Mortgagor shall (A) apply for or consent to the appointment of a receiver, trustee or liquidator of any of his property or assets, (B) admit in

9

writing his inability to pay his respective debts as they mature, (C) make a general assignment for the benefit of creditors, (D) be adjudicated a bankrupt or insolvent, (E) file a voluntary petition in bankruptcy, or a petition or an answer seeking reorganization or an arrangement with creditors or to take advantage of any bankruptcy, reorganization, insolvency, readjustment of debt, dissolution or liquidation law or statute, or an answer admitting the material allegations of a petition filed against him in any proceeding under any such law, or (F) take action for the purpose of effecting any of the foregoing; or (ii) an order, judgment or decree shall be entered without the application, approval or consent of Mortgagor by any court of competent jurisdiction, approving a petition seeking reorganization of Mortgagor or of all or a substantial part of his properties or assets, or appoint a receiver, trustee or liquidator of him and such order, judgment or decree shall continue unstayed and in effect for any period of sixty (60) days; or

(viii)    Abandonment.  The Premises shall be abandoned; or

(ix)    Denial of Inspection.  Mortgagee or its representative shall not be permitted, at all reasonable times, to enter upon the Premises, to inspect the Improvements; or

(x)    Materials Not Free and Clear.  Mortgagor shall execute (other than to Mortgagee) any conditional bill of sale, chattel mortgage or other security instrument covering any materials, fixtures, machinery, equipment, articles, and/or personal property intended to be incorporated in the Improvements or the appurtenances thereto, or placed in the Improvements, or if a financing statement publishing notice of such security instrument shall be filed, or if any of such materials, fixtures, machinery, equipment, articles, and/or personal property shall not be purchased so that the ownership thereof will vest unconditionally in Mortgagor, free from encumbrances other than to Mortgagee, on delivery at the Premises, or if Mortgagor shall not produce to Mortgagee upon demand the contracts, bills of sale, statements, receipted vouchers or agreements, or any of them, under which Mortgagor claims title to any thereof; or

(xi)    False Representation or Warranty.  At any time any representation, warranty or statement made by Mortgagor in any Loan Document shall be incorrect or misleading in any material respect; or

(xii)    Failure to Disprove Default.  Mortgagee shall reasonably suspect the occurrence of any default or Event of Default and Mortgagor, upon the request of Mortgagee, shall fail to provide evidence reasonably satisfactory to Mortgagee that such default or Event of Default has not in fact occurred; or

(xiii)    Waste.  The Premises are subjected to actual or threatened waste of a material nature, or any material part of the completed improvements thereof is removed, demolished or altered without the prior written consent of Mortgagee; or

(xiv)    Judgment.  Any final judgment or order for the payment of money in excess of $50,000 shall be rendered against Mortgagor, and either (i) enforcement proceedings shall have been commenced by any creditor upon such judgment or order, or (ii) there shall be any period

10

of ten (10) consecutive days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect; or

(xv)   Transfer. The Premises or any portion of the Premises or any interest in the Premises is transferred, sold, leased, conveyed, assigned or further encumbered without the prior written consent of Mortgagee, which consent may be withheld in the sole and absolute discretion and determination of Mortgagee (without limitation, for purposes hereof, the sale or change of a beneficial interest in Mortgagor shall be considered a sale or transfer of Mortgagor's interest in the Premises); or

Any notice, cure or grace periods contained herein shall run concurrently and not consecutively with any notice, cure or grace periods contained in any other of the Loan Documents.

25.   Acceleration of Maturity.  If an Event of Default shall have occurred (such uncured Event of Default being referred to as a "Default"), and such Event of Default is not cured within the applicable cure period, then the entire Indebtedness shall, at the option of Mortgagee, immediately become due and payable without notice or demand, time being of the essence of this Mortgage; and no omission on the part of Mortgagee to exercise such option when entitled to do so shall be construed as a wavier of such right.

26.   Right to Enter and Take Possession.

(a)   If a Default shall have occurred, Mortgagor, upon demand of Mortgagee, shall forthwith surrender to Mortgagee the actual possession of the Premises and to the extent permitted by law, Mortgagee, in person or by agent or by court-appointed receiver, may enter and take possession of all of the Premises, and may exclude Mortgagor and its agents and employees wholly therefrom, and may have joint access with Mortgagor to the books, papers and accounts of Mortgagor, and may take any and all steps which may be desirable in the Mortgagee's judgment to manage and operate the Premises, and Mortgagee may apply any rents, royalties, income or profits collected against the Indebtedness secured by this Mortgage without in any way curing or waiving any Default to the Mortgagor;

(b)   If Mortgagor shall for any reason fail to surrender or deliver the Premises or any part thereof after such demand by Mortgagee, Mortgagee may obtain a judgment or decree conferring upon Mortgagee the right to immediate possession or requiring Mortgagor to deliver immediate possession of the Premises to Mortgagee, and Mortgagor hereby specifically covenants and agrees that Mortgagor will not oppose, contest or otherwise hinder or delay Mortgagee in any action or proceeding by Mortgagee to obtain such judgment or decree.  Mortgagor will pay to Mortgagee, upon demand, all expenses of obtaining such judgment or decree, including reasonable compensation to Mortgagee, its attorneys' and agents, and all such expenses and compensation shall, until paid, become part of the Indebtedness and shall be secured by this Mortgage.  In the event that all such interest, deposits and principal installments and other sums due under any of the terms, covenants, conditions and agreements of this Mortgage shall be paid and all Events of Default shall be cured, and as a result thereof Mortgagee surrenders possession of the Premises to Mortgagor, the same right of taking possession shall continue to exist if any subsequent Event of Default shall occur.

11

27.    <u>Performance by Mortgagee</u>.  If Mortgagor shall default in the payment, performance or observance of any term, covenant or condition or this Mortgage, Mortgagee may, at its option, pay, perform or observe the same, and all payments made or costs or expenses incurred by Mortgagee in connection therewith shall be secured hereby and shall be, without demand, immediately repaid by Mortgagor to Mortgagee with interest thereon at the Default Rate provided in the Note. Mortgagee shall be the sole judge of the necessity for any such actions and of the amounts to be paid. Mortgagee is hereby empowered to enter and to authorize others to enter upon the Premises or any part thereof for the purpose of performing or observing any such defaulted term, covenant or condition without thereby becoming liable to Mortgagor or any person in possession holding under Mortgagor.

28.    <u>Receiver</u>.  If a Default shall have occurred, Mortgagee, upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right, without notice and without regard to the adequacy or value of any security for the Indebtedness or the solvency of any party bound for its payment, to the appointment of a receiver to take possession of and to operate the Premises and to collect and apply the incomes, rents, issues, profits and revenues thereof. The receiver shall have all of the rights and powers permitted under the laws of the State of Alabama. Mortgagor will pay to Mortgagee upon demand all expenses, including receiver's fees, attorney's fees, costs and agent's compensation, incurred pursuant to the provisions of this Paragraph 28, and any such amounts paid by Mortgagee shall be added to the Indebtedness and shall be secured by this Mortgage.

**MORTGAGOR HEREBY SPECIFICALLY WAIVES THE RIGHT TO OBJECT TO THE APPOINTMENT OF A RECEIVER AS AFORESAID AND HEREBY EXPRESSLY CONSENTS THAT SUCH APPOINTMENT SHALL BE MADE AS AN ADMITTED EQUITY AND AS A MATTER OF ABSOLUTE RIGHT OF MORTGAGEE.**

29.    <u>Foreclosure, Sale and Further Remedies</u>.

(a)    If, after applicable notice and grace, if any, the Mortgagor remains in default, then Mortgagee may, at its continuing option, and without further notice to or demand upon Mortgagor, take any of the following actions:

(i)    Bring a court action at law or in equity (1) to foreclose this Mortgage or (2) to enforce its provisions or any of the indebtedness or obligations secured by this Mortgage, either or both, concurrently or otherwise, and one action or suit shall not abate or be a bar to or waiver of Mortgagee's right to institute or maintain the other, provided that Mortgagee shall have only one payment and satisfaction of the Indebtedness;

(ii)    Cause any or all of the Premises to be sold under the power of sale granted by this Mortgage in any manner permitted by applicable law;

(iii)    Exercise any other right or remedy available under law or in equity;

12

(iv)    Sell the Premises at public outcry to the highest bidder for cash between the legal hours for sale in front of the courthouse door in the county where said Premises is located, either in person or by auctioneer, after having first given notice of the time, place and terms of sale by publication once a week for three (3) successive weeks prior to said sale in some newspaper published in said county, and, upon payment of the purchase money, Mortgagee or any person conducting the sale for Mortgagee is authorized to execute to the purchaser at said sale a deed to the property so purchased. Mortgagee may bid at said sale and purchase said Premises, or any part thereof, if the highest bidder therefor. At the foreclosure sale the Premises may be offered for sale and sold as a whole without first offering it in any other manner or may be offered for sale and sold in any other manner Mortgagee may elect in its sole discretion.

(b)    Mortgagor waives all rights to direct the order or manner in which any of the Premises will be sold in the event of any sale under this Mortgage, and also any right to have any of the Premises marshalled upon any sale. Mortgagee may in its discretion sell all the personal and real property together or in parts, in one or more sales, and in any sequence Mortgagee selects.

(c)    All remedies contained in this Mortgage are cumulative, and the Mortgagee also has all other remedies provided by law or in any other agreement between the Mortgagor and the Mortgagee. No delay or failure by the Mortgagee to exercise any right or remedy under this Mortgage will be construed to be a waiver of that right or remedy or of any default by the Mortgagor. The Mortgagee may exercise any one or more of its rights and remedies at its option without regard to the adequacy of its security.

(d)    Mortgagor will pay all of the Mortgagee's expenses incurred in any efforts to enforce any terms of this Mortgage, whether or not any lawsuit is filed, including but not limited to reasonable legal fees and disbursements, foreclosure costs and title charges.

30.    <u>Purchase by Mortgagee</u>. Upon any foreclosure sale or upon a sale or sales of all or any portion of the Premises under the power herein granted, Mortgagee may bid for and purchase the Premises and shall be entitled to apply all or any part of the Indebtedness as a credit to the purchase price.

31.    <u>Application of Proceeds of Sale</u>. In the event of any foreclosure sale or in the event of a sale or sales of all or any portion of the Premises under the power herein granted, the proceeds of any such sale shall be applied as follows:

(i)    First, to payment of the costs and expenses of the sale, including but not limited to Mortgagee's fees, reasonable legal fees and disbursements, title charges and transfer taxes and payment of all expenses, liabilities and advances of the Mortgagee, together with interest at the rate provided under the Note on all advances made by the Mortgagee.

(ii)    Second, to payment of all sums expended by the Mortgagee under the terms of this Mortgage and not yet repaid, together with interest on such sums at the rate provided under the Note.

13

(iii)     Third, to payment of the Indebtedness and obligations of the Mortgagor secured by this Mortgage in any order that the Mortgagee chooses.

(iv)     Fourth, the remainder, if any, to the person or persons appearing of record to be the owner of the Premises.

32.     Mortgagor as Tenant Holding Over. In the event of any foreclosure sale, or in the event of a sale or sales of all or any portion of the Premises under the power herein granted, Mortgagor shall be deemed a tenant holding over and shall forthwith deliver possession to the purchaser or purchasers at such sale or be summarily dispossessed according to provisions of law applicable to tenants holding over.

33.     Discontinuance of Proceedings. In case the Mortgagee shall have proceeded to enforce any right, power or remedy under this Mortgage by foreclosure, entry or otherwise, and such proceedings shall have been discontinued or abandoned for any reason, or shall have been determined adversely to the Mortgagee, then and in every such case the Mortgagor and Mortgagee shall be restored to their former positions and rights hereunder, and all rights, powers and remedies of the Mortgagee shall continue as if no such proceeding had been taken.

34.     Remedies Cumulative; Waiver.

(a)     Each of the rights of Mortgagee under this Mortgage and the Note and each and every other document or instrument now or hereafter evidencing or securing the Indebtedness, is separate and distinct from and cumulative to all other rights herein and therein granted, and no such right shall be in exclusion of any other.

(b)     No delay or omission by Mortgagee or by any holder of the Note to exercise any right, power or remedy accruing upon any breach or Default shall exhaust or impair any such right, power or remedy or shall be construed to be a waiver of any such breach or Event of Default, or acquiescence therein, and every right, power and remedy given by this Mortgage to Mortgagee may be exercised from time to time and as often as may be deemed expedient by Mortgagee. No consent or waiver, expressed or implied, by Mortgagee to, or of, any breach or Event of Default by Mortgagor in the performance of the obligations of Mortgagor hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or Default in the performance of the same or any other obligations of Mortgagor hereunder. Failure on the part of Mortgagee to complain of any act or failure to act or to declare an Event of Default, irrespective of how long such failure continues, shall not constitute a waiver by Mortgagee of its rights hereunder or impair any rights, powers or remedies of Mortgagee hereunder.

(c)     No act or omission by Mortgagee shall release, discharge, modify, change or otherwise affect the original liability under the Note, this Mortgage or any other obligation of Mortgagor or any subsequent purchaser of the Premises or any part thereof, or any guarantor, or preclude Mortgagee from exercising any right, power or privilege herein granted or intended to be granted in the event of any Default then made or of any subsequent Event of Default, or alter the

14

RLPY 2790 PAGE 0741

security title, security interest or lien of this Mortgage except as expressly provided in an instrument or instruments executed by Mortgagee. Without limiting the generality of the foregoing, Mortgagee may: (i) grant forbearance or an extension of time for the payment of all or any portion of the Indebtedness; (ii) take other or additional security for the payment of the Indebtedness, (iii) waive or fail to exercise any right granted hereunder or in the Note; (iv) release any part of the Premises from the security interest or lien of this Mortgage or otherwise change any of the terms, covenants, conditions or agreements of the Note or this Mortgage; (v) consent to the filing of any map, plat or replat affecting the Premises; (vi) consent to the granting of any easement or other right affecting the Premises; (vii) make or consent to any agreement subordinating the security title, security interest or lien hereof; or (viii) take or omit to take any action whatsoever with respect to the Note, this Mortgage, the Premises or any document or instrument evidencing, securing or in any way relating to the Indebtedness; all without releasing, discharging, modifying, changing or affecting any such liability or precluding Mortgagee from exercising any such right, power or privilege affecting the security title, security interest or lien of this Mortgage. In the event of the sale or transfer by operation of law or otherwise of all or any part of the Premises, Mortgagee, without notice, is hereby authorized and empowered to deal with any such vendee or transferee with reference to the Premises or the Indebtedness, or with reference to any of the terms, covenants, conditions or agreements hereof as fully and to the same extent as it might deal with the original parties hereto and without in any way releasing and/or discharging any liabilities, obligations or undertakings.

35.    Assignment by Mortgagee. This Mortgage is assignable by Mortgagee, and any assignment of the same by Mortgagee shall operate to vest in such assignee the legal title to the Premises and all rights and powers herein conferred.

36.    Construction. Time is of the essence with respect to each and every covenant, agreement and obligation of Mortgagor under this Mortgage, the Note and any and all other instruments now or hereafter evidencing or securing the Indebtedness. The pronouns used herein shall include the masculine, feminine and neuter genders and the singular and plural forms where the context so requires. As used herein the terms "Mortgagor" and "Mortgagee" shall include the named Mortgagor and the named Mortgagee and their respective legal representatives, heirs, successors-in-title and permitted assigns.

37.    Defeasance. If (i) Mortgagor shall pay in full and discharge all the Indebtedness; and (ii) the Mortgagor shall then have kept and performed each and every obligation, covenant, duty, condition and agreement herein, or any other Loan Document imposed on or agreed to by Mortgagor, then this Mortgage and the grants and conveyances contained herein shall become null and void, and the Premises shall revert to the Mortgagor, and the entire estate, right, title and interest of the Mortgagee shall thereupon cease; and the Mortgagee shall, upon the request of the Mortgagor and at Mortgagor's cost and expense, deliver to the Mortgagor proper instruments acknowledging satisfaction of this instrument and terminating all financing statements filed in connection herewith; otherwise, this Mortgage shall remain in full force and effect. Notwithstanding anything to the contrary contained in this Section 37 or elsewhere in this Mortgage, it is expressly understood and agreed that, although there may be from time to time occasions when no Indebtedness shall be outstanding, this Mortgage and the lien thereof and security interests created thereby shall nevertheless remain in full force and effect, and none of the estate, right, title and

15

interest of the Mortgagee passing by this Mortgage shall divest nor shall the Premises revert to the Mortgagor, so long as the Mortgagee has any obligation to advance funds under the Note, or any of the Loan Documents, or any Indebtedness are outstanding.

38.     Waiver of Appraisement, Valuation, Etc. Mortgagor agrees, to the full extent permitted by law, that in the case of an Event of Default hereunder, neither Mortgagor nor any one claiming through or under Mortgagor will set up, claim or seek to take advantage of any moratorium, reinstatement, forbearance, appraisement, valuation, stay, extension, exemption or redemption laws now or hereafter enforced, in order to prevent or hinder the enforcement or foreclosure of this Mortgage, of the absolute sale of the Premises, or the delivery of possession thereof immediately after such sale to the purchaser at such sale, and Mortgagor, for itself and all who may at any time claim through or under it, hereby assigns to Mortgagee and waives (to the full extent that it may lawfully do so) the benefit of all such laws, and any and all right to have the assets subject to the security interest of this Mortgage marshalled upon any foreclosure or sale under the power herein granted.

39.     Waiver of Homestead. Mortgagor hereby waives and renounces all homestead and exemption rights provided for by the Constitution and laws of the United States and of any state, in the Premises against the collection of the Indebtedness, or any part thereof.

40.     Invalid Provisions. If any provision of this Mortgage or any paragraph, sentence, clause, phrase or word, or the application thereof in any circumstance, is held invalid or unenforceable, the validity and enforceability of the remainder of this Mortgage, and of the application of any such provision, paragraph, sentence, clause, phrase or word in other circumstances, shall not be affected thereby, it being intended that all rights, powers and privileges of Mortgagee hereunder shall be enforceable to the fullest extent permitted by law.

41.     Notice. Any and all notices, elections or demands permitted or required to be made under this Mortgage or the Note shall be in writing, signed by the party giving such notice, election or demand and shall be delivered personally, or sent by registered or certified mail, to the other party at the address set forth below, or at such other address as may be supplied in writing. The date of personal delivery or the date of mailing, as the case may be, shall be the date of giving of such notice, election or demand. For the purpose of this Mortgage and the Note.

The address of Mortgagor is:          Mark Frederick
                                      1417 Second Street #H307
                                      San Diego, California 92118


The address of Mortgagee is:          Eva Bank
                                      Attention: Mr. Mike Duke
                                      1710 Cherokee Avenue, SW
                                      Cullman, Alabama 35055


or such other address as any party hereto may give the other pursuant to the provisions hereof.

16

42.    Limit of Validity. If from any circumstance whatever fulfillment of any provision of this Mortgage or the Note, at the time performance of such provision shall be due, shall involve transcending the limit of validity then prescribed by any applicable usury statute or any other law, with regard to obligations of like character and amount, then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Mortgage or under the Note that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity and, in the event of such reduction, the unpaid balance of the principal sum of the Indebtedness, together with all accrued interest thereon, and any other sums advanced hereunder or under the Note by the Mortgagee, shall, at the option of the Mortgagee, notice of exercise of said option being hereby waived, forthwith become due and payable, without any notice or demand whatsoever. In no event shall Mortgagor, or its assigns, legal representatives, or successors, be bound to pay for the use, forbearance or detention of the money loaned and secured hereby, interest of more than the legal limit, the right to demand any such excess being expressly waived by Mortgagee. The provisions of this paragraph shall control every other provision of this Mortgage and the Note.

43.    Headings. The headings of the paragraphs of this Mortgage are for the convenience of reference only, are not to be considered as part hereof and shall not limit or otherwise affect any of the terms hereof.

44.    No Oral Change. This Mortgage may not be changed or terminated orally, but only by an agreement in writing signed by the party against whom enforcement of the change or termination is sought.

45.    Hazardous Substances. Mortgagor (a) has no actual knowledge (i) of the permanent placement, burial or disposal of any Hazardous Substances (as hereinafter defined) on the Premises; (ii) of any spills, releases, discharges, leaks or disposal of Hazardous Substances that have occurred or are presently occurring on, under, or onto the Premises; or (iii) of any spills, releases, discharges, leaks or disposal of Hazardous Substances that have occurred or are occurring off of the Premises as a result of Mortgagor's improvement, operation or use of the Premises which would result in noncompliance with any of the Environmental Laws (as hereinafter defined); (b) to the best of Mortgagor's knowledge, is and has been in compliance with all applicable Environmental Laws; (c) knows of no pending or threatened environmental civil, criminal or administrative proceedings against Mortgagor relating to Hazardous Substances; (d) to the best of Mortgagor's knowledge, knows of no facts or circumstances that would give rise to any future civil, criminal or administrative proceeding against Mortgagor relating to Hazardous Substances; and (e) will not permit any of its employees, agents, contractors, subcontractors, or any other person occupying or present on the Premises to generate, manufacture, store, dispose or release on, about or under the Premises any Hazardous Substances which would result in noncompliance with the Environmental Laws. As used herein, "Hazardous Substances" shall mean and include all hazardous and toxic substances, wastes, materials, compounds, pollutants and contaminants (including, without limitation, asbestos, polychlorinated biphenyls, and petroleum products) which are included under or regulated by the Comprehensive Environmental Response, Compensation and Liability Act, as amended, 42 U.S.C. Sec. 9601, et seq., the Toxic Substances Control Act, 15 U.S.C. Sec. 2601, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Sec. 6901, et seq. and the Clean Air Act, 42 U.S.C. Sec.

17

7401, *et seq.* and any other federal, state or local statute ordinance, law, code, rule, regulation or order regulating or imposing liability or standards of conduct regarding Hazardous Substances (the "Environmental Laws"), but does not include such substances as are permanently incorporated into a structure or any part thereof in such a way as to preclude their subsequent release into the environment, or the permanent or temporary storage or disposal of household hazardous substances, which are thereby exempt from or do not give rise to any violation of the aforementioned Environmental Laws.

46.     Security Agreement Under UCC.  This Mortgage shall also constitute a "security agreement" as that term is defined in the Uniform Commercial Code as enacted in the State of Alabama (sometimes hereinafter referred to as the "U.C.C.") with respect to the Equipment and Contracts, and/or any part thereof, and creates a security interest in Mortgagee in the Equipment and Contracts. Upon request by Mortgagee, at any time and from time to time, a financing statement or statements shall be executed by Mortgagee and Mortgagor and filed in the manner required to perfect said security interests under the U.C.C. Compliance with U.C.C. requirements relating to personal property shall not be construed as altering in any way the rights of Mortgagee as determined by this instrument under any other statutes or laws of the State of Alabama, but is declared to be solely for the protection of Mortgagee in the event that such compliance is at any time held to be necessary to preserve the priority of Mortgagee's security interests in the Equipment and Contracts against any other claims.

47.     Applicable Law and Jurisdiction.  This Mortgage shall be interpreted, construed and enforced according to the laws of the State of Alabama. Mortgagor agrees that, at the option of Mortgagee, the United States District Court for the district in which the Land is located or any court of competent jurisdiction of the state in which the Land is located shall have jurisdiction in any action, suit or other proceeding arising out of or relating to any act taken or omitted hereunder or the enforcement of the Note and this Mortgage and Mortgagor shall not assert in any such action, suit or other proceeding that it is not personally subject to the jurisdiction of the courts described above, that the action, suit or other proceeding is brought in an inconvenient forum or that the venue of the action, suit or proceeding is improper. In addition to and without limiting the generality of the foregoing, Mortgagor irrevocably and unconditionally submits to the non-exclusive jurisdiction of any court of competent jurisdiction of the state in which the Land is located and any United States District Court for the district in which the Land is located, and Mortgagor irrevocably and unconditionally agrees that any process or notice of motion or other application to any of said courts may be served upon Mortgagor in the manner prescribed in this Mortgage for the giving of notices or by personal notice or other service as allowed by law. Mortgagor further agrees to comply with all requirements necessary to give such courts in personam jurisdiction.

48.     Mortgagee's Liability.  No action shall be commenced by Mortgagor for any claim against Mortgagee under the terms of this Mortgage or the Note unless notice thereof, specifically setting forth the claim of Mortgagor, shall have been given to Mortgagee within sixty (60) days after Mortgagor shall have first become aware of the act, omission or event which allegedly gave rise to such claim, and failure to give such notice shall constitute a waiver of any such claim.

18

49.    Property Tax Reporting. Upon request by Mortgagee, Mortgagor will furnish to Mortgagee a copy of the paid property tax receipts on the Land.

50.    Purchases Money Mortgage. The proceeds of the Indebtedness have been applied to the purchase price of the above-described property; therefore, this is a purchase money mortgage.

51.    **Acknowledgment by Mortgagor**. **MORTGAGOR HEREBY DECLARES THAT MORTGAGOR HAS READ THIS MORTGAGE, HAS RECEIVED A TRUE, CORRECT AND COMPLETE COPY OF THIS MORTGAGE AND HAS EXECUTED AND DELIVERED THIS MORTGAGE AS OF THE DATE AT THE TOP OF THE FIRST PAGE HEREOF.**

IN WITNESS WHEREOF, the undersigned have executed and delivered this Mortgage, as of the day and year first above written.

WITNESS:

 _____ (L.S.)
MARK FREDERICK

_____

STATE OF CALIFORNIA        )
                           :
COUNTY OF San Diego        )

I, the undersigned, a Notary Public in and for said State at Large, hereby certify that Mark Frederick, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he executed the same voluntarily for on the day the same bears date.

Given under my hand and official seal this 4th day of December, 2003.



(SEAL)

Notary Public
My commission expires: 12/2/04

This instrument was prepared by:
James R. Dickens, Jr., Esq.
Rushton, Stakely, Johnston & Garrett, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
RSJG File No. 7328-1



19

## Exhibit "A"

## Legal Description of the Property

Lot A, according to the Map of Ann Gardens Plat No. 1, being a Replat of Lots 1 through 24, Block "C", McQueens Plat, as recorded in the Office of the Judge of Probate of Montgomery County, Alabama in Plat Book 35, at Page 32.

| INDEX | 5.00 |
|---|---|
| RECORD FEE | 1.00 |
| RECORD FEE | 50.00 |
| MORTGAGE TAX | 1464.00 |
| CASH | 1520.00 |

12-10-2003 #1

ITEM 4
1CL                3281 17:18

STATE OF ALABAMA
MONTGOMERY CO.
I CERTIFY THIS INSTRUMENT
WAS FILED ON

2003 DEC 10  PM 4:20  20

REESE McKINNEY, JR.
JUDGE OF PROBATE

ORDINANCE NO. 10-2001

AN ORDINANCE PROVIDING FOR THE DEMOLITION OF UNSAFE STRUCTURES.

SECTION ONE. BE IT ORDAINED BY THE COUNCIL OF THE CITY OF MONTGOMERY, ALABAMA, that the following provisions for the abatement of unsafe buildings and structures be and are hereby adopted:

A. (1) For purposes of this ordinance, a building or structure shall be considered "unsafe" if it is unsafe, unsanitary, without adequate egress, or otherwise dangerous to human life or if same constitutes a fire hazard or a hazard to safety or health by reason of inadequate maintenance, dilapidation, obsolescence or abandonment. When used herein, "building or structure" shall include any part or parts thereof.

(2) Any such unsafe building or structure is declared to be illegal as a public nuisance, and all buildings or structures so found to be unsafe by the Chief Building Official shall be subject to abatement by demolition in accordance with the procedures set forth in this ordinance.

B. (1) When used herein, the term "Building Official" shall refer to the "Chief Building Official of the City of Montgomery or any other municipal official or municipal employee designated by the Mayor as the person to exercise the authority and perform the duties delegated by this ordinance."

(2) Whenever the Building Official shall find a building or structure situated in the City to be unsafe, he shall give the person or persons, firm, association, corporation or other entity last assessing the property for state ad valorem taxes and all mortgagees of record, by certified or registered mail to the addresses on file in the Montgomery County Revenue Commissioner's office or Montgomery County Probate Judge's Office, notice that the building or structure has been found

EXHIBIT
3

10-2001

(4) The decision of the Building Official to demolish an unsafe building or structure shall be final without notice to the owner in such cases of emergency which in the opinion of the Building Official involve imminent danger to human life or health. The Building Official shall immediately cause such building, structure or portion thereof to be made safe by means of repair or demolition. For this purpose, the Building Official may enter at once such building or structure or the land upon which the same is located, or abutting land or structures, with such assistance and at such cost as the Building Official may deem necessary. The Building Official may vacate adjacent structures and protect the public by appropriate barricades or such other means as may be necessary, and for this purpose may close a public or private street, alley or means of access. The cost of such emergency repair or demolition shall be lien in favor of the City and shall be collected as provided herein.

C. (1) Within thirty (30) days from the date notice is given, any person, firm or corporation having a legal or equitable interest in a building or structure deemed to be unsafe by the Building Official may file with the City Clerk a written request for a hearing before the City Council setting forth all objections to the finding by the Building Official that such building or structure is unsafe to the extent of becoming a public nuisance. The City Clerk shall cause notice of the scheduled hearing to be served upon the requesting party via first class mail, postage prepaid and properly addressed, at the address used for the initial demolition notice unless an alternative address is provided to the Clerk. Upon holding such hearing, which hearing shall be held not less than five (5) days nor more than thirty (30) days after the filing of the written request, or in the event no hearing is timely requested, the City Council, after the expiration of thirty (30) days from the date notice is given, shall determine whether such building or structure is unsafe to the extent that it is a public nuisance requiring abatement by demolition. In the event that it is determined by the City Council that such building or structure is unsafe to the extent that it is a public nuisance requiring abatement

by demolition, the City Council shall order such building or structure to be demolished. Such demolition may be accomplished by the City by the use of its own forces, or it may provide by contract for such demolition. All contractors engaged by the City shall be registered nuisance abatement agents. The City shall have authority to sell or otherwise dispose of salvaged materials resulting from such demolition. Except as set forth in Part B(4) above, only the City Council, after notice and hearing as prescribed herein, may order the demolition of an unsafe building or structure.

(2) The City Council, at its discretion, may continue consideration of a demolition notice to a later date, and the City Clerk shall cause notice of such hearing to be given to the affected property owner(s) via first class mail, postage prepaid and properly addresses, at the address used for the initial demolition notice unless an alternative address is provided to the Clerk. A failure by the City Council to act on the findings of the Building Official within ninety (90) days from the date notice of same were first given to the property owner shall constitute a vacation of the Building Official's findings.

(3) Notwithstanding any provision herein to the contrary, the City Council may afford any property owner a reasonable opportunity to abate unsafe conditions found to exist upon his property and in so doing shall require that (i) all repairs or demolition be commenced within ten (10) days of the Council hearing and completed within a reasonable period of time as set by the Council, (ii) all repairs or demolition be conducted by a licensed contractor, and (iii) the property owner allow the Building Official full access to inspect and approve all mandated repair or demolition. In taking any remedial action, the property owner shall comply with all applicable laws and ordinances concerning construction, repair, replacement, occupancy and use of buildings and structures.

D.  (1) Any person or entity having a legal or equitable interest in said property who is aggrieved by a decision of the City Council may, within ten (10) days of the date of such particular

decision, appeal to the Circuit Court of Montgomery County upon filing with the Clerk of said Court notice of appeal and bond for security of costs in the form and amount to be approved by the Circuit Clerk. The City Clerk shall, upon receiving notice of appeal, file with the Clerk of the Court a copy of the findings and determination of the Council proceedings.

(2) Trial of any cause on appeal shall be non-jury.

E. Upon demolition of an unsafe building or structure, the Building Official shall make report to the City Council of the cost thereof, and the City Council shall adopt a resolution fixing the costs which it finds were reasonably incurred in such demolition and assessing the same against the property; provided, however, the proceeds of any monies received from the sale of salvaged materials from said building or structure shall be used or applied against the cost of said repair or demolition; and provided, further, that any person, firm, corporation or other entity having a legal or equitable interest in said property may be heard at such meeting of the City Council to any objection he/it may have to the fixing of such costs or the amounts thereof. The City Clerk shall give notice of the meeting, at which the fixing of such costs are to be considered, by first-class mail to all entities having an interest in the property whose address and interest is determined from the records of the Montgomery County Revenue Commissioner or the Montgomery County Probate Judge or is otherwise known to the Clerk. The fixing of said costs by the City Council shall constitute a special assessment against the lot or lots, parcel or parcels of land upon which the building or structure was located, and, thus made and confirmed, shall constitute a lien on said property for the amount of such assessment. Said lien shall be superior to all other liens on said property except liens for taxes, and shall continue in force until paid. A certified copy of such resolution shall also be filed in the Office of the Judge of Probate of Montgomery County, Alabama.

SECTION TWO: This ordinance shall become effective upon passage, approval and publication or as otherwise provided by law.

ADOPTED this the 6th day of March, 200 1

APPROVED: 3/7/01

Bobby N. Bright, Mayor

ATTEST:

Brenda Gale Blalock
City Clerk

## IN THE CIRCUIT COURT OF
## MONTGOMERY COUNTY, ALABAMA

Mark Fredrick,
　　　　Plaintiff (s),

vs.                                                            CASE NO.CV-2005-2408-PR

City of Montgomery,
　　　　Defendant (s).

## **ORDER**

The above-styled matter comes before the Court on Plaintiff's, Mark Fredrick,

MOTION FOR SUMMARY JUDGMENT. Upon consideration of the same, the matter

is hereby SET for a HEARING on the MOTION on August 29, 2006 at 8:30 a.m. in

Courtroom 4C.

Done this the 20 JUL 2006.

_____
CHARLES PRICE, Circuit Judge

cc:　　J. Doyle Fuller
　　　　Walter Byars
　　　　Michael Boyle

STATE OF ALABAMA
MONTGOMERY COUNTY

I, as Circuit Clerk, Montgomery County
Circuit Court, do hereby certify that the within
is a complete, true and correct copy of the

_____ Order _____

on file in said office.

Witness my hand and the seal of said Court
is hereto affixed, this the _____ 13 _____

day of ___ May ___, ___ 2008 ___

_____ CIRCUIT CLERK _____

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

**MARK FREDERICK**                )
                                  )
Plaintiff,                        )
                                  )
vs.                               )
                                  )    CASE NO:  CV-2005-2408-PR
**CITY OF MONTGOMERY**            )
                                  )
Defendant.                        )
                                  )

### STIPULATION FOR ENTRY OF CONSENT JUDGMENT

Comes now the parties, through counsel, and stipulate to the entry of

Judgment in this case in the form attached hereto.

DONE this the _8th_ day of August, 2006.

_____
**J. DOYLE FULLER** (FUL005)
Attorney for Plaintiff
J. Doyle Fuller, PC
2851 Zelda Road
Montgomery, Alabama 36106

_____
**MICHAEL D. BOYLE**
CITY OF MONTGOMERY
P.O. Box 1111
Montgomery, Alabama 36101-1111

STATE OF ALABAMA
MONTGOMERY COUNTY

I, as Circuit Clerk, Montgomery County
Circuit Court, do hereby certify that the within
is a complete, true and correct copy of the
~~Stipu for Entry of Consent~~
on file in said office.          ~~Judgment~~
  Witness my hand and the seal of said Court
is hereto affixed, this the ____ 13
day of ___ May 8. , 2008
        ~~Melissa Rittman~~
        CIRCUIT CLERK

FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY

# IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

2006 AUG 30  AM 8: 39

| | |
|---|---|
| **MARK FREDERICK** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) CASE NO: CV-2005-2408-PR |
| **CITY OF MONTGOMERY** | ) |
| | ) |
| Defendant. | ) |
| | ) |

## ORDER

Based upon the stipulation for entry of Judgment in this case, it is the

ORDER, JUDGMENT and DECREE OF THIS Court that the Order of

Demolition of the City Council of the City of Montgomery dated September 6,

2005, which ordered the demolition of the property located at Ann Street and

Althea Street, and commonly known as Jasmine Gardens Apartments, is hereby

held to be invalid, is hereby set aside and held for naught.

The costs of this proceeding are hereby taxed against the City of

Montgomery.

DONE this the  29th  day of August, 2006.

_Charles Price_

CIRCUIT JUDGE

STATE OF ALABAMA
MONTGOMERY COUNTY

I, as Circuit Clerk, Montgomery County
Circuit Court, do hereby certify that the within
is a complete, true and correct copy of the
_Order_

on file in said office.
   Witness my hand and the seal of said Court
is hereto affixed, this the _____ 13
day of _____ May _____, 2008

CIRCUIT CLERK

ELECTRONICALLY FILED
1/31/2007 2:14 PM
CIRCUIT COURT OF
MONTGOMERY COUNTY, ALA[
MELISSA RITTENOUR, CLE[

# IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

| | |
|---|---|
| **MARK FREDERICK** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) CASE NO: CV-2005-2408-PR |
| **CITY OF MONTGOMERY** | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MOTION TO DISBURSE SECURITY FUNDS

1. On the 16th day of September, 2005, Plaintiff filed a Notice of Appeal in the above referenced matter.

2. Along with said appeal was $1,000 in Security Costs.

3. On September 21, 2006, the above referenced case was disposed by Entry of Consent Judgment.

WHEREFORE, the Plaintiff moves the Court to release the security funds being held by the clerk of this court, and Order said Clerk to disburse the held funds to the Plaintiff, c/o his Attorney of Record, J. Doyle Fuller.

Respectfully submitted this the 31st day of January, 2007.

/s/ J. Doyle Fuller
J. DOYLE FULLER  (FUL005)
Attorney for Plaintiff

ELECTRONICALLY FILED
2/12/2007 11:23 AM
CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA
MELISSA RITTENOUR, CLERK

## IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

FREDERICK MARK                    )
                    Plaintiff     )
                                  )
            v.                    )          **Case No.:** 03-CV-2005-002408.00
                                  )
MGM CITY OF                       )
                    Defendant     )

## <u>ORDER</u>

MOTION TO DISBURSE FUNDS filed by FREDERICK MARK is hereby GRANTED.

DONE this 12th day of February, 2007

/s CHARLES PRICE
_____

CIRCUIT JUDGE

STATE OF ALABAMA
MONTGOMERY COUNTY
I, as Circuit Clerk, Montgomery County
Circuit Court, do hereby certify that the within
is a complete, true and correct copy of the
_Order_
on file in said office.
 Witness my hand and the seal of said Court
is hereto affixed, this the _____ 13
day of _____ 2008

CIRCUIT CLERK

ORDINANCE NO. 10-2001

AN ORDINANCE PROVIDING FOR THE DEMOLITION OF UNSAFE STRUCTURES.

SECTION ONE. BE IT ORDAINED BY THE COUNCIL OF THE CITY OF MONTGOMERY, ALABAMA, that the following provisions for the abatement of unsafe buildings and structures be and are hereby adopted:

A. (1) For purposes of this ordinance, a building or structure shall be considered "unsafe" if it is unsafe, unsanitary, without adequate egress, or otherwise dangerous to human life or if same constitutes a fire hazard or a hazard to safety or health by reason of inadequate maintenance, dilapidation, obsolescence or abandonment. When used herein, "building or structure" shall include any part or parts thereof.

(2) Any such unsafe building or structure is declared to be illegal as a public nuisance, and all buildings or structures so found to be unsafe by the Chief Building Official shall be subject to abatement by demolition in accordance with the procedures set forth in this ordinance.

B. (1) When used herein, the term "Building Official" shall refer to the "Chief Building Official of the City of Montgomery or any other municipal official or municipal employee designated by the Mayor as the person to exercise the authority and perform the duties delegated by this ordinance."

(2) Whenever the Building Official shall find a building or structure situated in the City to be unsafe, he shall give the person or persons, firm, association, corporation or other entity last assessing the property for state ad valorem taxes and all mortgagees of record, by certified or registered mail to the addresses on file in the Montgomery County Revenue Commissioner's office or Montgomery County Probate Judge's Office, notice that the building or structure has been found


DEFENDANT'S EXHIBIT 5    10-2001

(4) The decision of the Building Official to demolish an unsafe building or structure shall be final without notice to the owner in such cases of emergency which in the opinion of the Building Official involve imminent danger to human life or health. The Building Official shall immediately cause such building, structure or portion thereof to be made safe by means of repair or demolition. For this purpose, the Building Official may enter at once such building or structure or the land upon which the same is located, or abutting land or structures, with such assistance and at such cost as the Building Official may deem necessary. The Building Official may vacate adjacent structures and protect the public by appropriate barricades or such other means as may be necessary, and for this purpose may close a public or private street, alley or means of access. The cost of such emergency repair or demolition shall be lien in favor of the City and shall be collected as provided herein.

C. (1) Within thirty (30) days from the date notice is given, any person, firm or corporation having a legal or equitable interest in a building or structure deemed to be unsafe by the Building Official may file with the City Clerk a written request for a hearing before the City Council setting forth all objections to the finding by the Building Official that such building or structure is unsafe to the extent of becoming a public nuisance. The City Clerk shall cause notice of the scheduled hearing to be served upon the requesting party via first class mail, postage prepaid and properly addressed, at the address used for the initial demolition notice unless an alternative address is provided to the Clerk. Upon holding such hearing, which hearing shall be held not less than five (5) days nor more than thirty (30) days after the filing of the written request, or in the event no hearing is timely requested, the City Council, after the expiration of thirty (30) days from the date notice is given, shall determine whether such building or structure is unsafe to the extent that it is a public nuisance requiring abatement by demolition. In the event that it is determined by the City Council that such building or structure is unsafe to the extent that it is a public nuisance requiring abatement

by demolition, the City Council shall order such building or structure to be demolished. Such demolition may be accomplished by the City by the use of its own forces, or it may provide by contract for such demolition. All contractors engaged by the City shall be registered nuisance abatement agents. The City shall have authority to sell or otherwise dispose of salvaged materials resulting from such demolition. Except as set forth in Part B(4) above, only the City Council, after notice and hearing as prescribed herein, may order the demolition of an unsafe building or structure.

(2) The City Council, at its discretion, may continue consideration of a demolition notice to a later date, and the City Clerk shall cause notice of such hearing to be given to the affected property owner(s) via first class mail, postage prepaid and properly addresses, at the address used for the initial demolition notice unless an alternative address is provided to the Clerk. A failure by the City Council to act on the findings of the Building Official within ninety (90) days from the date notice of same were first given to the property owner shall constitute a vacation of the Building Official's findings.

(3) Notwithstanding any provision herein to the contrary, the City Council may afford any property owner a reasonable opportunity to abate unsafe conditions found to exist upon his property and in so doing shall require that (i) all repairs or demolition be commenced within ten (10) days of the Council hearing and completed within a reasonable period of time as set by the Council, (ii) all repairs or demolition be conducted by a licensed contractor, and (iii) the property owner allow the Building Official full access to inspect and approve all mandated repair or demolition. In taking any remedial action, the property owner shall comply with all applicable laws and ordinances concerning construction, repair, replacement, occupancy and use of buildings and structures.

D.  (1) Any person or entity having a legal or equitable interest in said property who is aggrieved by a decision of the City Council may, within ten (10) days of the date of such particular

decision, appeal to the Circuit Court of Montgomery County upon filing with the Clerk of said Court notice of appeal and bond for security of costs in the form and amount to be approved by the Circuit Clerk. The City Clerk shall, upon receiving notice of appeal, file with the Clerk of the Court a copy of the findings and determination of the Council proceedings.

(2) Trial of any cause on appeal shall be non-jury.

E.  Upon demolition of an unsafe building or structure, the Building Official shall make report to the City Council of the cost thereof, and the City Council shall adopt a resolution fixing the costs which it finds were reasonably incurred in such demolition and assessing the same against the property; provided, however, the proceeds of any monies received from the sale of salvaged materials from said building or structure shall be used or applied against the cost of said repair or demolition; and provided, further, that any person, firm, corporation or other entity having a legal or equitable interest in said property may be heard at such meeting of the City Council to any objection he/it may have to the fixing of such costs or the amounts thereof. The City Clerk shall give notice of the meeting, at which the fixing of such costs are to be considered, by first-class mail to all entities having an interest in the property whose address and interest is determined from the records of the Montgomery County Revenue Commissioner or the Montgomery County Probate Judge or is otherwise known to the Clerk.  The fixing of said costs by the City Council shall constitute a special assessment against the lot or lots, parcel or parcels of land upon which the building or structure was located, and, thus made and confirmed, shall constitute a lien on said property for the amount of such assessment.  Said lien shall be superior to all other liens on said property except liens for taxes, and shall continue in force until paid.  A certified copy of such resolution shall also be filed in the Office of the Judge of Probate of Montgomery County, Alabama.

F. The City shall have the power to assess the costs authorized herein against any lot or lots, parcel or parcels of land purchased by the State of Alabama at any sale for the nonpayment of taxes, and where any such assessment is made against such lot or lots, parcel or parcels of land, a subsequent redemption thereof by any person authorized to redeem, or sale thereof by the State, shall not operate to discharge, or in any manner affect the lien of the City for such assessment, but any redemptioner or purchaser at any sale by the State of any lot or lots, parcel or parcels of land upon which an assessment has been levied, whether prior to or subsequent to a sale to the State for the nonpayment of taxes, shall take the same subject to such assessment. Such assessment shall then be added to the tax bill of the property, collected as tax, and remitted to the City.

G. Payment of such assessment shall be made in the manner and as provided for the payment of municipal improvement assessments in Section 11-48-48, Code of Alabama, 1975, as now amended, and upon the property owner's failure to pay such assessment, the Director of Finance shall proceed to collect the assessment, as provided in the provisions of Sections 11-48-49 through 11-48-60, inclusive, Code of Alabama, 1975.

H. Any person or entity owning, controlling, using or occupying an unsafe building or structure, upon failure, neglect or refusal to comply with the final determination of the City Council, or in the case of an emergency, the final determination of the Building Official, that such unsafe building or structure be demolished, shall be guilty of a misdemeanor and fined up to $500.00 and/or receive a sentence of imprisonment or hard work of up to six months. The penalty imposed upon an entity which is not a natural person shall consist of a fine only, plus costs of court.

SECTION TWO: This ordinance shall become effective upon passage, approval and

publication or as otherwise provided by law.

ADOPTED this the ___6th___ day of _____March_____, 200_1_.

APPROVED:___3/7/01___

_Bobby Bright_

Bobby N. Bright, Mayor

ATTEST:

_Brenda Sue Blalock_
Brenda Gale Blalock
City Clerk